## UNITED STATES COURT OF APPEALS FOR
## THE TENTH CIRCUIT

RALPH MARCUS HARDY,

*Plaintiff-Appellee,*

-*v*-

DEPUTY RABIE, deputy, and DEPUTY DEHERRERA, detention specialist,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO
CASE NO. 1:22-CV-02843-WJM-MDB,
HONORABLE WILLIAM J. MARTINEZ

### PLAINTIFF-APPELLANT'S RESPONSE BRIEF

Samuel Spital
Kevin E. Jason*
Arielle Humphries
NAACP Legal Defense &
 Educational Fund, Inc.
40 Rector St., 5th Fl.
New York, NY 10006
(212) 965-2200
kjason@naacpldf.org

Christopher Kemmitt
Molly Cain
Kacey Mordecai
NAACP Legal Defense &
 Educational Fund, Inc.
700 14th St. NW, Suite 600
Washington, DC 20005
(202) 682-1300

* Counsel of Record

September 4, 2024

**Oral argument is requested**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................iv

STATEMENT OF PRIOR OR RELATED APPEALS ....................................................v

INTRODUCTION ...........................................................................................................1

STATEMENT OF JURISDICTION ...............................................................................3

COUNTERSTATEMENT OF ISSUES PRESENTED ...................................................3

STATEMENT OF THE CASE ........................................................................................4

   A.  FACTUAL BACKGROUND ...............................................................................4

   B.  PROCEDURAL HISTORY ..................................................................................7

SUMMARY OF THE ARGUMENT .............................................................................11

STANDARD OF REVIEW ...........................................................................................12

ARGUMENT .................................................................................................................12

  I.  APPELLANTS DEHERRERA AND RABIE VIOLATED THE
     FOURTEENTH AMENDMENT BY BEING DELIBERATELY
     INDIFFERENT TO MR. HARDY'S MEDICAL NEEDS. ............................14

   a.  Mr. Hardy established the objective prong by pleading he spent hours in
      extreme pain while Appellants delayed providing him access to medical
      treatment. .....................................................................................................14

   b.  Mr. Hardy established the subjective prong by pleading that Appellants knew
      about and disregarded a substantial risk of harm to his health or safety.........18

     i.  Mr. Hardy established that Appellant DeHerrera failed to fulfill his
        gatekeeping responsibility...................................................................18

     ii.  Appellant Rabie ignored and denied Mr. Hardy's in-person request for
        medical assistance. ...............................................................................22

  II.  TENTH CIRCUIT LAW CLEARLY ESTABLISHES THAT APPELLANTS'
      FAILURE TO OBTAIN MEDICAL CARE FOR MR. HARDY IS
      UNCONSTITUTIONAL. ...............................................................................26

   a.  For two decades, this Court's precedent has established officials'
      constitutional duty not to ignore a detainee's request for medical attention or
      delay treatment for serious medical needs. ...........................................27

b.  This Court has itself acknowledged that ignoring or delaying treatment for a detainee's severe medical needs is a clearly established constitutional violation. ...................................................................................................30

c.  These cases clearly apply to Mr. Hardy's situation and Appellants' materially similar conduct. ......................................................................................34

d.  Other circuits' jurisprudence confirms that Appellants' constitutional obligations are clearly established. .......................................................37

III.  APPELLANTS' REMAINING ARGUMENTS ARE UNPERSUASIVE. ......38

a.  Appellants' arguments about generalized statements of law are inapplicable in this matter. ...........................................................................................39

b.  Courts are not prohibited from conducting independent research to supplement a plaintiff's articulation of clearly established rights. ....................40

CONCLUSION ..........................................................................................44

ORAL ARGUMENT STATEMENT ...........................................................45

CERTIFICATE OF COMPLIANCE ..........................................................46

CERTIFICATE OF DIGITAL SUBMISSION ............................................47

CERTIFICATE OF SERVICE .....................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Turki v. Robinson,*
762 F.3d 1188 (10th Cir. 2014) ............................ 9, 14-16, 18-19, 30-31, 33-36, 43-44

*Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.,*
771 F.3d 697 (10th Cir. 2014) ................................................................. 12

*Apodaca v. Raemisch,*
864 F.3d 1071 (10th Cir. 2017) ................................................................. 3

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011) ................................................................. 40

*Bell v. Wolfish,*
441 U.S. 520 (1995) ................................................................. 13

*Brown v. Montoya,*
662 F.3d 1152 (10th Cir. 2011) ................................................................. 12

*Burke v. Regalado,*
935 F.3d 960 (10th Cir. 2019) ........................................... 13, 19-21, 23-25, 30

*Cummings v. Dean,*
913 F.3d 1227 (10th Cir. 2019) ................................................................. 26, 45

*Davis v. Scherer,*
468 U.S. 183 (1984) ................................................................. 41-42

*de Fontbrune v. Wofsy,*
838 F.3d 992 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en
banc* (Nov. 14, 2016) ................................................................. 42

*Elder v. Holloway,*
510 U.S. 510 (1994) ................................................................. 41-42

*Est. of Booker v. Gomez,*
745 F.3d 405 (10th Cir. 2014) ................................................................. 9

*Estelle v. Gamble,*
    429 U.S. 97 (1976) .................................................................................12-13

*Farmer v. Brennan,*
    511 U.S. 825 (1994) ................................................................................ 13, 21

*Garrett v. Stratman,*
    254 F.3d 946 (10th Cir. 2001) ............................................................15-16

*Gutierrez v. Cobos,*
    841 F.3d 895 (10th Cir. 2016) .....................................................................41

*Johnson v. Johnson,*
    466 F.3d 1213 (10th Cir. 2006) ...................................................................12

*Kikumura v. Osagie,*
    461 F.3d 1269 (10th Cir. 2006) ...........................................................15-16

*Lance v. Morris,*
    985 F.3d 787 (10th Cir. 2021) .........................................................22, 30-36

*Lucas v. Turn Key Health Clinics, LLC,*
    58 F.4th 1127 (10th Cir. 2023) .............................................................. 23, 25

*Mata v. Saiz,*
    427 F.3d 745 (10th Cir. 2005)................. 9, 14, 16-18, 20-21, 23, 29-31, 33-35, 43-44

*McCowan v. Morales,*
    945 F.3d 1276 (10th Cir. 2019)...............................................15, 26, 31, 33-35

*Olsen v. Layton Hills Mall,*
    312 F.3d 1304 (10th Cir. 2002)........................................... 28-29, 31, 33-35

*Paugh v. Uintah Cnty.,*
    47 F.4th 1139 (10th Cir. 2022), *cert. denied sub nom. Anderson v. Calder,*
    143 S. Ct. 2658 (2023) ...................................................... 20-21, 26-27, 31

*Phillips v. Roane Cnty.,*
    534 F.3d 531 (6th Cir. 2008) ........................................................................37

*Quintana v. Santa Fe Cnty. Bd. of Comm'rs,*
    973 F.3d 1022 (10th Cir. 2020).....................................9, 12, 32, 34-35, 43-44

*Rojas v. Anderson,*
    727 F.3d 1000 (10th Cir. 2013) ........................................................................41

*Schaub v. VonWald,*
    638 F.3d 905 (8th Cir. 2011) ..........................................................................37

*Sealock v. Colorado,*
    218 F.3d 1205 (10th Cir. 2000) ........................................ 16, 20, 25, 27-36, 43

*Smith v. McCord,*
    707 F.3d 1161 (10th Cir. 2013) ........................................................................41

*Velez v. Johnson,*
    395 F.3d 732 (7th Cir. 2005) ............................................................ 17, 19, 37-38

*Vogt v. McIntosh Cnty., Bd. of Cnty. Comm'rs,*
    98 F.4th 1013 (10th Cir. 2024) ........................................................................26

*Waller v. City & Cnty of Denver,*
    932 F.3d 1277 (10th Cir. 2019) ..........................................................................4

*White v. Pauly,*
    580 U.S. 73 (2017) ............................................................................................40

*Williams v. City of Yazoo,*
    41 F.4th 416 (5th Cir. 2022) ............................................................................37

## Other Authorities

Edmund M. Morgan, *Judicial Notice*, 57 Harv. L. Rev. 269, 271 (1944) ..........................43

Fed. R. Evid. 201 ............................................................................................................43

## STATEMENT OF PRIOR OR RELATED APPEALS

There are no prior or related appeals in this matter.

# **INTRODUCTION**

No one should be left to wallow in extreme pain, in their own waste. This basic principle does not change because someone is incarcerated. Minimal action by Defendant-Appellant DeHerrera and Defendant-Appellant Rabie could have spared Plaintiff-Appellee Ralph Marcus Hardy hours of considerable pain. By doing absolutely nothing when Mr. Hardy was in dire need of medical treatment, Appellants were deliberately indifferent and violated decades-old precedent.

Mr. Hardy was abandoned by Adams County Detention Facility ("ACDF") officials and forced to suffer unnecessary pain and an exacerbated injury due to their refusal to act in the face of a medical emergency. Prior to the incident at the center of this appeal, Mr. Hardy had been permanently disfigured and confined to a wheelchair when he was assaulted by two deputies at ACDF. Subsequently, he was housed in a cell that lacked wheelchair accommodations—leaving him at risk of harm anytime he used the toilet, shower, or sink.

Unfortunately, the predictable occurred when Mr. Hardy fell onto the floor and out of his wheelchair when he was attempting to use the restroom in September 2022. Incapable of getting up and in severe pain, Mr. Hardy asked his cellmate to seek medical support through the emergency distress button in their cell. His cellmate did so three times, but Appellant DeHerrera ignored the distress signals. Mr. Hardy received no assistance and laid on the floor for nearly an hour—soiling himself due to the pain and

his inability to move. With no help arriving from prison guards, Mr. Hardy suffered additional injury while being assisted by his cellmate. These events resulted in permanent damage to Mr. Hardy's lower back.

Appellant DeHerrera is a Detention Specialist that was assigned to the control tower when Mr. Hardy fell and sought relief via the distress button alerts. He took no action when the repeated calls for assistance came through—he did not even inquire as to the nature of the distress. By happenstance, Appellant Rabie, a deputy, observed Mr. Hardy in his cell. At this point, Mr. Hardy was back in his wheelchair as a result of his cellmate's assistance, was in a contorted position, and remained in extreme pain. Mr. Hardy's plight was apparent enough to prompt Appellant Rabie to ask Mr. Hardy what happened. Though Mr. Hardy declared that he was experiencing a medical emergency after falling, Appellant Rabie did not seek medical assistance or communicate Mr. Hardy's pain to anyone. Instead, he merely told Mr. Hardy to "file a grievance" and left.

Given the clear abdication of responsibility by both Appellants, Mr. Hardy field a *pro se* suit, alleging that Appellants DeHerrera and Rabie violated his Fourteenth Amendment Due Process rights when they were deliberately indifferent to his medical needs. The district court denied Appellants' motions to dismiss, finding that Mr. Hardy experienced substantial harm, that Appellants knew of Mr. Hardy's risk of injury, and that Appellants were not entitled to qualified immunity.

Appellants seek interlocutory relief, but any jail official should have known on September 22, 2022 that ignoring or delaying treatment of severe pain to an incarcerated

2

person with no other option for obtaining access to medical care was a violation of clearly established law.

## STATEMENT OF JURISDICTION

The district court exercised jurisdiction over Mr. Hardy's Fourteenth Amendment deliberate indifference claim pursuant to 28 U.S.C. § 1331. In an order dated March 18, 2024, the district court denied Appellant Rabie and Appellant DeHerrera's motions to dismiss, which included a denial of qualified immunity. Appellants Rabie and DeHerrera timely filed a notice of appeal on April 9, 2024, seeking interlocutory review of the district court's order. This Court has jurisdiction under the collateral order doctrine for the ruling denying qualified immunity to Appellants Rabie and DeHerrera. *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017).

## COUNTERSTATEMENT OF ISSUES PRESENTED

1.     Whether Appellant DeHerrera is entitled to qualified immunity given (a) Mr. Hardy adequately stated a claim that Appellant DeHerrera was deliberately indifferent to Mr. Hardy's serious medical needs by ignoring repeated distress calls, and (b) it was clearly established as of September 22, 2022, that ignoring repeated emergency distress calls from an incarcerated individual violates the Fourteenth Amendment?

2.     Whether Appellant Rabie is entitled to qualified immunity given (a) Mr. Hardy adequately stated a claim that Appellant Rabie was deliberately indifferent to Mr. Hardy's serious medical needs when he found Mr. Hardy in a contorted position and in extreme pain, but walked away and did nothing further, and (b) it was clearly

established as of September 22, 2022 that failing to seek medical treatment for an incarcerated individual who is in extreme pain and declares a medical emergency violates the Fourteenth Amendment?

## STATEMENT OF THE CASE

### A. FACTUAL BACKGROUND

On this appeal from a motion to dismiss, the Court must assume the well pleaded facts as alleged in the operative Second Amended complaint are true and construe them in the light most favorable to Mr. Hardy. *Waller v. City & Cnty of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019).

Mr. Hardy was booked into ACDF on October 6, 2021. App. Vol. I at 102 ¶ 1. Within his first month in the facility, Mr. Hardy was assaulted by two deputies, leaving him permanently disfigured and confined to a wheelchair. *Id.* at 103-04 ¶¶ 7, 13.[1]

---

[1] This assault is the subject of Mr. Hardy's failure to protect, excessive force, and deliberate indifference claims against the other named defendants in the district court proceedings, but neither those defendants nor those claims are part of this appeal. Nevertheless, they are briefly described here for context:

In late October 2021, Mr. Hardy had a Boulder County Court appearance over videoconference. App Vol. I at 103 ¶ 7. Mr. Hardy was escorted to a conference room with a laptop for the proceedings. *Id.* at 103 ¶ 8. While communicating with his attorney, Mr. Hardy saw one of the deputies in the room was recording his conversation, and Mr. Hardy made an objection to the court via the videoconference. *Id.* at 103 ¶¶ 9-10. After the court acknowledged the objection, Mr. Hardy turned the laptop towards the deputy who had her cell phone pointed at Mr. Hardy. *Id.* at 104 ¶¶ 10-11. At that point, the deputy got up from her seat, closed the laptop, and called for assistance. *Id.* at 104 ¶ 11. Two deputies entered the room and assaulted Mr. Hardy by grabbing him from his seat, slamming his face on the floor, and placing their knees into his back in "such

After this attack, Mr. Hardy was housed in a cell that provided only limited wheelchair access through the door and to the shower, toilet, sink, writing table, and law kiosk, making it difficult for him to maneuver. *Id.* at 106 ¶ 22. It was widely known among staff that because he uses a wheelchair in his cell, Mr. Hardy was "at risk of harm anytime he uses the toilet, shower or sink in the housing unit because of the barriers." *Id.* at 107 ¶ 23.

On September 22, 2022, Mr. Hardy fell from his wheelchair while he was attempting to move around the privacy barrier for the toilet in his cell. *Id.* ¶ 25. This fall permanently injured his lower back and left him unable to move or rise from the floor of his cell. *Id.* These injuries were only further exacerbated by subsequent events.

Mr. Hardy's cellmate, Mr. Martinez, repeatedly pressed the distress button located in his cell to get medical support for Mr. Hardy. *Id.* ¶ 26. Mr. Martinez pressed the button three times, ten to fifteen minutes apart, over the course of an hour. *Id.* ¶ 27. While they waited for assistance, Mr. Hardy remained on the floor of his cell in pain for nearly an hour, and he soiled himself because of the pain and his inability to move. *Id.* After about an hour, Mr. Martinez began trying to assist Mr. Hardy back into his wheelchair, clean the urine, and change Mr. Hardy's clothes. *Id.* at 107-08 ¶ 28. Mr. Martinez got Mr. Hardy into the wheelchair in a contorted position. *Id.* In the process

---

a forceful manner that they caused permanent injury to a pre-existing ACL/MCL repair to his right knee" and internal bleeding. *Id.* at 104 ¶ 13.

of being assisted by Mr. Martinez, Mr. Hardy "was further injured," adding to the injury to his lower back. *Id.*

Appellant DeHerrera was on duty stationed at the control tower at the time of the fall and distress button alerts. It was Appellant DeHerrera's responsibility to alert floor deputies of distress calls, serving as a gatekeeper for needed medical attention, but he ignored the calls coming from Mr. Hardy's cell. App. Vol. I at 107 ¶ 26. At no point during this hour and a half did Appellant DeHerrera notify the floor deputies of a call for emergency medical attention. *Id.* at 108 ¶ 30.

After Mr. Martinez got Mr. Hardy back in his wheelchair, Appellant Rabie entered the housing unit. *Id.* Appellant Rabie was not there in response to the distress button, of which he was not informed, but rather to escort the porters serving dinner. *Id.* When Appellant Rabie opened the door to Mr. Hardy's cell to pass him his dinner, Appellant Rabie saw Mr. Hardy in a "contorted position and in extreme pain" in his wheelchair. *Id.* ¶ 31. Observing Mr. Hardy in such a state, Appellant Rabie asked Mr. Hardy what happened to him. *Id.* Mr. Hardy requested medical attention by "verbally declar[ing] a medical emergency and inform[ing] Deputy Rabie that he had fallen" while trying to make the transfer from the wheelchair to the toilet. *Id.* ¶¶ 31-32. In response, Appellant Rabie told Mr. Hardy to "file a grievance." *Id.* Appellant Rabie then closed the cell door and left, without telling anyone that Mr. Hardy was in extreme pain and "in obvious need of immediate assistance." *Id.* at 108-09 ¶¶ 31, 34.

Approximately an hour and a half after his fall, and after the shift change, Deputy Chavez and a nurse distributing the evening medication entered Mr. Hardy's cell. App. Vol. I at 109 ¶ 35. Mr. Hardy again asked for help by "declar[ing] a medical emergency" and explaining what happened. *Id.* Deputy Chavez informed Mr. Hardy that the reason Appellant DeHerrera "did not respond to the emergency call button from his cell is because the living unit deputies have their own personal policy not to respond to the buttons because 'some inmates abuse the buttons, and they are not going to spend their entire shift chasing buttons.'" *Id.* ¶ 37.

## B. PROCEDURAL HISTORY

On October 28, 2022, Mr. Hardy, proceeding *pro se*, filed a complaint in the United States District Court for the District of Colorado, seeking damages from Adams County, the Sheriff of Adams County, and officers at ACDF, including Appellant Rabie, for violating his constitutional rights by failing to protect him and subjecting him to excessive force and for deliberate indifference to his serious medical needs, as well as for violating Title II of the Americans with Disability Act. App. Vol. I at 2-40. On December 27, 2022, Mr. Hardy filed a motion to add Appellant DeHerrera to the list of defendants, which the court granted. *Id.* at 43-46, 69-71.

On February 17, 2023, Mr. Hardy filed his second amended complaint,[2] the subject of the motion to dismiss and this appeal. *Id.* at 98-126. As is relevant to this

_____

[2] Mr. Hardy filed his first amended complaint pursuant to the district court's order to address some errors. App. Vol. I at 3.

appeal, Mr. Hardy alleged Appellant Rabie was deliberately indifferent to serious medical needs because he did nothing to inform anyone that Mr. Hardy needed medical care after Mr. Hardy told him he had a medical emergency and Appellant Rabie saw him in a contorted position in his wheelchair. *Id.* at 108-09 ¶¶ 30-34. Additionally, Mr. Hardy alleged Appellant DeHerrera was deliberately indifferent to Mr. Hardy's serious medical needs by failing to respond to repeated distress calls made over a ninety-minute period. *Id.* at 107 ¶ 26.

Appellants Rabie and DeHerrera filed separate motions to dismiss, both raising qualified immunity. App. Vol. I at 153-58, 167-72. Mr. Hardy filed a combined response to these motions on May 8, 2023. *Id.* at 174-202. He first addressed the constitutional violation and argued that he satisfied both the objective and subjective components required to state a claim for deliberate indifference to serious medical need in violation of the Fourteenth Amendment. *Id.* at 177-81. As to the objective component, Mr. Hardy stated harms "he sustained from falling from his wheelchair," "the injury from another inmate trying to render medical assistance that trained medical staff" should have provided, and the injury from delayed medical treatment after his fall. *Id.* at 179. As to the subjective component, Mr. Hardy argued that both Defendant-Appellants "knew that Mr. Hardy was in a wheelchair in a living unit that was not wheelchair accessible which placed Mr. Hardy at risk each day." *Id.* at 180. Further, Appellant Rabie saw Mr. Hardy and denied Mr. Hardy's request for medical attention, and Appellant

DeHerrera ignored the emergency calls for an hour and a half. *Id.* at 180, 182-83, 187-88.

Mr. Hardy argued it is clearly established that to ignore or delay treatment of a detainee's serious medical need violates the detainee's constitutional rights, citing to eight cases including: *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022 (10th Cir. 2020); *Al-Turki v. Robinson*, 762 F.3d 1188 (10th Cir. 2014); *Est. of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014); and *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005). App. Vol. I at 191-96.

Appellants Rabie and DeHerrera filed separate replies on May 22, 2023. *Id.* at 206, 214.

On July 19, 2023, the magistrate judge entered a recommendation on both motions, as well as motions from the other Defendants. The magistrate judge recommended that the district court deny qualified immunity to both Appellants Rabie and DeHerrera because (a) Mr. Hardy plausibly alleged deliberate indifference claims against both Appellants Rabie and DeHerrera, and (b) the law is clearly established that deliberate indifference to a detainee's serious medical needs is a constitutional violation. *Id.* at 231-236.

On August 2, 2023, Appellants Rabie and DeHerrera filed their objections to the magistrate judge's recommendations. *Id.* at. 246, 269.

On March 18, 2024, the district court entered an order adopting in part, adopting as modified in part, and rejecting in part the magistrate judge's recommendations. App. Vol. II at 279.

The district court adopted the magistrate's recommendation to deny both Appellants Rabie and DeHerrera's motions to dismiss based on qualified immunity. The court found that Mr. Hardy plausibly alleged a violation based on the "delay in medical care which would not have occurred had Deputy Rabie ordered medical aid for Plaintiff immediately" upon seeing Mr. Hardy in the contorted position and being told there was a medical emergency. *Id.* at 293. The court also found that Mr. Hardy plausibly alleged that ignoring his cellmate's emergency distress calls caused him substantial harm, and that "while Detention Specialist DeHerrera may not have directly observed Plaintiff in his cell, he allegedly was aware that emergency distress calls were coming from Plaintiff's cell and failed to notify floor deputies of the risk of harm to the occupants of the cell." *Id.* at 312. As to the clearly established prong, the court found that Mr. Hardy "cited numerous published Tenth Circuit cases in his response brief, which the Magistrate Judge also cited, to support his argument that the law is clearly established". *Id.* at 293. The court adopted the magistrate judge's recommendation, holding that "[w]here a detainee has a serious and obvious medical need, ignoring those needs" as the defendants did here, violates clearly established law. *Id.* at 294.

## SUMMARY OF THE ARGUMENT

Accepting Mr. Hardy's allegations as true, his rights were violated in a manner long prohibited by clearly established law.

Indeed, the Court is presented with a straightforward determination. Mr. Hardy was known to be in a wheelchair and was known to be in a cell that carried risks to Mr. Hardy because it was not wheelchair accessible. Mr. Hardy ultimately suffered injury and experienced significant pain for hours. By asking his cellmate to use the emergency button, Mr. Hardy sought assistance from the official in the control tower, Appellant DeHerrera. Mr. Hardy was ignored. By verbally declaring a medical emergency while experiencing pain in a contorted position, Mr. Hardy sought assistance from Appellant Rabie. Mr. Hardy was ignored again. The inaction by both Appellants in these circumstances constitutes deliberate indifference.

Appellants challenge whether there was clearly established law governing this incident. However, two decades of precedent from this Court established that jail officials controlling access to care cannot ignore calls for medical treatment when they are aware of medical risk nor can they delay treatment for severe pain.

Appellants also seek to muddy the waters in this appeal. They raise distinctions that are immaterial to the actual holdings of clearly established law, they argue that Mr. Hardy fell short of his burden despite his presentation of several seminal cases on this issue, and, finally, they contend that the lower court acted outside of its authority when

it did what all courts do and supported its analysis with legal authority beyond the core cases cited by Mr. Hardy.

The judgment of the district court should be affirmed in all respects.

## STANDARD OF REVIEW

This Court reviews a district court's denial of a motion to dismiss based on qualified immunity de novo. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011). The Court must "accept all the well-pleaded allegations of the complaint as true" and "construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 700 (10th Cir. 2014). Because Mr. Hardy proceeded *pro se* before the district court, this Court must "review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Johnson v. Johnson*, 466 F.3d 1213, 1214 (10th Cir. 2006).

## ARGUMENT

In reviewing a denial of qualified immunity, this Court undertakes a two-part analysis, asking (1) whether the plaintiff alleged "the defendant violated a constitutional right" and (2) whether the constitutional right was clearly established at the time of the violation. *Quintana*, 973 F.3d at 1028.

The first part of the analysis requires this Court to examine whether Appellants violated Mr. Hardy's Fourteenth Amendment right to be free from "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104

(1976) (cleaned up). Courts have long recognized that a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see also Estelle*, 429 U.S. at 104. And courts extend the same constitutional protection to pretrial detainees against deliberate indifference to serious medical needs via the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1995). "In evaluating such Fourteenth Amendment claims," this Court applies "an analysis identical to that applied in Eighth Amendment cases." *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019) (quoting *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2).

Mr. Hardy, a disabled man who, because of earlier force used against him by ACDF correctional officers is confined to a wheelchair, sufficiently pleaded that Appellants DeHerrera and Rabie violated his Fourteenth Amendment rights by being deliberately indifferent to his emergent medical needs. Instead of responding to the repeated emergency distress calls, Appellant DeHerrera allowed Mr. Hardy to be immobilized by extreme pain for hours. App. Vol. I at 107-08 ¶¶ 25-29. Appellant Rabie saw Mr. Hardy sitting in a contorted position, in pain so obvious that Appellant Rabie asked Mr. Hardy what happened to him. *Id.* at 108 ¶ 31. In response to Mr. Hardy telling Appellant Rabie he was experiencing a medical emergency and needed medical attention, Appellant Rabie told Mr. Hardy to file a grievance. *Id.*

Tenth Circuit authority unambiguously makes clear that Mr. Hardy's condition was sufficiently serious and that, by taking no action in the face of multiple emergency

distress calls and a verbal declaration of a medical emergency, Appellants violated Mr. Hardy's constitutional rights.

## I. APPELLANTS DEHERRERA AND RABIE VIOLATED THE FOURTEENTH AMENDMENT BY BEING DELIBERATELY INDIFFERENT TO MR. HARDY'S MEDICAL NEEDS.

Jail officials violate the Fourteenth Amendment when they fail to take minimum steps to address an incarcerated individual's significant pain. A claim of deliberate indifference includes both an objective and a subjective component. *Al-Turki*, 762 F.3d at 1192. The objective prong is satisfied if the prisoner's medical need was "sufficiently serious." *Mata*, 427 F.3d at 751 (quoting *Farmer,* 511 U.S. at 834). Serious pain is sufficient to satisfy this prong. *Al-Turki*, 762 F.3d at 1193 ("We have held that the substantial harm requirement may be satisfied by . . . considerable pain.") (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)). The subjective prong examines the state of mind of the defendant, asking whether "the official kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Al-Turki*, 762 F.3d at 1192 (quoting *Farmer*, 511 U.S. at 837).

### a. Mr. Hardy established the objective prong by pleading he spent hours in extreme pain while Appellants delayed providing him access to medical treatment.

Mr. Hardy satisfied the objective prong of the deliberate indifference claim by sufficiently pleading that he suffered "substantial harm" as a result of Appellants' inaction. *See Al-Turki*, 762 F.3d at 1193. This Circuit has been clear that the "substantial

harm" requirement of the objective prong "may be satisfied" by a showing of "considerable pain," "such as the pain experienced while waiting for treatment and analgesics." *Id.*

Mr. Hardy pleaded that he spent hours in "extreme pain" after falling out of his wheelchair due to an inaccessible toilet, including spending an hour lying on the floor in pain so severe it caused him to soil himself. App. Vol. I at 107 ¶¶ 25-27. As the three emergency distress calls from his cell went unheeded, his cellmate lifted him up into his wheelchair, further injuring his back. *Id.* at 107-08 ¶ 28. He pleaded that he experienced that pain with no response for at least an hour and a half until Appellant Rabie appeared. *Id.* at 108 ¶ 29 And then, when Appellant Rabie left without referring Mr. Hardy to medical personnel, Mr. Hardy continued to experience "extreme pain" until a shift change occurred. *Id.* at 108-09 ¶¶ 31, 36

Mr. Hardy's allegations easily satisfy the objective prong because he plausibly alleges that a delay in medical treatment caused him to spend hours in extreme pain. *See McCowan v. Morales*, 945 F.3d 1276, 1291 (10th Cir. 2019) (holding that two hours of severe shoulder pain satisfied the objective prong). This Court has been abundantly clear that the substantial harm requirement "may be satisfied by . . . considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001). Further, while Mr. Hardy also properly alleges a permanent injury to his lower back, the substantial harm caused by a delay in treatment need not be a permanent injury; instead, "an intermediate injury, such as the pain experienced while waiting for treatment and analgesics" can suffice and does

so here. *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006) (*overruled on other grounds*). Thus, "when the pain experienced during the delay is substantial, the prisoner 'sufficiently establishes the objective element of the deliberate indifference test.'" *Id.* (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)).

Appellants, in arguing that Mr. Hardy did not allege an injury that was sufficiently serious enough to merit constitutional protection, ignore this Court's clear precedent about the sufficiency of considerable pain and misconstrue Mr. Hardy's pleadings. They argue that Mr. Hardy failed to satisfy the objective prong because he did not plead specific injuries beyond pain, such as a head injury from the fall. Op. Br. at 20. They further contend that Mr. Hardy did not allege facts that establish he "suffered from a condition that had been or could be diagnosed by a physician as necessitating treatment" or that "required immediate medical treatment." *Id.* at 21-22.

First this Court has consistently held that "considerable pain" caused by a delay in medical care, by itself with no other injury, satisfies the objective prong. *See Sealock*, 218 F.3d at 1210; *see also Al-Turki*, 762 F.3d at 1193; *Garrett*, 254 F.3d at 950; *Kikumura*, 461 F.3d at 1292 (*overruled on other grounds*); *Mata*, 427 F.3d at 755. For example, this Court held that chest pain, without any other injury, satisfied the objective prong. *See Mata*, 427 F.3d at 754 (citing *Sealock*, 218 F.3d at 1210) (explaining that the Court in *Sealock* held that severe chest pain, separate and apart from the alleged heart attack causing the pain, "is a serious medical condition under the objective prong"). Second, contrary to Appellants' claims, Mr. Hardy did allege an additional injury—he alleged

that he suffered a back injury exacerbated by his cellmate lifting him from the floor during Appellant DeHerrera's failure to respond to Mr. Hardy's distress calls. App. Vol. I at 107-108 ¶ 28.

Appellants also contend that Mr. Hardy fails the objective prong because he did not allege facts that indicate that his pain was obvious to them. Op. Br. at 21. But this Court has specifically rejected that formulation of the objective prong as overly "limited." *Mata*, 427 F.3d at 753. In cases where prison employees delay access to medical treatment, the "question raised by the objective prong of the deliberate indifference test is whether the alleged harm . . . is sufficiently serious[], rather than whether the symptoms displayed to the prison employee are sufficiently serious." *Id.* This Court has explained that the "symptoms displayed are relevant only to the subjective component of the test." *Id.*

And, as discussed in the next section, Mr. Hardy *did* allege facts that indicate his risk of substantial harm was obvious: his cellmate pressed the emergency button three times informing Appellant DeHerrera of his emergency. *See Velez v. Johnson*, 395 F.3d 732, 736 (7th Cir. 2005) (explaining that an inmate pushing an "emergency call button [is] a clear indication that an emergency was at hand."). Mr. Hardy also alleges that Appellant Rabie saw him sitting in a "contorted position," assessed the situation, asked Mr. Hardy what happened to him, and Mr. Hardy informed him of his medical emergency. App. Vol. I at 108. ¶ 31

This Court has repeatedly and unequivocally held that hours of "untreated severe pain," as Mr. Hardy pleaded he experienced, "clearly demonstrate[s] 'significant'" suffering. *Al-Turki*, 762 F.3d at 1193-94. By arguing that Mr. Hardy should have proved more, Appellants ignore this Court's precedent and erroneously heighten the "minimum evidentiary requirement," *Mata*, 427 F.3d at 755, this Court has clearly outlined for the objective prong.

### b. Mr. Hardy established the subjective prong by pleading that Appellants knew about and disregarded a substantial risk of harm to his health or safety.

Mr. Hardy pleaded facts establishing that Appellants DeHerrera and Rabie both knew about and disregarded a substantial risk of harm to his health or safety. Appellant DeHerrera was alerted three times that Mr. Hardy was experiencing an emergency and failed to follow jail policy in his gatekeeping role to respond, leaving Mr. Hardy to experience extreme pain for hours. Appellant Rabie saw Mr. Hardy and was informed by Mr. Hardy that he was experiencing a medical emergency, but disregarded that risk and denied Mr. Hardy's request for medical treatment. As explained further below, these facts establish the subjective prong for both Appellants.

### i. Mr. Hardy established that Appellant DeHerrera failed to fulfill his gatekeeping responsibility.

Mr. Hardy pleaded that Appellant DeHerrera was responsible for monitoring the emergency distress button, knew of his emergency, and the risks he carried as a wheelchair-bound individual, and left Mr. Hardy to spend hours in extreme pain.

Appellant DeHerrera, in his role as monitor of the emergency distress calls in the control tower, served as a gatekeeper responsible for sending help to detainees. His inaction as gatekeeper in a position to respond to distress calls is evidence that Appellant DeHerrera had a sufficiently culpable state of mind to meet the subjective prong of deliberate indifference to Mr. Hardy's medical need.

Mr. Hardy's pleadings establish that Appellant DeHerrera had a sufficiently culpable state of mind because he knew about a substantial risk of harm in his role as the monitor of the distress calls from the control tower and disregarded it, "abdicat[ing] his] gatekeeping role[]." *Burke* 835 F.3d at 994. Mr. Hardy alleged that Appellant DeHerrera held a gatekeeping role as the official responsible for "notify[ing] floor deputies of distress calls from inmate cells" and alleged that Appellant DeHerrera did not respond to three activations of the emergency distress button in Mr. Hardy's cell. App. Vol. I at 107 ¶¶ 26-27. These activations establish that Appellant DeHerrera was aware of Mr. Hardy's emergency distress. Pushing an emergency call button is "a clear indication that an emergency was at hand," and courts like the Seventh Circuit have held that defendants were deliberately indifferent for not responding in a timely fashion. *Velez*, 395 F.3d at 737.

Additionally, Appellant DeHerrera knew that Mr. Hardy, an individual confined to a wheelchair, was particularly at risk, as Mr. Hardy alleged that ACDF staff were aware of the barriers in his cell increasing his risk of falling due to his wheelchair. App. Vol. I at 107 ¶ 23. This further indicates that emergency calls from his cell are especially

a sign of a significant risk of harm and that Appellant DeHerrera disregarded that risk. *See Al-Turki*, 762 F.3d at 1194 (explaining that defendant's knowledge of plaintiff's preexisting diabetic condition should have made defendant particularly aware that pain is a sign of risk of harm).

Despite Appellant DeHerrera's responsibility as a gatekeeper monitoring the emergency distress buttons and his knowledge of Mr. Hardy's falling risk, Appellant DeHerrera never responded to Mr. Hardy's three distress calls, nor did he send anyone else to respond. App. Vol. I at 107–109. This extended the time that Mr. Hardy spent in severe pain by hours—in fact until the next shift change—and delayed access to medical treatment. *Id.* at 109 ¶¶ 35-36. This Court has made clear that jail officials are deliberately indifferent when they make "no attempt to determine the severity of the [plaintiff's] need or the safety risk he might have posed." *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1158 (10th Cir. 2022), *cert. denied sub nom. Anderson v. Calder*, 143 S. Ct. 2658 (2023) (quoting *Burke*, 935 F.3d at 982). This is especially true when jail officials fail in their gatekeeping roles "by failing to relay the problem to medical staff." *Burke*, 935 F.3d at 994; *see also Mata*, 427 F.3d at 751 (prison official who acts as a gatekeeper to medical personnel can be deliberately indifferent if he "delays or refuses to fulfill that gatekeeper role."); *Sealock*, 218 F.3d at 1211 (same).

Further, Appellant DeHerrera's lack of response not only left Mr. Hardy in significant pain without medical treatment for hours, it also was contrary to ACDF's policy, as its training video explained that officers would respond "in seconds." App.

Vol. I at 108 ¶ 29. This is further evidence of deliberate indifference, as this Court has repeatedly held that a gatekeeping jail official's failure to comply with jail policy "certainly provide[s] circumstantial evidence that a . . . gatekeeper knew of a substantial risk of serious harm." *Paugh*, 47 F.4th at 1162 (quoting *Prince v. Sheriff of Cater Cnty.*, 28 F.4th 1033, 1046 (10th Cir. 2022)); *see also Mata*, 427 F.3d at 757 (same).

Appellant DeHerrera argues that he cannot have known about the risk to Mr. Hardy's health or safety because he was in the tower, could not see Mr. Hardy through Mr. Hardy's closed door, and Mr. Hardy did not allege that they had a personal interaction. Op. Br. at 24. Under that theory, a guard who simply ignores a detained person's repeated distress signals would not be liable for deliberate indifference so long as the guard made sure to never interact directly with the detained person. That, of course, is not the law. Deliberate indifference simply requires that a guard consciously disregards a substantial risk of harm to a detained person, *see Mata*, 427 F.3d at 752, which does not require personal interaction.

Here, Appellant DeHerrera *was* alerted to an emergency as the emergency distress button was activated *three* times and he chose not to act, contrary to jail policy. Appellant DeHerrera cannot escape liability because he declined to fulfill his gatekeeping role and declined to act—to accept Appellant DeHerrera's contentions would mean officials could escape constitutional liability by neglecting their duties and by declining to investigate signs of a medical emergency. As the Supreme Court has explained, an official cannot escape liability if he "merely refused to verify underlying

facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Farmer*, 511 U.S. at 843 n.8; *see also Burke*, 935 F.3d at 994 (jail officials are deliberately indifferent when they make "no attempt to determine the severity of [the plaintiff's] medical need.").

*Lance v. Morris*, cited by Appellants, provides no support for Appellant DeHerrera's position. In *Lance*, a plaintiff experiencing considerable pain due to priapism sued four jail officials for deliberate indifference. 985 F.3d 787 (10th Cir. 2021). This Court held that one of the defendants, a sergeant who worked in the jail's tower, was not told enough information from the plaintiff to suggest a medical need. *Id.* at 795. The key in *Lance* was that the plaintiff "didn't *complain of pain or ask for medical help.*" *Id.* at 796 (emphasis added). Here, by contrast, Mr. Hardy repeatedly sought medical help by activating an emergency distress button three times within a 90-minute window, alerting Appellant DeHerrera that an emergency was occurring within the obstacle-filled cell of a wheelchair-confined individual. Nothing in *Lance* suggests that Appellant DeHerrera could ignore those requests because they were made through an emergency distress button rather than a personal interaction.

### ii. Appellant Rabie ignored and denied Mr. Hardy's in-person request for medical assistance.

Mr. Hardy also sufficiently alleged that Appellant Rabie was aware of and disregarded a substantial risk of harm to his health or safety and thereby delayed his access to medical care, making Mr. Hardy experience unnecessary "extreme pain." Mr.

Hardy alleged that Appellant Rabie opened his cell door to deliver Mr. Hardy's dinner and saw him sitting in his wheelchair in a contorted position and in obvious pain. App. Vol. I at 108 ¶ 31. Mr. Hardy's allegations confirm that his pain was obvious because Mr. Hardy's appearance prompted Appellant Rabie to ask Mr. Hardy what had happened to him. *Id.* Mr. Hardy then informed Appellant Rabie that he was experiencing a medical emergency and asked for immediate medical attention. *Id.* Appellant Rabie ignored the request for medical attention, told Mr. Hardy to "file a grievance," and walked away, delaying Mr. Hardy any other access to jail personnel until Deputy Chavez arrived for evening medications after the next shift change. *Id.* at 109 ¶¶ 35-36.

Accepting Mr. Hardy's allegations as true, Appellant Rabie displayed conscious disregard of a risk of harm, thereby satisfying the subjective component of the deliberate indifference test. *See Mata*, 427 F.3d at 755 (noting that "[a] prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused [] unnecessary pain"). This Court has been clear that "doing nothing in the face of serious medical needs is obviously sufficient to state a claim." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1139 (10th Cir. 2023); *see also Burke*, 935 F.3d at 993 ("We have found deliberate indifference when jail officials confronted with serious symptoms took no action to treat them.").

Further, Mr. Hardy pleaded that Appellant Rabie was deliberately indifferent as a gatekeeper by failing to provide Mr. Hardy access to medical personnel, despite being

informed that Mr. Hardy was experiencing a medical emergency. App. Vol. I at 108 ¶ 32. This Court has held that prison officials are liable as gatekeepers when they deny an incarcerated person access to medical personnel. *See Burke*, 935 F.3d at 992. By "failing to relay the problem to medical staff," Appellant Rabie "abdicated [his] gatekeeping role" and was deliberately indifferent. *Id.* at 994.

Appellant Rabie claims there are no allegations that he knew of an excessive risk to Mr. Hardy's health or safety because there is no specific allegation regarding what injury Mr. Hardy sustained. Op. Br. at 29. As discussed above, this argument misconstrues the complaint, in which Mr. Hardy alleges he experienced "extreme pain" and a back injury. App. Vol. I at 107-08 ¶¶ 25, 31. And, as discussed above, it is settled law in this Circuit that substantial pain is sufficiently serious to sustain a deliberate indifference claim.

Appellant Rabie also argues that Mr. Hardy fails to sufficiently allege that his pain was obvious. Op. Br. at 28-30. In making this argument, Appellant Rabie ignores the allegations that Mr. Hardy's appearance prompted Appellant Rabie to ask what happened, indicating the symptoms were apparent. App. Vol. I at 108 ¶ 31. Then, Mr. Hardy told him he was experiencing a medical emergency and Appellant Rabie told him to file a grievance. *Id.* Accepting these facts as true, as is required at the motion to dismiss stage, Mr. Hardy clearly alleged that Appellant Rabie was aware of his condition and disregarded it, establishing deliberate indifference. *See Burke*, 935 F.3d at 994

(holding a reasonable jury could find jail officials deliberately indifferent when they did nothing in response to plaintiff informing them he was experiencing paralysis).

Appellant Rabie also argues that he should escape liability because he is not a medical professional, was not required to provide medical treatment, he did not interfere with any medical care, and there is not alleged injury from the delay in medical care. Op. Br. at 23, 30. But this also misconstrues the relevant inquiry. Appellant Rabie's culpability does not lie in a failure to provide medical care himself, he is liable because he did "nothing in the face of serious medical needs," *Lucas*, 58 F.4th at 1139, and because, as a gatekeeper, he "fail[ed] to relay the problem to medical staff," *Burke*, 935 F.3d at 994. Mr. Hardy demonstrated harm by Appellant Rabie's delay when he alleged that Appellant Rabie "left the facility at his normal shift change as if Mr. Hardy was not in obvious pain" and alleged he was still experiencing "a medical emergency" when the next shift arrived later. App. Vol. I at 109 ¶¶ 34-35. Finally, regarding the injury, as detailed above, this Court has explained that a prison official is liable when "delay occasioned by his inaction unnecessarily prolonged [the incarcerated person's] pain and suffering." *Sealock*, 218 F.3d at 1210 n.5.

\* \* \*

In sum, under this Court's precedent, Mr. Hardy has pleaded that Appellants were deliberately indifferent to his serious medical needs. They did nothing despite knowledge of a risk of substantial harm and their inaction caused a delay in medical care

that led to Mr. Hardy to spend hours, first immobilized on the floor and then sitting in a "contorted position" in a wheelchair, in severe and unnecessary pain.

## II. TENTH CIRCUIT LAW CLEARLY ESTABLISHES THAT APPELLANTS' FAILURE TO OBTAIN MEDICAL CARE FOR MR. HARDY IS UNCONSTITUTIONAL.

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (citation omitted). This Court recognizes that the law is clearly established for qualified immunity "when there is an 'on point' Supreme Court or Tenth Circuit decision" or, alternatively, the "clearly established weight of authority from other courts have found the law to be as the plaintiff maintains." *Paugh*, 47 F.4th at 1167. While this Court and the Supreme Court have cautioned against defining clearly established law "at a high level of generality," *see, e.g. McCowan*, 945 F.3d at 1285 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)), a plaintiff need not provide a case directly on point so long as there is existing precedent that places the unconstitutionality of the alleged conduct "beyond debate." *Id.* (quoting *White*, 580 U.S. at 79.) In other words, the law is clearly established when precedent involves "materially similar conduct" or when it applies with obvious clarity to the conduct at issue. *Vogt v. McIntosh Cnty., Bd. of Cnty. Comm'rs*, 98 F.4th 1013, 1018 (10th Cir. 2024) (citing *Est. of Reat v. Rodriguez*, 824 F.3d 960, 964-65 (10th Cir. 2016)).

a. **For two decades, this Court's precedent has established officials' constitutional duty not to ignore a detainee's request for medical attention or delay treatment for serious medical needs.**

It is beyond debate that at least two decades of precedent in this Circuit made clear that Appellants' conduct violated the Fourteenth Amendment. When viewed in the light most favorable to Mr. Hardy, the well-pleaded allegations show that Appellants ignored or delayed treatment for Mr. Hardy's severe pain despite being made aware of his medical emergency and controlling his access to medical care. Appellants' arguments disregard this Court's settled and controlling law in materially similar cases that put them on notice that their behavior was unconstitutional. No reasonable prison official could view such conduct as constitutional in 2022 given this existing precedent.

This Court has "seen cases like this before" and there are multiple cases on point, spanning decades. *See Paugh*, 47 F. 4th at 1167-68 ("[t]here is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right."). In each of these cases: 1) a detainee suffers from a severe medical need; 2) a prison official receives an indication of the detainee's need for emergency medical assistance; and 3) the official failed to act or delayed action by either ignoring the detainee's requests or delaying medical care for a significant period of time. As a result, each case presents materially similar facts to Mr. Hardy's and clearly proscribes the Appellants' conduct in September 2022.

Twenty-four years ago, this Court decided *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000), which has become the touchstone of the Court's jurisprudence on ignoring

or delaying medical treatment for a detainee's serious medical needs and presents materially similar facts to Mr. Hardy's case. In *Sealock*, the detainee awoke during the night feeling unwell and sweating heavily. *Id.* at 1207. He asked his roommate to summon an officer, who later involved the shift commander. *Id.* at 1208. The detainee told the shift commander that he was having chest pain and might be having a heart attack. *Id.* The shift commander responded that "there was nothing he could do for him." *Id.* The shift commander also instructed the detainee: "Just don't die on my shift. It's too much paperwork." *Id.* The Court concluded that the shift commander "knew of and disregarded the excessive risk to appellant's health that could result from the delay," which satisfied the subjective element of the deliberate indifference test for purposes of summary judgment. *Id.* at 1210-11.

Two years later, this Court addressed a similar fact scenario in *Olsen v. Layton Hills Mall*, 312 F.3d 1304 (10th Cir. 2002). In *Olsen*, an arrestee indicated to prebooking officers that he had obsessive compulsive disorder (OCD) and required medication to stave off panic attacks. *Id.* at 1310. The arrestee experienced an OCD-related panic attack on the ride to jail and informed the officer accompanying him about the attacks twice. *Id.* at 1317. Nonetheless, the officer gave no response. This Court held that the arrestee's allegation that he twice told the officer that he was having a panic attack with the officer's admission that the arrestee mentioned prior health problems "together signify that [the officer] *may have known* of—and disregarded—an excessive risk" to the arrestee's health. *Id.* (emphasis in the original). This Court reversed the district court's

grant of summary judgment because the officer's disregard of the arrestee's OCD and failure to provide him treatment potentially made the officer liable for deliberate indifference. *Id.*

In *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005), a detainee reported to a prison nurse severe chest pains and requested medical attention. *Id.* at 750. The nurse responded, "there was nothing she could do because the infirmary was closed" and told the detainee that she would have to return to the infirmary the following morning. *Id.* The official "neither administered first aid nor summoned medical assistance despite [the detainee's] plea for medical attention." *Id.* at 755. This Court determined a jury could reasonably find that the official "refused to fulfill her duty as gatekeeper [to the detainee's medical care] in a potential [] emergency" by not obtaining medical care for the detainee. *Id.* at 758. The official's inaction was evidence that the detainee "had to endure unnecessary pain and suffering for several additional hours that did not serve any penological purpose." *See id.* (citing *Estelle*, 429 U.S. at 103 (cleaned up)). Consequently, this Court held that a jury could reasonably find that the official's "alleged inaction […] demonstrated deliberate indifference to [the detainee's] serious medical needs" and reversed the district court's grant of summary judgment with regard to that official. *Id.* at 759.

*Sealock*, *Olsen*, and *Mata* thus establish a clear rule that prison officials' disregard of a detainee's request for medical treatment in a potential medical emergency or their

delay in getting such treatment may amount to a violation of the detainee's constitutional rights.

> **b. This Court has itself acknowledged that ignoring or delaying treatment for a detainee's severe medical needs is clearly established as a constitutional violation.**

Over the last decade, this Court has reinforced this clearly established right. In *Al-Turki v. Robinson*, 762 F.3d 1188 (10th Cir. 2014), the Court applied the rule that ignoring or delaying treatment for a detainee's severe medical needs is a constitutional violation.

In *Al-Turki*, a detainee used the intercom in his cell to relay his symptoms of severe pain and nausea to prison staff and to request to go to the medical center. *Id.* at 1191. Despite being informed of these symptoms multiple times and knowing that the detainee had Type II diabetes, the prison nurse would not see the detainee because it was too late and because she believed his "complaint was not an emergency." *Id.* She was also the only medical staff member on duty and her decision to ignore the request for medical treatment left him without medical assistance. *Id.* at 1191-92.

The *Al-Turki* Court explained that "[i]t has been clearly established in this circuit since at least 2006" that a deliberate indifference claim will arise when a medical professional[3] "completely denies care although presented with recognizable symptoms

---

[3] While the prison staff involved in both *Mata* and *Al-Turki* were licensed medical professionals, this Court has established that the right to be free from deliberate indifference to serious medical conditions while in custody is clearly established for lay

which potentially create a medical emergency." *Id.* at 1994. Taking the facts in the most favorable light to the detainee, the official violated "clearly established law by choosing to ignore [the detainee's] repeated complaints of severe abdominal pain and requests for medical assistance, thus completely denying him any medical care 'although presented with recognizable symptoms which potentially created a medical emergency.'" *Id.* at 1195 (cleaned up) (citing *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006)). This Court thus affirmed the district court's denial of qualified immunity to the official. *Id.*

In the last five years, this Court has faithfully applied these prior cases as clearly establishing that jail officials may not ignore or delay treatment for a detainee's serious medical needs. For example, in *McCowan v. Morales*, 945 F.3d 1276 (10th Cir. 2019), a detainee sufficiently alleged a claim of deliberate indifference when officers disregarded his pre-existing neck and shoulder injury and his "searing" shoulder pain when he was

---

officials as well as medical professionals. *See, e.g. Lance v. Morris*, 985 F.3d 787, 796 (10th Cir. 2021). As early as *Sealock*, the Court found that the type of deliberate indifference that occurs "when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment," applies equally to medical personnel who played the role of "gatekeeper" to other medical personnel capable of treating the detainee. *See Sealock*, 218 F.3d at 1211; *see, also Burke v. Regalado*, 935 F.3d 960, 993 (10th Cir. 2019). Accordingly, this Court has consistently relied on *Mata*, *Al-Turki* and other cases involving the deliberate indifference of medical professionals in their gatekeeper role to establish the similar constitutional duty of lay prison officials. *See e.g.*, *Lance*, 985 F.3d at 800 (cases involving medical professionals "do not vitiate the duty of lay officials ... lay officials (just like medical professionals) can incur liability for delays in providing medical treatment."); *see also Paugh*, 47 F. 4th at 1167.

handcuffed for approximately two hours. *Id.* at 1280-92. The *McCowan* Court relied on this Court's prior decisions in *Olsen* and *Sealock* for the principle that an officer's conduct in "denying [] medical care caus[ing] 'excruciating pain' for several hours" was clearly established as unconstitutional in August 2015. *Id.* at 1292-93.

Likewise, in *Quintana*, this Court concluded that a reasonable factfinder could find that an officer who observed that a detainee "appeared sick and vomited numerous times," 973 F.3d at 1030, clearly violated a detainee's established constitutional rights because "when a detainee has obvious and serious medical needs, ignoring those needs necessarily violates the detainee's constitutional rights." *Id.* at 1033. The Court added that the law was clearly established "[f]ar before" the officer interacted with the detainee in January 2016. *Id.*

Most recently, in *Lance,* the Court further reinforced this series of decisions, concretizing the clearly established right for substantial pain. 985 F.3d at 787. In *Lance*, plaintiff detainee took a pill and awoke the next morning with an erection that would not go away. *Id.* at 792. He used his intercom to call the control tower, spoke with a sergeant about consuming the pill, but did not suggest a serious medical need. *Id.* at 794. The plaintiff called the tower a second time, spoke to a different officer, and requested medical attention. *Id.* He made repeated requests for medical care, including to a guard delivering his breakfast tray, and reported the persistent erection, intense pain, and a need for medical treatment. *Id.*at 794-98. While the Court found that the sergeant did not meet the subjective prong, *see supra* §1(b)(i), this Court denied summary

judgment to the guard who received a request for medical assistance and the guard who delivered the breakfast tray, especially as other detainees' accounts stated that the detainee "was obviously continuing to suffer pain," concluding that a reasonable factfinder could infer that they had been aware of a substantial risk of serious harm and had knowingly disregarded that risk. *See id.* at 796, 804.

In addition, this Court rejected qualified immunity for the guard who "manned the control tower" on the afternoon the detainee first experienced pain because it could be inferred that the detainee had complained to that guard about the pain. *Id.* at 797. Accordingly, the officer stationed at the control tower had also been aware of a substantial risk to the detainee and had knowingly disregarded that risk. *Id.* at 798

In *Lance*, this Court held that the detainee's arguments were "grounded in the controlling law, which establishes that a delay in providing medical care may be sufficiently serious if the delay leads to substantial pain," and a permanent injury is not required under Tenth Circuit precedent to establish a serious risk of harm. *See id.* at 800. In reaching its conclusion that the three guards "violated a clearly established constitutional right," since August 2015, this Court relied on *McCowan*, *Olsen*, *Sealock*, *Al-Turki*, and *Mata,* to find that "our precedents have clearly established a jail guard's constitutional obligation to obtain medical care when (1) a detainee experiences severe pain and (2) the jail guard controls access to medical care." *Id.* at 799-800.

Accordingly, this Court's precedent clearly establishes that a prison official violates a clearly established constitutional right when the official ignores a detainee's

serious medical needs, including severe pain, or delays treatment for such needs. Appellants should have been aware that ignoring Mr. Hardy's request for medical treatment due to his severe pain and disregarding or delaying him medical treatment clearly violated his constitutional rights.

### c. These cases clearly apply to Mr. Hardy's situation and Appellants' materially similar conduct.

Each of these cases presents materially similar facts to Mr. Hardy's and clearly proscribes the Appellants' conduct in September 2022. Here, as in each case discussed above, Mr. Hardy suffered from a severe medical need. Though Appellants argue that "[n]one of the cases involve back pain," Op. Br. at 47, Mr. Hardy's severe pain is directly analogous to the "severe," "intense," or "significant" pain experienced by the detainees in *Sealock, Mata, Al-Turki, Lance*, and *McCowan* that this Court held were clearly covered under this constitutional right.

While Appellants ignore Mr. Hardy's allegation of additional injury caused by Appellants' delay, they also present no authority for why Mr. Hardy's allegation of severe pain should be viewed differently than prior cases. This Court has rejected similar arguments that "longer periods of pain and more serious underlying health conditions," are required to prompt officials' constitutional duty. *See Al-Turki*, 762 F.3d at 1194. Instead, it mattered whether the situation at the time could "be a sign of any number of serious, life-threatening conditions." *Id.* Indeed, this Court has extended this clearly established right to receive medical treatment not only to shoulder pain, but to the

bloody vomiting at issue in *Quintana* and the arrestee's OCD-related anxiety in *Olsen*

which are notably distinct from severe pain.

And here, as in each case discussed above, prison officials received multiple

indications of Mr. Hardy's need for emergency medical assistance, both directly and via

the activation of the emergency distress button in his cell but did nothing to obtain

medical attention for Mr. Hardy. App. Vol. I at 21-22 ¶¶ 25-31. This Court has made

no distinction about how officials became aware of the detainee's medical needs. As it

relates to determining whether there was a constitutional violation, an official's

observation of symptoms in *Quintana* was as relevant as the direct reports by the

detainees themselves in *Sealock*, *Olsen*, *Mata*, *Al-Turki*, *McCowan*, and others' accounts of

the detainee's "obvious" suffering in *Lance*. Appellant Rabie received a direct request

for medical attention and directly observed Mr. Hardy's pain and contorted position,

putting Appellant Rabie on notice. Similarly, the detainee's use of an intercom in *Al-

Turki* or *Lance* to request medical attention from the prison staff did not alter the Court's

analysis. *See Al-Turki*, 762 F.3d at 1191; *Lance*, 985 F.3d at 792. Indeed, the officer

manning the control tower in *Lance*, like Appellant DeHerrera, was presumed to have

"been aware of a substantial risk [due to the detainee's reports of pain] and had

knowingly disregarded that risk." *Lance*, 985 F.3d at 797.

Finally, in each case, the official failed to act or delayed action by either ignoring

the detainee's requests or clear need for treatment or delaying medical care for a

significant period of time. *See McCowan,* 945 F.3d at 1293 (care delayed by

"approximately two hours."). Appellants contend, again without authority, that this Court's precedent must "feature a delay that is causally linked to an objectively serious harm" or "set clearly defined or well-contoured limits for when an inmate's experience of pain must be referred to emergency medical treatment in cases involving back pain." Op. Br. at 48. This imposes a much higher burden than this Court's precedent has established over the past two decades. As the *Al-Turki* panel indicated, "[i]t has been clearly established in this circuit since at least 2006 that a deliberate indifference claim will arise when [an official] completely denies care although presented with recognizable symptoms which potentially create a medical emergency," with the Court giving the example of a complaint of chest pains rather than the ultimate diagnosis of kidney stones. 762 F.3d at 1194. As the cases demonstrate, it is the *potential* for a medical emergency as evidenced by the individual's severe pain or severe medical needs that creates the constitutional obligation. The relevant inquiry for a qualified immunity analysis, "depends on the facts that were known at the time." *See id.* The three emergency distress calls transmitted to Appellant DeHerrera, Mr. Hardy's request to Appellant Rabie for medical help, visible signs of severe pain, and contorted positioning evidenced the potential of a clear medical emergency, yet the Appellants ignored his multiple requests for medical attention and treatment.

In sum, the violation of Mr. Hardy's constitutional rights is as clear from the Court's decision in *Sealock* as in its most recent reiteration in *Lance* in 2021. Consequently, no reasonable prison official in September 2022 could fail to understand

that being made aware of Mr. Hardy's need for medical attention and ignoring his potential medical emergency was unconstitutional.

### d. Other circuits' jurisprudence confirms that Appellants' constitutional obligations are clearly established.

While the Tenth Circuit's precedent sufficiently demonstrates that officials have a constitutional duty not to ignore or delay treatment for a detainee's serious medical needs, other circuits' case law also confirm this. *See, e.g. Williams v. City of Yazoo*, 41 F.4th 416, 425-26 (5th Cir. 2022) (holding officer was deliberately indifferent to arrestee's medical needs when fellow detainees tried to get officers' attention and she did not investigate concerns, call for medical help, or perform hourly checks); *Schaub v. VonWald*, 638 F.3d 905, 918-19 (8th Cir. 2011) (official was deliberately indifferent to medical needs of paraplegic when the detention center could not accommodate the detainee's needs and, while aware of the needs, the officer hid this fact from presiding judge.); *Phillips v. Roane Cnty.*, 534 F.3d 531, 545 (6th Cir. 2008) ("where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process.") (citation omitted).

Indeed, the Seventh Circuit has specifically held that a detainee's use of an emergency call button was enough to indicate an emergency and trigger officers' constitutional duty to respond. *Velez v. Johnson*, 395 F.3d 732 (7th Cir. 2005). In that case, the Seventh Circuit affirmed a denial of summary judgment in the case of a

detainee who had pressed the emergency call button in an attempt to prevent an assault by a cellmate. The Seventh Circuit held that the facts could support a finding of deliberate indifference because the detainee "signaled [the officer] for help in the only way he could, but was effectively ignored." *Id.* at 736. The Court recognized that pushing the emergency call button was "a clear indication that an emergency was at hand." *Id.* The Court noted, the officer "was instructed to personally respond to emergencies" and "did not need to know the specifics of the [risk the detainee faced] to be culpable." *Id.* What mattered was that the officer was "aware of a serious risk of harm in some form." *Id.* The Seventh Circuit affirmed the lower court's denial of qualified immunity because the officer's failure to respond to the detainee's repeated pressing of the emergency call button violated his clearly established "right to be free from deliberate indifference to rape and assault." *Id.*

## III. APPELLANTS' REMAINING ARGUMENTS ARE UNPERSUASIVE.

Given the overwhelming authority establishing a violation of Mr. Hardy's constitutional rights under law that was clearly established by September 2022, Appellants seek to obscure the relevant inquiry here, by asserting that Mr. Hardy somehow failed to meet his burden in the qualified immunity inquiry, Op. Br. at 57-60, and that it was improper for the lower court to supplement its legal analysis of clearly established law with independent research, Op. Br. at 56-61. But none of the cases cited

by Appellants suggest any error in the district court's analysis, and their arguments should be soundly rejected.

### a. Appellants' arguments about generalized statements of law are inapplicable in this matter.

Regarding sufficiently specific articulations of clearly established law, there is no dispute that the Supreme Court has warned against denying qualified immunity when the articulated law is overly generalized. However, this proposition has no bearing on what occurred at the lower court. Indeed, while Appellants discuss the cases presented by Mr. Hardy and cited by the court below, they do not challenge the district court's articulation that "[w]here a detainee has a serious and obvious medical need, ignoring those needs" will violate the "clearly established standards set in this Circuit.". App. Vol. II at 294. Nor could they identify any actual deficit in the lower court's analysis or demonstrate how the authorities on overly general propositions relate to this matter.

Instead, Appellants seemingly premise their argument on the lower court's passing reference to "general statements of law" and this phrase's superficial similarity to defining rights at "too high a level of generality." But this case is not one where the district court denied qualified immunity based on a general statement of the law or one at a high level of generality. On the contrary, as explained above, the district court properly denied qualified immunity here because this Court has repeatedly articulated a specific rule in cases with materially indistinguishable facts: that prison officials'

disregard of a detainee's request for medical treatment in a potential medical emergency or their delay in getting such treatment may amount to a violation of the detainee's constitutional rights. This case is dissimilar from the ones relied on by Appellants where, for example the Supreme Court recognized that "[t]he general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *see also White*, 580 U.S. at 79-80 (explaining that *Graham v. Connor* and *Tennessee v. Garner*, the seminal cases articulating the standards for use of force analysis, are generally too broad to clearly establish the contours of the right in an excessive force case).

### b. Courts are not prohibited from conducting independent research to supplement a plaintiff's articulation of clearly established rights.

Appellants also argue that the lower court, by supplementing its analysis of clearly established law with cases independently located, "fundamentally alter[ed] how qualified immunity is to be addressed . . . by obviating the plaintiff's burden of persuasion." Op. Br. at 59-60. However, that is not what happened here: Mr. Hardy made a clear and specific argument demonstrating why qualified immunity should be denied, and he cited several Tenth Circuit cases supporting that argument, including a number of the cases described above. *See* App. Vol. I at 191-96 (citing *inter alia Al-Turki*, *Mata*, and *Quintana*). The district court did not err by doing additional research and discussing additional cases that addressed these principles in its opinion.

Here too, this case bears no resemblance to those cited by Appellants, *see* Op. Br. at 58, which instead involved situations where (1) a plaintiff contests facts but fails to provide legal analysis to show how the officers' actions violated clearly established law, *Rojas v. Anderson*, 727 F.3d 1000, 1004 (10th Cir. 2013); (2) a plaintiff's rebuttal fails to mention the terms "qualified immunity" or "clearly established," *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013); and (3) when plaintiffs "did not present any legal authority or legal argument" to the district court in response to defendant's invocation of qualified immunity, *Gutierrez v. Cobos*, 841 F.3d 895, 901 (10th Cir. 2016).

Further, Appellants' core contention that district courts are required to limit their analysis of clearly established law to the cases presented by a party, a detained *pro se* party with limited resources at that, conflicts with foundational principles of qualified immunity and the judicial system. Simply put, there is no restriction on a judge's ability to independently research questions of law.

Appellants present *Davis v. Scherer*, 468 U.S. 183, 197 (1984), as a case demanding a high standard for plaintiffs in their burden to show that rights were clearly established at the time of the conduct at issue. Op. Br. at 56. In Appellants' view, the articulation of clearly established rights can only be shaped by a plaintiff's presentation and cannot be supplemented by a court. However, in *Elder v. Holloway*, 510 U.S. 510 (1994), the Supreme Court gave clear guidance regarding this exact question in the qualified immunity context. There, the Supreme Court overturned a Ninth Circuit decision that had interpreted *Davis v. Scherer* as requiring plaintiffs to "put into the district court

record, as 'legal facts,' the cases showing that the right was clearly established." *Id.* at 514. Like Appellants here, the intermediate court concluded that: "the plaintiff's burden in responding to [an invocation of] qualified immunity is to identify the universe of statutory or decisional law from which the court can determine whether the right allegedly violated was clearly established." *Id.* But the Supreme Court rejected this reasoning. In doing so, it explained that the deterrent purpose of qualified immunity was not furthered where defendants were granted qualified immunity "because of shortages in counsel's *or the court's* legal research or briefing." *Id.* at 515 (emphasis added).

While Appellants recognize *Elder*, they contend that it occupies an unclear position relative to *Davis* and its articulation of a plaintiff's burden. Op. Br. at 58 ("This Court has not explicitly addressed how *Elder*'s mandate fits with *Davis*'s allocation of the burden to plaintiff on to prong two of the qualified immunity test."). Yet, *Elder* leaves no room for confusion. In *Elder*, the Court was remarkably clear that *Davis* "concerned not the authorities a court may consider in determining qualified immunity." *Id.* at 515. The Court also commented that a court engaging in review of a qualified immunity judgment should therefore use its "full knowledge of its own [and other relevant] precedents." *Id.* at 516. All of this is consistent with the general principles of our legal system which allow judges free reign when it comes to questions of law. *See de Fontbrune v. Wofsy*, 838 F.3d 992, 999 (9th Cir. 2016), *as amended on denial of*

*reh'g and reh'g en banc* (Nov. 14, 2016) ("Although our common law system relies heavily on advocacy by the parties, judges are free to undertake independent legal research beyond the parties' submissions. It is no revelation that courts look to . . . legal materials in figuring out what the law is and resolving legal issues."); Edmund M. Morgan, *Judicial Notice*, 57 Harv. L. Rev. 269, 271 (1944) ("In describing the exercise of the judge's functions as to domestic law, it is commonly said that the judge takes judicial notice of the law.").[4]

In any case, Mr. Hardy cited the seminal cases which establish that Appellants' unconstitutional deprivation of medical care was clearly established. Within this context, the district court could of course consider other cases in the same line of precedents. Specifically, Mr. Hardy cited this Court's foundational cases on this issue: *Sealock* and *Mata* in his Response to Appellants' motion to dismiss, App. Vol. I at 178-79. In addition, Mr. Hardy specifically cites three other critical cases in his clearly established analysis: *Mata, Quintana*, and *Al-Turki,* which are on their own sufficient to meet his burden. App. Vol. I at 191-96.

As discussed above, *Mata* is one of this Court's foundational cases putting officers on notice that an official ignoring or delaying medical attention to a detainee who was experiencing severe chest pain and was told by an official "there was nothing

---

[4] Overall, Appellants argument seems to confuse the restriction on courts conducting independent research of legal facts with the principles regarding questions of law. *See* Fed. R. Evid. 201.

she could do" may constitute deliberate indifference. *Mata*, 427 F.3d at 750. The *Mata* court reversed the grant of summary judgment because the official "refused to fulfill her duty as gatekeeper in a potential [] emergency," causing the detainee unnecessary pain and suffering for hours. *Id.* at 758.

Mr. Hardy also cites both *Al-Turki* and *Quintana*, which not only detail similar conduct from officials and similar indications of unconstitutional deprivation of medical care but, as indicated above, themselves firmly and explicitly express this Circuit's clearly established law on this issue. *See Al-Turki*, 762 F.3d at 1194; *Quintana*, 973 F.3d at 1033. The Court in *Quintana* was unequivocal, stating the law was clearly established "that when a detainee has obvious and serious medical needs, ignoring those needs necessarily violates the detainee's constitutional rights." *Id.* at 1033.

Appellants' constitutional duty to provide Mr. Hardy with medical care when he requested medical attention for his severe pain and other serious medical needs was clearly established in this Circuit. By citing several of this Court's binding cases establishing that right, Mr. Hardy more than met his burden.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's decision denying the Appellants qualified immunity.

## ORAL ARGUMENT STATEMENT

Plaintiff-Appellee respectfully requests oral argument to address any new arguments that the Defendants-Appellants may raise in their reply brief and to address any additional points regarding *Cummings v. Dean*, which the Defendants-Appellants raised for the first time in this appeal.

Date: September 4, 2024

*/s/ Kevin E. Jason*
Samuel Spital
Kevin E. Jason*
NAACP Legal Defense &
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
kjason@naacpldf.org
(212) 965-2200

Christopher Kemmitt
Molly Cain
Kacey Mordecai
NAACP Legal Defense &
Educational Fund, Inc.
700 14th St., NW
Washington, DC 20005
(202)682-1300
*\* Counsel of Record*

*Attorneys for Plaintiff-Appellee*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 11,651 words. This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word version 2304 with 14 point Garamond font.

Date: September 4, 2024

*/s/ Kevin E. Jason*
Kevin E. Jason
NAACP Legal Defense &
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
kjason@naacpldf.org
(212) 965-2200

*Attorney for Plaintiff-Appellee*

## CERTIFICATE OF DIGITAL SUBMISSION

Pursuant to Fed. R. App. P. 25, 10th Cir. R. 25.3, and Section II.J of the Court's CM/ECF User Manual, I hereby certify that (1) all required privacy redactions have been made in accordance with Fed. R. App. P. 25(a) and 10th Cir. R. 25.5; (2) any hard copies of this brief required to be submitted shall be exact copies of this electronically filed version, which was submitted to the Clerk of the United States Court of Appeals for the Tenth Circuit using the CM/ECF system; and (3) this brief has been scanned for viruses with the most recent version of the commercial virus scanning program SentinelOne, and no viruses were detected.

Date: September 4, 2024

*/s/ Kevin E. Jason*
Kevin E. Jason
NAACP Legal Defense &
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
kjason@naacpldf.org
(212) 965-2200

*Attorney for Plaintiff-Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit using the CM/ECF system, which will also serve counsel for all parties, who are electronically registered CM/ECF users and will be served electronically by the CM/ECF system.


Date: September 4, 2024

/s/ *Kevin E. Jason*
Kevin E. Jason
NAACP Legal Defense &
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
kjason@naacpldf.org
(212) 965-2200

*Attorney for Plaintiff-Appellee*