# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

RALPH MARCUS HARDY,

      Plaintiff-Appellee,

v.

DEPUTY RABIE deputy, and
DEPUTY DEHERRERA, detention
specialist,

      Defendants-Appellants.

Case No. 24-1138

---

On Appeal from the United States District Court
For the District of Colorado
Honorable Judge William J. Martinez
Civil Action No. 1:22-cv-02843-WJM-MDB

---

## APPELLANTS' OPENING BRIEF

---

Respectfully submitted,

Michael A. Sink
Kerri A. Booth
Adams County Attorney's Office
4430 S. Adams County Parkway,
Brighton, CO 80601
Phone: (720) 523-6116
Email: msink@adcogov.org
Email: kbooth@adcogov.org

June 4, 2024.

## ORAL ARGUMENT IS NOT REQUESTED

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................iv

STATEMENT OF PRIOR RELATED APPEALS ....................................ix

JURISDICTIONAL STATEMENT...........................................................1

   I.   DISTRICT COURT JURISDICTION. ......................................................1

   II.   APPELLATE JURISDICTION..................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..............3

STATEMENT OF THE CASE ...................................................................3

   I.   ALLEGATIONS RELEVANT TO THE APPEAL. .......................................3

   II.   PROCEDURAL HISTORY......................................................................6

   III.   APPELLANTS' MOTIONS TO DISMISS, THE MAGISTRATE JUDGE'S
      RECOMMENDATION, AND THE RESULTING COURT ORDER. ................8

SUMMARY OF THE ARGUMENT .........................................................13

STANDARD OF REVIEW......................................................................15

ARGUMENT...........................................................................................16

   I.   MR. HARDY HAS NOT ADEQUATELY ALLEGED A CONSTITUTIONAL
      VIOLATION BY EITHER DEPUTY RABIE OR DETENTION SPECIALIST
      DEHERRERA..................................................................................18

     A.   *Mr. Hardy Did Not Allege an Injury that Was Objectively
        Serious Enough to Merit Constitutional Protection.*.................19

     B.   *Mr. Hardy Did Not Adequately Allege Either Deputy Rabie or
        Detention Specialist DeHerrera Were Subjectively Aware of a*

       *Substantial Risk to Mr. Hardy's Health or Safety and Acted in Purposeful Disregard of that Risk.* ........................................... 22

II.   MR. HARDY DID NOT CARRY HIS BURDEN OF PERSUASION ON THE CLEARLY ESTABLISHED PRONG OF THE QUALIFIED IMMUNITY TEST AND THE DISTRICT COURT ERRED IN ADOPTING THE MAGISTRATE JUDGE'S RECOMMENDATION THAT RELIED ON CASELAW NOT CITED BY MR. HARDY. .............................................................. 31

    A.   *The District Court Erred in Relying on General Statements of the Governing Law Rather than Assessing Whether the Facts of Controlling Precedent Were Materially Similar to or Substantially Corresponded with the Conduct Alleged in this Case.* ........................................................................... 33

    B.   *The District Court Erred by Relying on Precedent Not Cited to It by Mr. Hardy to Determine Whether the Law Was Clearly Established on the Date of Mr. Hardy's Fall.* ........................... 56

CONCLUSION ................................................................... 61

STATEMENT OF COUNSEL AS TO ORAL ARGUMENT ................... 61

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ........................ 63

CERTIFICATE OF DIGITAL SUBMISSION ....................................... 64

CERTIFICATE OF SERVICE ............................................... 65

ATTACHMENTS ................................................................... 66

# TABLE OF AUTHORITIES

**CASES:**

*Al-Turki v. Robinson*,
762 F.3d 1188 (10th Cir. 2014) ......................... 18, 48, 51, 52, 59, 63, 64

*Anderson v. Creighton*, 483 U. S. 635 (1987) .......................................... 45

*Apodaca v. Raemisch*, 864 F.3d 1071 (10th Cir. 2017) ........................... 24

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .................................... 26, 44, 64

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................. 11, 24, 25, 36

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................ 24, 25

*Bell v. Wolfish*, 441 U.S. 520 (1979) .......................................................... 27

*Bledsoe v. Carreno*, 53 F.4th 589 (10th Cir. 2022) ................................. 66

*Burke v. Regalado*, 935 F.3d 960 (10th Cir. 2019) ............................ 61, 65

*Casey v. City of Fed. Heights*, 509 F.3d 1278 (10th Cir. 2007). ............. 27

*City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600 (2015) ...... 44, 64

*City of Tahlequah v. Bond*, 142 S. Ct. 9 (2021) .......................... 43, 44, 45

*Cortez v. McCauley,* 478 F.3d 1108 (10th Cir. 2007) (en banc) ..66, 67, 68

*Cox v. Glanz*, 800 F.3d 1231 (10th Cir. 2015) ........................................ 67

*Cummings v. Dean*, 913 F.3d 1227 (10th Cir. 2019) ....... 45, 47, 57, 66, 68

*Davis v. Scherer*, 468 U.S. 183 (1984) ........................................ 12, 65, 68

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ..................... 44, 46, 64

*Duda v. Elder*, No 18-cv-02890-RBJ,
2020 WL 6290383 (D. Colo. Oct. 27, 2020) ......................................... 35

*Elder v. Holloway*, 510 U.S. 510 (1994) ............................................. 45, 67

*Estate of Reat v. Rodriguez*, 824 F.3d 960 (10th Cir. 2016) ............. 41, 56

*Estelle v. Gamble*, 429 U.S. 97 (1976) ...................................................... 28

*Farmer v. Brennan*, 511 U.S. 825 (1994) .................................... 27, 28, 31

*Flyers Rights Educ. Fund, Inc. v. FAA*, 864 F.3d 738 (D.C. Cir. 2017) .. 68

*Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010) ...................................... 25

*Green v. Branson*, 108 F.3d 1296 (10th Cir. 1997) ................................. 39

*Greenlaw v. United States*, 554 U.S. 237 (2008) ................................... 69

*Gross v. Pirtle*, 245 F.3d 1151 (10th Cir. 2001) ...................................... 66

*Gutierrez v. Cobos*, 841 F.3d 895 (10th Cir. 2016) ................................. 67

*Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991) ................................... 25

*Halley v. Huckaby*, 902 F.3d 1136 (10th Cir. 2018) ............................... 47

*Haynes v. Williams*, 88 F.3d 898 (10th Cir. 1996) ................................. 68

*Helvie v. Jenkins*, 66 F.4th 1227 (10th Cir. May 9, 2023) ..................... 37

*Hope v. Pelzer*, 536 U.S. 730 (2002) ................................................. 43, 46

*Hunt v. Uphoff*, 199 F.3d 1220 (10th Cir. 1999) ..................................... 29

*Johnson v. Jones*, 515 U.S. 304 (1995) .................................................... 11

*Jordan v. Adams Cnty. Sheriff's Office*,
    73 F.4th 1162 (10th Cir. 2023) ............................................................. 68

*Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020) .................................... 66

*Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) ................... 36

*Lance v. Morris*, 985 F.3d 787 (10th Cir. 2021) .............. 34, 46, 59, 60, 65

*Lopez v. LeMaster*, 172 F.3d 756 (10th Cir. 1999)....................................27

*Lowe v. Raemisch*, 864 F.3d 1205 (10th Cir. 2017)....................11, 24, 41

*Lutz v. Weld County School Dist.*, 784 F.2d 340 (10th Cir. 1986)..........65

*Malley v. Briggs*, 475 U.S. 335 (1986)....................................................26

*Martinez v. Beggs*, 563 F.3d 1082 (10th Cir. 2009)...........................26, 28

*Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005).......19, 48, 54, 55, 56, 63, 64

*McBride v. Merrell Dow & Pharm., Inc.*,
     800 F.2d 1208 (D.C. Cir. 1986)...........................................................69

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...............................................11

*Mullenix v. Luna*, 577 U.S. 7 (2015) .......................................................45

*Pearson v. Callahan*, 555 U.S. 223 (2009)..................................26, 41, 43

*Pickens v. Aldaba*, 577 U.S. 972 (2015) ..................................................43

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) .........................................11, 45

*Prince v. Sheriff of Carter Cty.*, 28 F.4th 1033 (10th Cir. 2022).57, 59, 65

*Pueblo Neighborhood Health Centers, Inc. v. Losavio*,
     847 F.2d 642 (10th Cir. 1988).............................................................65

*Quintana v. Santa Fe Cty. Bd. of Cty. Comm'rs*,
     973 F.3d 1022 (10th Cir. 2020)..................18, 40, 48, 50, 58, 59, 63, 64

*Reichle v. Howards*, 566 U.S. 658 (2012)................................................43

*Ridge at Red Hawk, LLC v. Schneider*,
     493 F.3d 1174 (10th Cir. 2007)...........................................................12

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008).........................25

*Rojas v. Anderson*, 727 F.3d 1000 (10th Cir. 2013)................................67

*Saucier v. Katz*, 533 U.S. 194 (2001) ....................................... 26

*Sause v. Bauer*, 859 F.3d 1270 (10th Cir. 2017) .................................... 26

*Schwartz v. Booker*, 702 F.3d 573 (10th Cir. 2012) ................................ 26

*Sealock v. Colorado,* 218 F.3d 1205 (10th Cir. 2000) ............. 29, 32, 63-65

*Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006) ......................................... 24

*Smith v. McCord*, 707 F.3d 1161 (10th Cir. 2013) .................................. 67

*Stanton v. Sims*, 571 U.S. 3 (2013) .......................................................... 45

*Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005) .......................... 43

*Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179 (10th Cir. 2000) ...... 47

*United States v. Bowling,*
    2009 WL 6854970 (10th Cir. Dec. 23, 2009) (en banc) ........................ 68

*United States v. Lanier*, 520 U.S. 259 (1997) .......................................... 43

*United States v. Robinson*, 583 F.3d 1265 (10th Cir. 2009) .................... 69

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) ...................... 69

*Vasquez v. Davis*, 882 F.3d 1270 (10th Cir. 2018) .................................. 31

*Walton v. Gomez (In re Estate of Booker),*
    745 F.3d 405 (10th Cir. 2014) ................................. 19, 20, 48, 52, 54, 66

*Washington v. Unified Gov't of Wyandotte Cty,*
    847 F.3d 1192 (10th Cir. 2017) ............................................................. 67

*White v. Pauly*, 580 U.S. 73 (2017) ............................................. 41, 43, 46

*Whitley v. Albers*, 475 U.S. 312 (1986) .................................................... 28

*Wilson v. Sec'y, Dep't of Corr.*, 54 F.4th 652 (11th Cir. 2022) ................ 46

**CONSTITUTIONS:**

U.S. Const., amend. 8 ................................................................ 27

U.S. Const., amend. 14, due process clause ................... 10, 12, 22, 27, 70

**STATUTES:**

28 U.S.C. § 1291 ..................................................................... 11

28 U.S.C. § 1331 ..................................................................... 10

42 U.S.C. § 1983 ..................................................................... 10

**OTHER AUTHORITIES:**

Kenneth Duvall, *Burdens of Proof and Qualified Immunity*, 37 S. ILL. U. L.J. 135, 145 (2012) ............................................................. 66

## STATEMENT OF PRIOR RELATED APPEALS

There are no prior or related appeals in this matter.

# JURISDICTIONAL STATEMENT

## I.    District Court Jurisdiction.

Mr. Hardy asserted four claims under federal law against multiple defendants arising out of his incarceration at the Adams County Detention Facility. As to Deputy Rabie and Detention Specialist DeHerrera, Mr. Hardy asserted a claim under 42 U.S.C. § 1983 alleging a violation of his Fourteenth Amendment Due Process right against deliberate indifference to a serious medical need. Subject matter jurisdiction in the district court existed under 28 U.S.C. § 1331.

## II.    Appellate Jurisdiction.

On March 18, 2024, United States District Court Judge Martinez entered an Order Adopting in Part, Adopting as Modified in Part, and Rejecting in Part the July 19, 2023 Recommendation of the Magistrate Judge as to Deputy Rabie's and Detention Specialist DeHerrera's respective motions to dismiss. App. Vol. II at 279. In that order, the Court denied qualified immunity to both Deputy Rabie and Detention Specialist DeHerrera. App. Vol. II at 317 & 318. Deputy Rabie and Detention

Specialist DeHerrera timely filed their notice of appeal on April 9, 2024. App. Vol II at 319.

This Court has jurisdiction under 28 U.S.C. § 1291 over "appeals from all final decisions from the district courts." While partial denials of a motion to dismiss are not ordinarily reviewable as a final decision, the collateral-order doctrine creates appellate jurisdiction over certain intermediate rulings on pure issues of law. *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). A collateral order exists where it "(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment." *Johnson v. Jones*, 515 U.S. 304, 310 (1995); *see also Plumhoff v. Rickard*, 572 U.S. 765, 771-72 (2014); *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). An express denial of qualified immunity at the motion to dismiss stage such as the one at issue here falls squarely within the collateral-order doctrine. *Iqbal*, 556 U.S. at 672; *Lowe v. Raemisch*, 864 F.3d 1205, 1207 (10th Cir. 2017).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Did the district court err in finding Mr. Hardy had adequately stated a claim for a violation of his Fourteenth Amendment right to medical treatment?

2.      Did the district court err by misapplying the standard for determining whether the law was clearly established or by nullifying Mr. Hardy's burden of persuasion on that issue as set forth in *Davis v. Scherer*, 468 U.S. 183, 197 (1984) and its progeny?

## STATEMENT OF THE CASE

### I.      Allegations Relevant to the Appeal.

For purposes of a motion to dismiss, the Court must assume the truth of any well-pled allegations in the operative complaint. *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Here, Mr. Hardy alleges he is a former inmate at the Adams County Detention Facility who was booked into custody on October 6, 2021. App. Vol. I at 16 and 102. He alleges he suffers from an unspecified pre-existing disability that confines him to a wheelchair. App. Vol. I at 106, ¶¶ 20 & 22; & 107, ¶ 25; 114. Mr. Hardy alleges that during a portion of

his stay at the jail, he was housed in a cell that provided only limited wheelchair access through the door and to the shower, toilet, sink, writing table, and law kiosk. *Id.* at 106, ¶ 22.

According to Mr. Hardy, on September 22, 2022, Detention Specialist DeHerrera was stationed in the control tower. At some unspecified point while Detention Specialist DeHerrera was on shift, Mr. Hardy alleges he fell from his wheelchair while he was in his cell with the door closed and while attempting to maneuver around the privacy barrier for the toilet. *Id.* at 107, ¶ 25. This fall "permanently injured his lower back" and left him unable to rise from the floor near the toilet. *Id.*

His cellmate then pressed the distress button located in his cell and eventually helped Mr. Hardy back up into his wheelchair which, according to Mr. Hardy, caused him additional injuries. *Id.* at 107, ¶¶ 26-28. Mr. Hardy alleges that he waited between an hour to an hour and a half for a response to the activated distress button. *Id.* at 107-108, ¶¶ 2 & 29. Mr. Hardy conclusorily asserts Detention Specialist "DeHerrera acted deliberately indifferent and intentionally failed to notify the floor deputies of a call for emergency medical attention despite the known or

obvious risk of harm Mr. Hardy was subjected to." *Id.* at 107, ¶ 26. Mr. Hardy offers no factual predicate for his allegation about what someone in the jail tower did or did not know or do.

As to Deputy Rabie, Mr. Hardy alleges Deputy Rabie was the first to enter the housing unit after the distress button had been activated. *Id.* at 108, ¶ 30. But according to Mr. Hardy, Deputy Rabie had not been informed that the distress button had been pressed because he was "only escorting the inmate porters serving dinner." *Id.* at 107, ¶ 26 & 108, ¶ 30. When Deputy Rabie opened the door to Mr. Hardy's cell to pass him his dinner meal, Mr. Hardy was no longer lying on the floor, but had already been moved to his wheelchair. Here, Mr. Hardy alleges that Deputy Rabie saw Mr. Hardy in a "contorted position and in extreme pain." *Id.* at 108, ¶ 31. Mr. Hardy then indicated that Deputy Rabie asked Mr. Hardy what happened to him and that is when Mr. Hardy "verbally declared a medical emergency and informed Deputy Rabie that he had fallen while trying to make the wheelchair/toilet transfer." *Id.* Mr. Hardy also complained that the cell was not wheel-chair accessible. *Id.* Mr. Hardy

alleges that in response, Deputy Rabie told Mr. Hardy to file a grievance and then reclosed the cell door in Mr. Hardy's face. *Id.*

Approximately an hour and a half after his fall, Mr. Hardy was visited by a nurse along with Deputy Chavez after the shift change. *Id.* at 109, ¶¶ 35-36. According to Mr. Hardy, "Deputy Chavez also informed Mr. Hardy that the reason defendant Det. Specialist DeHerrera did not respond to the emergency call button from his cell is because the living unit deputies have their own personal policy not to respond to the buttons because 'some inmates abuse the buttons, and they are not going to spend their entire shift chasing buttons.'" *Id.* at 109, ¶ 37 (cleaned up); *see also id.* at 111-112, ¶45.

The complaint is otherwise silent as to any post-incident medical treatment or injuries Mr. Hardy may have received. No further injury is alleged after Mr. Hardy's cellmate transferred him back into his chair, which occurred prior to Deputy Rabie arriving at the cell.

## II.   Procedural History.

On October 28, 2022, Mr. Hardy filed his initial complaint. App. Vol. I at 2. On November 28, 2022, the district court ordered Mr. Hardy

to file an amended complaint, App. Vol. I at 3, which he did on December 5, 2022. App. Vol. I at 3. On December 27, 2022, Mr. Hardy filed a motion to add Detention Specialist DeHerrera to the list of defendants. App. Vol. I at 43. The district court granted Mr. Hardy's motion and directed him to refile the entirety of his amended complaint with Detention Specialist DeHerrera added as a Defendant. App. Vol. I at 69.

On February 17, 2023, Mr. Hardy filed his second amended complaint. App. Vol I. at 98. On April 5, 2023, Deputy Rabie filed a motion to dismiss. App. Vol. I at 150. On April 13, 2023, Detention Specialist DeHerrera likewise filed a motion to dismiss. App. Vol. I at 161. Both Deputy Rabie and Detention Specialist DeHerrera raised qualified immunity in their motions. App. Vol. I at 153 & 167. Mr. Hardy filed a combined response to those motions on May 8, 2023. App. Vol. I at 174. On May 22, 2023, Deputy Rabie and Detention Specialist DeHerrera filed separate replies in support of their motions to dismiss. App. Vol. I at 206 & 214.

On July 19, 2023, after briefing was completed on the motions to dismiss, United States Magistrate Judge Dominguez Braswell entered

her recommendation on both motions, recommending among other things that the district court deny qualified immunity to both Deputy Rabie and Detention Specialist DeHerrera. App. Vol. I at 222, 231.

On August 2, 2023, Deputy Rabie and Detention Specialist DeHerrera filed their objections to the magistrate judge's recommendation. App. Vol. I at 246 & 269. On March 18, 2024, United States District Court Judge Martinez entered an order adopting in part, adopting as modified in part, and rejecting in part the magistrate judge's recommendation. App. Vol. II at 279. In that order, the Court denied qualified immunity to both Deputy Rabie and Detention Specialist DeHerrera, albeit on different grounds than those recommended by the magistrate judge. *Id.* at 293 and 310.

### III. Appellants' Motions to Dismiss, the Magistrate Judge's Recommendation, and the Resulting Court Order.

As noted above, both Deputy Rabie and Detention Specialist DeHerrera raised both prongs of the qualified immunity inquiry in their respective motions to dismiss. App. Vol. I at 150 & 161.

Mr. Hardy filed a combined response to those motions on May 8, 2023. App. Vol. I at 174. In his 29-page response, Mr. Hardy dedicated roughly 15 pages to the substantive elements of his deliberate indifference claim. *Id.* at 176-191. In a separate section, he then spent roughly 6 pages discussing the state of the law at the time of the incident in an effort to demonstrate the law was clearly established. *Id.* at 191-196. In support, he cited 27 cases, 18 of which were merely offered in support of the general qualified immunity legal standard or the various judicial articulations as to how broadly or narrowly prior precedent should be construed. As to precedent actually relating to the provision of medical treatment to inmates, Mr. Hardy cited nine cases addressing the provision of medical service. *Id.* at 193-195. Of those nine cases, one was an unpublished decision from this Court, and four were district court decisions from various judicial districts within the Tenth Circuit. The four published decisions from this Court relied upon by Mr. Hardy were *Quintana v. Santa Fe Cty. Bd. of Cty. Comm'rs*, 973 F.3d 1022 (10th Cir. 2020), *Al-Turki v. Robinson*, 762 F.3d 1188 (10th Cir. 2014), *Walton v.*

*Gomez (In re Estate of Booker)*, 745 F.3d 405 (10th Cir. 2014), *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005).

On May 22, 2023, Deputy Rabie and Detention Specialist DeHerrera filed separate replies in support of their motions. Vol. I at 206 and 214. Each defendant argued the precedent cited by Mr. Hardy either attempted to define the governing legal standard at too high a level of generality or ignored critical factors unique to this case. App. Vol. I at 210 & 218-219.

In the recommendation, the magistrate judge reasoned:

> Here, the Court has no trouble finding Plaintiff satisfies both prongs against both Defendants. Plaintiff alleges he fell in his cell and permanently injured his lower back. (Id. at ¶¶ 22, 25.) The fall "immobilized" him. (Id. at ¶ 25.) He allegedly soiled himself because of the extreme pain and his inability to move. (Id. at ¶¶ 27–28, 31.) Detention Specialist De[H]errera—the ACDF official tasked with alerting floor deputies when detainees press the emergency distress button—allegedly ignored the emergency distress calls coming from Plaintiff's cell because "chasing buttons" was not worth his or his unit's time. (Id. at ¶¶ 26–27, 45.) That led to an additional injury to Plaintiff when his cellmate tried lifting him into his wheelchair. (Id. at ¶¶ 28, 42.) It also prolonged Plaintiff's suffering for at least several hours and delayed his visiting with medical personnel who could have assessed and assisted him.

App. Vol. I at 232-233. In an earlier footnote, the magistrate judge had recast the statement attributed to Deputy Chavez into a statement that "that Detention Specialist De[H]errera's unit has 'their own personal policy' of not responding to emergency distress calls 'because some inmates abuse the button,' and they do not want to 'spend their entire shift chasing buttons[,]'" *Id.* at 224, citing comp. at ¶¶ 36–37, 45.

As to Deputy Rabie, the magistrate judge found his failure to summon immediate attention in response to Mr. Hardy's bald declarations of extreme pain and declaring a medical emergency sufficient to "satisfy the subjective and objective prongs because the alleged inaction prolonged Plaintiff's suffering and delayed his visiting with medical personnel who could have assessed and assisted him, and the allegations that Deputy Rabie saw Plaintiff and spoke to him are sufficient to reflect a culpable state of mind." App. Vol. I at 234.

On the issue of clearly established law, the magistrate judge relied on three of the four cases cited by Mr. Hardy, but not on *In re Estate of Booker*. App. Vol. I at 235-236. In doing so, the magistrate judge indicated that "here, general statements of the law apply with obvious clarity to

Defendants' conduct." App. Vol. I at 235 (cleaned up and quotation omitted); App. Vol. II at 285 ("[T]he Magistrate Judge determined that in this case, general statements of the law apply to Defendants' conduct"). The magistrate judge then cited to an additional four cases from this Court in support of the recommendation, none of which were raised by Mr. Hardy in the clearly established section of his response. App. Vol. I at 235-237.

For the first prong of the qualified immunity test, the district court briefly adopted the magistrate judge's recommendation as to both defendants. App. Vol. II at 293-294 & 311-313. In the portion of the district court's order addressing the clearly established prong of qualified immunity raised by Deputy Rabie, the district court merely stated:

> The Court disagrees [with Deputy Rabie's argument]. Plaintiff cited numerous published Tenth Circuit cases in his response brief, which the Magistrate Judge also cited, to support his argument that the law is clearly established. Although the Court will not reiterate the cases here, the Court agrees with the Magistrate Judge's conclusion that with respect to this claim against this defendant, general statements of law demonstrate that the law is clearly established. Simply because Plaintiff ostensibly does not cite a case in which a detainee fell out of a wheelchair in a non-wheelchair accessible cell and injured himself and requested medical aid does not mean that the law was not clearly

established. Where a detainee has a serious and obvious medical need, ignoring those needs as Deputy Rabie allegedly did by physically observing Plaintiff, telling him to file a grievance, and walking away meets the clearly established standards set in this Circuit.

App. Vol. II at 293-294 (record citations omitted). In the portion of the order addressing Detention Specialist DeHerrera's qualified immunity argument, the district court incorporated by reference its analysis of Deputy Rabie's argument. App. Vol. II at 311.

## SUMMARY OF THE ARGUMENT

This appeal raises both prongs of the qualified immunity standard as it applies to Mr. Hardy's claim for deliberate indifference to a serious medical condition. As to the first prong, Mr. Hardy's complaint fails to establish a violation of Fourteenth Amendment right to adequate medical treatment. Mr. Hardy's allegations fail to satisfy the objective requirement of a deliberate indifference claim because they aver no more than temporary pain or discomfort sustained when Mr. Hardy fell out of his wheelchair in his cell and when his cellmate cleaned him up and returned him to his chair. No lasting pain or injuries are concretely alleged. Mr. Hardy's allegations especially fail to satisfy the subjective

requirement because neither Deputy Rabie nor Detention Specialist DeHerrera had sufficient knowledge of the circumstances of Mr. Hardy's fall from which to determine he somehow needed *emergency* medical treatment as demanded by Mr. Hardy. As to Deputy Rabie, moreover, there is no indication any delay after his interaction with Mr. Hardy contributed to any further injury.

As to the second prong, this appeal involves two points of tension that exist within the governing caselaw on the application of the qualified immunity standard. The first tension exists between when a district court may, as it did here, rely merely on general statements of legal standards rather than on rules drawn from cases that have some measure of factual correlation to the case at bar. The second tension involves the allocation of the burden of production. Specifically, the issue is what should happen where, as here, a plaintiff fails to offer sufficient caselaw in support of the clearly established prong. May the district court consider precedent it locates sua sponte or has the plaintiff forfeited his ability to invoke that precedent in order to defeat qualified immunity? The district court's choice here to rely in part on its own legal research

not only eviscerates any substance to a plaintiff's burden of persuasion, but it violates the party presentation rule.

## STANDARD OF REVIEW

This Court reviews the denial of qualified immunity at the motion to dismiss stage de novo. *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017). In doing so, the Court views the complaint's well-pled allegations in the light most favorable to the plaintiff. *Lowe*, 864 F.3d at 1208 (10th Cir. 2017). The Court, however, should not accept conclusory allegations without the necessary supporting factual averments. *See Iqbal*, 556 U.S. at 676. Thus, mere formulaic recitations of the elements of a cause of action will not suffice to survive a motion to dismiss, *id.* at 678, nor are courts "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). Mere supposition about a defendant's knowledge or conduct is also insufficient. *See Self v. Crum*, 439 F.3d 1227, 1235 (10th Cir. 2006) (allegations resting solely on speculation and conjecture cannot support an inference of actual knowledge). Where multiple defendants are named, "it is particularly important … that the

complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

A pro se litigant's pleadings "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Thus, a pro se plaintiff's "unfamiliarity with pleading requirements" is not a basis for dismissal. But it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* Pro se complaints are still subject to the strictures of *Twombly* and *Iqbal. See, e.g., Gee v. Pacheco*, 627 F.3d 1178, 1183-86 (10th Cir. 2010) (applying *Twombly* and *Iqbal* pleading standards to a pro se complaint).

## ARGUMENT

The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-*

*Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "To defeat the defendants' assertion of qualified immunity at the motion-to-dismiss stage, [the plaintiff] 'must allege sufficient facts that show—when taken as true – the defendant[s] plausibly violated h[is] constitutional rights, which were clearly established at the time of violation.'" *Sause v. Bauer*, 859 F.3d 1270, 1274 (10th Cir. 2017) (quoting *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012)).

The qualified immunity analysis has two prongs: (1) the defendant violated a constitutional right; and (2) the constitutional right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A plaintiff's failure to establish either prong warrants the grant of qualified immunity. In *Pearson*, the Supreme Court held that this Court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 818; *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Here, the district court addressed both prongs and erred at each.

## I. Mr. Hardy Has Not Adequately Alleged a Constitutional Violation by Either Deputy Rabie or Detention Specialist DeHerrera.

The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on the substantive law regarding that right. *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282-83 (10th Cir. 2007). The Supreme Court and the Tenth Circuit have held that the Eighth Amendment's protections apply to pretrial detainees through the due process clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535-37, (1979); *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court outlined a two-part test, including both an objective and subjective component, in order to determine whether a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Therefore, in order to prevail on his claim that either Deputy Rabie or Detention Specialist DeHerrera violated the Fourteenth Amendment, Mr. Hardy must adequately allege that (1) objectively, the harm complained of is sufficiently "serious" to merit

constitutional protection, and (2) the defendants were subjectively aware of a substantial risk to plaintiff's health or safety and acted in purposeful disregard of that risk. *Martinez*, 563 F.3d at 1088. Here, Mr. Hardy failed to adequately allege either prong as to either Deputy Rabie or Detention Specialist DeHerrera.

### A. Mr. Hardy Did Not Allege an Injury that Was Objectively Serious Enough to Merit Constitutional Protection.

The objective component requires that the deprivation be "sufficiently serious" to be of a constitutional dimension. *Farmer,* 511 U.S. at 834. To satisfy this component a plaintiff must establish that "he [was] incarcerated under conditions posing a substantial risk of serious harm," *Id.* This requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Critically, this "does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." *Id.* "Similarly, in the medical context, an inadvertent failure to provide

adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." *Id.* at 105-106 (quotation omitted). "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 106. Specifically, "[a] medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as *mandating* treatment or one that is so obvious that even a lay person would easily recognize the *necessity* for a doctor's attention.'" *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000) (emphasis added) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

Throughout Mr. Hardy's complaint, Mr. Hardy alleges that he suffered pain and an injury as a result of the fall from his wheelchair. But Mr. Hardy nowhere makes any concrete or objective allegations as to what those injuries were or why they warranted immediate or emergency medical care. He does not set forth any allegations that, for example, he sustained contusions or a head injury as a result of the fall. He does not allege he suffered any broken bones, or excessive bleeding, or any

bleeding at all. He does not allege he was vomiting, seizing, or anything else that may have demonstrated to either Deputy Rabie or Detention Specialist DeHerrera that he was in distress such that emergency medical care was a necessity. Nor does Mr. Hardy allege he was subsequently treated by a physician who identified any medical conditions he had on, or after, September 22, 2022.

All Mr. Hardy indicates is that he was in a contorted position and that he was in obvious pain. He does not provide any detail how his pain was obvious. He does not indicate that he was wincing as a demonstration of his pain or that he was otherwise making any verbal noises related to his pain. Mr. Hardy makes unsupported conclusory statements that his undiagnosed, undisclosed pain was obvious, but does not support those conclusory assertions. In sum, Mr. Hardy provided no objective factual support for his contention that either Deputy Rabie or Detention Specialist DeHerrera could tell that whatever pain Mr. Hardy was in was obvious.

Thus, as alleged in the complaint, there are no facts to establish that Mr. Hardy suffered from a condition that had been or could be

diagnosed by a physician as necessitating treatment. Nor do the allegations in complaint establish that Mr. Hardy suffered from an objectively serious medical condition that required immediate medical treatment. As such, Mr. Hardy's claim fails the objectively serious prong of the deliberate indifference test as to either Deputy Rabie or Detention Specialist DeHerrera.

> ### B.  Mr. Hardy Did Not Adequately Allege Either Deputy Rabie or Detention Specialist DeHerrera Were Subjectively Aware of a Substantial Risk to Mr. Hardy's Health or Safety and Acted in Purposeful Disregard of that Risk.

The subjective component requires the prison official to have a culpable state of mind. *Farmer*, 511 U.S. at 834. The Supreme Court has held that a prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both [1] be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [2] he must also draw the inference." *Farmer*, 511 U.S. at 837 (numbering added). The subjective component of an Eighth Amendment claim "presents a high evidentiary hurdle to . . . [§ 1983] plaintiffs." *Vasquez v. Davis*, 882 F.3d 1270, 1277 (10th Cir. 2018) (quotation omitted). Likewise when a prison

official knows that "his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference…" then the subjective component has been met. *Sealock,* 218 F.3d at 1211.

Here, Mr. Hardy has not shown that either Deputy Rabie or Detention Specialist DeHerrera knew of an excessive risk to Mr. Hardy's health or safety. Mr. Hardy does *not* allege that either Deputy Rabie or Detention Specialist DeHerrera:

1. interfered with a proscribed medical treatment;

2. had medical training or access to Mr. Hardy's medical file;

3. knew of Mr. Hardy's nearly year-old internal kidney injury or ACL / MCL damage;

4. heard Mr. Hardy yelling in his closed cell;

5. could see Mr. Hardy lying on the floor through his closed cell door prior to his cellmate moving him back into his chair or that he had soiled himself; or

6.     had any reason to believe Mr. Hardy's cellmate would accidentally injury him.

The Court merely relied on Mr. Hardy's allegation that he at some point was lying on the floor, he had soiled himself, his cellmate attempted to move him, and that at some earlier point in time he had screamed in pain. But the complaint does not allege that either Deputy Rabie or Detention Specialist DeHerrera observed any of these elements.

Nor is it even plausible that Detention Specialist DeHerrera could have observed them given the allegation that the cell door was closed during Mr. Hardy's fall and Detention Specialist DeHerrera was in the tower. App. Vol. I at 107-108, ¶¶ 25, 27 & 31. Mr. Hardy alleges no personal interactions occurred between him and Mr. DeHerrera, or even that Mr. DeHerrera saw or could have seen Mr. Hardy on his cell-room floor. The only information Detention Specialist DeHerrera is alleged to have possessed was the three call button indicators spread out over 45 minutes. But that is not sufficient to establish the *necessity* for a doctor's *immediate* medical attention in a way easily recognizable to a lay person.

This Court has previously so held in *Lance v. Morris*, 985 F.3d 787, 792 (10th Cir. 2021), where a tower deputy had more information relayed to him via an intercom, yet still was entitled to qualified immunity because the inmate had not established deliberate indifference. This Court reasoned:

> [The inmate] had only one conversation with [the tower deputy]. In that conversation, [the inmate] did not provide enough information to suggest a serious medical need; and he cannot avoid summary judgment with speculation that he or other detainees might have had other conversations with [the tower deputy]. Apart from speculation, [the inmate] lacked evidence about what [the tower deputy] might have seen.

*Id.* at 795. The same applies with greater force in this case where no conversation occurred between Mr. Hardy and Detention Specialist DeHerrera.

The district court, and the recommendation it adopted, placed a large amount of weight on a statement attributed to Deputy Chavez. App. Vol. II at 311. The quotation that is expressly alleged to have come from the deputy was only that "because some inmates abuse the buttons, and they are not going to spend their entire shift chasing buttons." App. Vol. I at 111-112, ¶ 45. From this, Mr. Hardy evidently inferred that the

"they" to which Deputy Chavez referred was "all the living unit deputies." *Id.* In a footnote, the magistrate judge recast that allegation into a statement that "Detention Specialist De[H]errera's *unit* has 'their own personal policy' of not responding to emergency distress calls 'because some inmates abuse the button,' and they do not want to 'spend their entire shift chasing buttons[.]'" App. Vol. I at 224 (emphasis added), citing Comp. at ¶¶ 36–37, 45.

As a detention specialist, DeHerrera is not a deputy, but a civil employee of the Sheriff. *Duda v. Elder*, No 18-cv-02890-RBJ, 2020 WL 6290383, *2 (D. Colo. Oct. 27, 2020) (undisputed that the El Paso County Sheriff had exclusive control over hiring and firing sheriff's office employees, including the plaintiff, who served for a time as a detention specialist). Mr. DeHerrera does not have the power to make formal or informal policies for the deputies. Nor is he a "living unit deput[y]." The magistrate judge's recommendation casts the floor deputies as "DeHerrera's unit" App. Vol. I at 224, n.1 (citing comp. at ¶¶ 36-37, 45) - but that modifies Mr. Hardy's actual allegation. Nothing in paragraph 45 so asserts. As a non-deputy stationed in the tower, he would never be

called upon to leave the tower to "chas[e] buttons." Indeed, paragraph 45 itself begins with an allegation as to why *Deputy Rabie* allegedly did what he did. That paragraph contains no allegation regarding Detention Specialist DeHerrera at all.

Paragraph 46 of the complaint baldly alleges that Detention Specialist DeHerrera "also entered into the agreement" to ignore emergency distress buttons, but Mr. Hardy offers no factual basis sufficient to warrant that supposition. App. Vol. I at 112, ¶ 46. These kind of generic and conclusory allegations against Detention Specialist DeHerrera are insufficient to state a claim. *See Iqbal*, 556 U.S. at 680 (allegation that defendant "knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy . . . for no legitimate penological interest" was conclusory and not entitled to a presumption of truth) (quotation and alteration omitted); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012) (complaint should be dismissed where "nothing other than sheer speculation linked" the conduct at issue to motive or intent); *see also Helvie v. Jenkins*, 66 F.4th 1227, 1236 (10th Cir. May 9,

2023) (rejecting speculation based on officer's silence as a factual basis to infer the officer's lack of knowledge).

As for Deputy Rabie, who did personally walk by the cell and interact with Mr. Hardy, Mr. Hardy still fails to plead any facts that would have a tendency to show that his condition at the time of Deputy Rabie's visit was such that it would have been obvious to a lay person that a doctor's attention was necessary. According to Mr. Hardy, Deputy Rabie was never alerted to the fact that the distress button had been activated. App. Vol. I at 108, ¶ 30. Instead, Deputy Rabie happened upon Mr. Hardy in the ordinary course of his shift – at least an hour after the alleged incident. *Id.* at 108, ¶ 29. What he saw when he opened Mr. Hardy's cell was a man sitting *in his wheelchair*, albeit allegedly in a "contorted" fashion. *Id.* at 108, ¶ 31. Nor does Mr. Hardy allege Deputy Rabie was able to observe the fact Mr. Hardy had soiled himself. Mr. Hardy specifically alleges his cellmate had helped him "clean the urine soil and change his soiled clothes." *Id.* at 107-108, ¶ 28.

There are no allegations that Deputy Rabie had any previous interactions with Mr. Hardy such that he would have recognized that the

"contorted" way that Mr. Hardy was sitting was anything but normal for him. Mr. Hardy indicates that he was in extreme pain, and that Deputy Rabie should have noticed this and called for emergent medical attention. However, the facts pled fail to show or describe the extreme pain in any sufficiently objective manner. There are no allegations that Mr. Hardy was screaming or crying out in pain or that there was some other patently obvious injury warranting an emergency response at the time Deputy Rabie interacted with him. Instead, Mr. Hardy was apparently able to explain, in detail, how he fell from the chair and the myriad of other ways in which the cell he was housed in was inconvenient or improper to house a person in a wheelchair.

While the facts pled may demonstrate that Deputy Rabie was made aware that Mr. Hardy had fallen, they do not demonstrate that Deputy Rabie knew of an *excessive* risk to Mr. Hardy's health or safety as the Second Amended Complaint does not specifically allege what injury Mr. Hardy sustained and how this unnamed injury presented itself. And the Second Amended Complaint certainly does not demonstrate that Deputy

Rabie had an actual knowledge of these alleged injuries and then that he specifically disregarded them.

Further, Deputy Rabie did not flatly ignore Mr. Hardy's notification. After being told what had occurred, *i.e.* that Mr. Hardy had fallen out of his wheelchair while attempting to transfer to the toilet, Deputy Rabie told Mr. Hardy that he needed to file a grievance (*e.g.*, use the jail's kite system to notify medical and/or others) to have the issue addressed. Deputy Rabie did not deny Mr. Hardy care, he only explained the way in which Mr. Hardy was to have his issue addressed. Deputies and detention specialists are not obligated to diagnose the medical condition themselves and treat an inmate's medical issue when medical professionals are fulfilling that role. *See*, *e.g.*, *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). In this regard, Deputy Rabie did not fail to fulfill his gatekeeper function. And again, Mr. Hardy did not allege any injury stemming from any delay in medical care that occurred after Deputy Rabie interacted with Mr. Hardy.

Rather than separately assessing the information available to each defendant as required by this Court's prior precedent, *see*, *e.g.*, *Quintana*

*v. Santa Fe Cty. Bd. of Cty. Comm'rs*, 973 F.3d 1022, 1030-32 (10th Cir. 2020), the district court lumped all of the allegations together and treated the separate defendants as if they were part of a larger whole. But this collective treatment is legally unwarranted. In sum, these are nothing but unsupported conclusory allegations regarding Deputy Rabie's and Detention Specialist DeHerrera's respective states of mind with regard to Mr. Hardy and his complaints. These are insufficient to satisfy the subjective component of Mr. Hardy's deliberate indifference claim.

*     *     *

Because Mr. Hardy can satisfy neither the objective nor the subjective components of his deliberate indifference claim, Deputy Rabie and Detention Specialist DeHerrera are each entitled to qualified immunity based on the first prong of that test.

**II. Mr. Hardy Did Not Carry His Burden of Persuasion on the Clearly Established Prong of the Qualified Immunity Test and the District Court Erred in Adopting the Magistrate Judge's Recommendation that Relied on Caselaw Not Cited by Mr. Hardy.**

To overcome qualified immunity, Mr. Hardy carries not only the burden of demonstrating that the factual allegations made in the

complaint establish a violation of his Fourteenth Amendment right to adequate medical treatment, but that the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "The law is clearly established when a Supreme Court or Tenth Circuit precedent is on point or the alleged right is clearly established from case law in other circuits." *Lowe v. Raemisch*, 864 F.3d 1205, 1207 (10th Cir. 2017). The precedent is considered on point if it involves "materially similar conduct" or applies "with obvious clarity" to the conduct at issue. *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964-65 (10th Cir. 2016) (quotation omitted). Because the prior case must involve materially similar conduct or apply with obvious clarity, qualified immunity generally protects all public officials except those who are "plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quotation omitted).

Here, the caselaw cited by Mr. Hardy to the district court was not on point. It did not involve "materially similar conduct" or apply "with obvious clarity" to the alleged conduct of Deputy Rabie or Detention Specialist DeHerrera. Likewise, the caselaw located by the Magistrate

Judge was not on point for the same reasons. The district court, therefore, erred in relying on general statements of the governing law rather than assessing whether the facts of controlling precedent were materially similar to or substantially corresponded with the conduct alleged here. The district court, moreover, erred by relying on precedent not cited to it by Mr. Hardy to determine whether the law was clearly established in contravention of Mr. Hardy's burden of persuasion.

### A. The District Court Erred in Relying on General Statements of the Governing Law Rather than Assessing Whether the Facts of Controlling Precedent Were Materially Similar to or Substantially Corresponded with the Conduct Alleged in this Case.

Here, the magistrate judge and the district court both acknowledged, they relied on "general statements of law," App. Vol. I at 235 & App. Vol. II at 285, to deny qualified immunity to Deputy Rabie and Detention Specialist DeHerrera. The district court adopted the magistrate judge's assessment of the caselaw but did not otherwise evaluate it. App. Vol. II at 293-294, 311. The magistrate judge relied on general statements from eight cases from this Court, only four of which were raised by Mr. Hardy in his response brief. The magistrate judge

provided parenthetical quotations from or summaries of the eight cases but did not assess their factual correspondence to the facts in this case aside from labeling them "sufficiently analogous[.]" App. Vol. I at 236.

In 2002, the Supreme Court affirmed an earlier holding that "general statements of the law" can clearly establish a right for qualified immunity purposes if they apply "with *obvious clarity* to the specific conduct in question." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (*quoting United States v. Lanier*, 520 U.S. 259, 271 (1997)). Unfortunately, "obvious clarity" has proven to largely lie in the eye of the beholder.

Since 2002, the Supreme Court has had to address with considerable frequency the issue of defining and construing the universe of relevant law used in assessing qualified immunity. *See*, *e.g.*, *City of Tahlequah v. Bond*, 142 S. Ct. 9 (2021); *Sause v. Bauer*, 138 S. Ct. 2561 (2018); *White v. Pauly*, 580 U.S. 73 (2017); *Pickens v. Aldaba*, 577 U.S. 972 (2015); *Reichle v. Howards*, 566 U.S. 658 (2012); *Pearson v. Callahan*, 555 U.S. 223 (2009); *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005) (reversing Tenth Circuit en banc). The governing standard has now been refined into an "exacting" one. *City & Cnty. of San Francisco v. Sheehan*,

575 U.S. 600, 611 (2015). It "requires a high degree of specificity." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quotation omitted). "It is not enough that the rule is suggested by then-existing precedent." *Id.* "The precedent must be clear enough that *every reasonable official* would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (emphasis added). Now, to be clearly established, existing precedent must place the "constitutional question *beyond debate*." *al-Kidd*, 563 U.S. at 741 (emphasis added).

Some of the ways in which the Supreme Court has found lower courts to have failed to meet this standard include:

- Construing prior cases at too high a level of generality, *al-Kidd*, 563 U.S. at 741;

- Applying rules with "much too general" a formulation or with ill-defined "contours," *Bond*, 142 S. Ct. at 12; *Wesby*, 583 U.S. at 63;

- Reliance on precedent that turns heavily on its facts, especially when those facts differ dramatically from the case at bar, *Bond*, 142 S. Ct. at 12; *Pearson*, 555 U.S. at 237;

- Reliance on precedent that is conditional or qualified in cases where the conditions do not hold true, *Stanton v. Sims*, 571 U.S. 3, 7-8 (2013);

- Reliance on precedent decided under a different constitutional provision, *Elder v. Holloway*, 510 U.S. 510, 516 (1994); and

- Reliance on dicta rather than narrow holdings, *Bond*, 142 S. Ct. at 12.

The Supreme Court has also instructed courts to be "sensitive to whether existing relevant precedents at the time [the defendant] acted 'squarely govern[ed],' 'the *particular* circumstances that he . . . faced,' and demonstrated that the 'violative nature of the *particular conduct* is clearly established.'" *Cummings v. Dean*, 913 F.3d 1227, 1241 (10th Cir. 2019) (emphasis in original and quoting *Mullenix v. Luna*, 577 U.S. 7, 12 & 15 (2015) (per curiam) and *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). *See also Anderson v. Creighton*, 483 U. S. 635, 640 (1987) (The clearly established law must be "particularized" to the facts of the case). But while the Supreme Court still acknowledges that "general statements of the law" may clearly establish the law, *White*, 580 U.S. at

79, this has been called a "rare" case by the Court. *Wesby*, 583 U.S. at 64. One circuit has also described it as a "narrow exception." *Wilson v. Sec'y, Dep't of Corr.*, 54 F.4th 652, 663 (11th Cir. 2022).

How a federal court must navigate between those two different posts in this Circuit is less than crystal clear. The existing caselaw does not resolve when does the rare exception apply or how a court is to keep it from swallowing the rule. It short, absent a high degree of factual similarity, it is uncertain what precedent really is relevant to establishing the governing state of the law. Certainly, motivated reasoning or the selective and outcome driven invocation of a subset of precedent would not provide defendants with the requisite fair warning as to the legal standard governing their conduct. *Hope*, 536 U.S. at 739-40 (A Section 1983 defendant is "entitled to fair warning that his conduct deprived his victim of a constitutional right[.]"); *Lanier*, 520 U.S. at 270-71 ("[I]n effect the qualified immunity test is simply the adaptation of the fair warning standard to give officials ... the same protection from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes.").

As this Court now frames it, "[i]n making this determination," there are "two pitfalls": "requir[ing] *too much* factual similarity between an existing case and the case at hand, [o]r *too little*." *Halley v. Huckaby*, 902 F.3d 1136, 1157 (10th Cir. 2018). Even so, "[a]lthough it is not necessary for the facts in the cited authority to correspond exactly to the situation the plaintiff complains of, the plaintiff must demonstrate a *substantial correspondence* between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1184 (10th Cir. 2000) (emphasis added), *applied in Cummings,* 913 F.3d at 1239-40.

Here, the district court succumbed to the latter pitfall of requiring too little factual similarity. The four published decisions from this Court advanced by Mr. Hardy have virtually no factual similarity with the case at hand apart from the fact they involve inmates who were killed, injured, or suffered from various pre-existing conditions. The same is true for the four additional cases located by the magistrate judge, save one that affirmatively supports the grant of qualified immunity.

### 1. *The Caselaw Cited by Mr. Hardy Was Not Sufficiently On Point.*

In Mr. Hardy's consolidated response to Deputy Rabie's and Detention Specialist DeHerrera's respective motions to dismiss, he relied on several cases in an attempt to show the alleged violations of his right to in-custody emergency medical treatment was clearly established. The cases which he cited and which the magistrate judge relied upon were *Quintana*, 973 F.3d 1022 (10th Cir. 2020), *Al-Turki*, 762 F.3d 1188 (10th Cir. 2014), *In re Estate of Booker*, 745 F.3d 405 (10th Cir. 2014), and *Mata*, 427 F.3d 745 (10th Cir. 2005). The magistrate judge offered parenthetical statements from each of the four cases containing general statements as to the right of in-custody medical treatment. But the magistrate judge did not otherwise evaluate the facts in those cases and compare them to the facts alleged here. A review of the facts of those cases reveals that there is not a "substantial correspondence" between them and the present case.

In *Quintana*, an arrestee who was using heroin was booked into a detention facility. 973 F.3d at 1027. The booking nurse conducted a medical intake examination, at which time she determined a high

likelihood of heroin withdrawal. The nurse offered, but did not administer, a "kick kit" of medications designed to minimize the effects of withdrawal. Over the course of three days, the inmate interacted with various deputies all of whom were aware the inmate was experiencing withdrawal symptoms. The inmate did not request, nor did the deputies offer further medical treatment. One of the deputies observed the inmate vomiting blood. *Id.* at 1030. On the third day, the inmate died of a gastrointestinal hemorrhage due to probable heroin withdrawal. *Id.* at 1027.

The inmate's estate sued five deputies and the nurse, all of which save one were granted qualified immunity. The deputy who observed firsthand the bloody vomiting was denied qualified immunity. *Id.* at 1030. The other deputies merely observed general withdrawal symptoms and heard about vomiting, but not bloody vomiting. *Id.* at 1030-31. One of the deputies who received qualified immunity had interacted with the inmate who had told the deputy he should be "housed in safe keeping." *Id.* at 1030. The complaint further alleged that the deputy should have been able to determine that the inmate was "severely ill," but it "did not

suggest what symptoms [the inmate] was exhibiting that would have made [the deputy] suspect he was 'severely ill.'" *Id.*

On its face, *Quintana* does not clearly establish a standard of conduct applicable to the situations separately confronted by Detention Specialist DeHerrera or Deputy Rabie here. The case does not involve the use of emergency call buttons, nor did either appellant have prior knowledge of an increased risk of serious medical conditions. And the four deputies in *Quintana* had actual knowledge of more serious medical symptoms than the ones alleged by Mr. Hardy – *i.e.*, heroin withdrawal and vomiting – but were granted qualified immunity because those symptoms were not serious enough – even though they might have involved discomfort or pain. The deputy who interacted with the inmate and was alleged to have sufficient information to deduce that the inmate was in severe pain is perhaps the most factually analogous to Deputy Rabie, but that deputy was granted qualified immunity. As for the single deputy who did have the specific knowledge of bloody vomit could have intervened to prevent any subsequent injury, unlike Deputy Rabie here.

In *Al-Turki*, an inmate began to experience abdominal pain so severe he collapsed, vomited, and believed he was dying. 762 F.3d at 1191. He used an intercom in his cell to contact a deputy to whom he relayed his symptoms and requested to visit the medical center. The deputy contacted the only nurse on duty in the medical unit who advised the deputy she would not see the inmate because it was too late. The nurse also knew the inmate suffered from Type II diabetes, which the deputies did not. The inmate repeatedly contacted deputies for medical treatment until he either fell asleep or passed out. The following morning – approximately 9 hours after it began – the pain ceased. At a prescheduled medical appointment that day, the inmate passed two kidney stones.

In the ensuing lawsuit, all of the deputies were granted qualified immunity. *Id.* at 1090 & n.1. The nurse was not. The Court relied heavily on two facts – the nurse's unique knowledge that the inmate suffered from diabetes, in whom severe abdominal pain "may be a sign of any number of life-threatening conditions," and that she was the only person

on duty who could render aid. *Id.* at 1194. Her failure to do so left him entirely "without medical assistance." *Id.*

Unlike any of the other cases cited by Mr. Hardy, *Al-Turki* does at least involve a medical call from a cell. But it came through an intercom, not a mere button, which is a significant difference because it allowed the inmate to relay materially more medical information to the deputy than the mere pressing of a button does. Even still, the answering deputy there was given qualified immunity even though the deputy was aware no medical treatment would be provided and did not go check on the inmate. The nurse was not granted qualified immunity, but she had special knowledge about the inmate's condition. Nor, unlike that nurse, were Detention Specialist DeHerrera or Deputy Rabie the only people alleged to be available to render aid to Mr. Hardy, who was seen by a nurse during medical rounds. *Al-Turki*, thus, does not clearly establish a standard of conduct applicable to Detention Specialist DeHerrera or Deputy Rabie in this case.

*In re Estate of Booker*, involved a detainee, Mr. Booker, who died during booking after being pinned face-down on the ground, placed in a

chokehold, tased, and hand-cuffed. 745 F.3d at 413-14. After restraining him, the four deputies carried him by his limbs and placed him face down on the cell floor and removed his handcuffs. *Id.* at 415. He was alone in the cell. The deputies did not check his vitals or even "attempt to determine whether he needed immediate medical attention" for roughly a minute and a half. *Id.* at 415. One of the deputies, after returning his gear, spoke with a nurse about providing a medical evaluation to the inmate. In the meantime, one of deputies noticed the inmate did not appear to be breathing. Emergency medical was called. Medical treatment was provided 4 minutes and 48 seconds after the use of force was conducted. Medical staff was not able to resuscitate Mr. Booker. He was taken to a nearby hospital where he was pronounced dead.

Unlike *Booker*, this case does not involve the use of force by either Detention Specialist DeHerrera or Deputy Rabie, nor did either contribute to Mr. Hardy's initial fall. Mr. Hardy was at no point incapacitated. *Booker* did not involve the use of emergency call buttons. The deputies in *Booker* had firsthand knowledge of the cause of Mr. Booker's incapacity and made no effort to even check whether he was

breathing. Here, Deputy Rabie interacted with Mr. Hardy who was responsive. Nor is there any indication here that any injury occurred to Mr. Hardy after Deputy Rabie's visit. *Booker*, therefore, does not clearly establish a standard of conduct applicable to the situations confronted by Detention Specialist DeHerrera or Deputy Rabie.

In *Mata*, an inmate reported chest pains to a nurse who advised the inmate to return in the morning. 427 F.3d at 750. The inmate did so and reported continuing chest pains. A second nurse performed an EKG, which read normal, but the nurse allowed the inmate to miss prison related activities. The next day, the inmate returned and an EKG was again performed by a third nurse. This EKG showed a change in condition, but the third nurse informed the inmate it was again normal. Shortly thereafter, a fourth nurse diagnosed the inmate with chest lining inflammation, but nevertheless sent the EKG to a doctor, who ordered the inmate be immediately taken to the hospital. After being instructed to go change by the fourth nurse, which required the inmate to walk approximately two blocks up hill, the inmate was taken to the hospital. It was determined the inmate had previously had a heart attack between

the first and second EKG. *Id.* at 758. Surgery was performed, but it was unsuccessful. *Id.* at 750. The inmate suffered a permanent injury to her heart and a permanent disability.

Three of the four nurses were granted qualified immunity at summary judgment on the inmate's deliberate indifference claims. Only the first nurse was not. *Id.* at 749. The Court viewed the first nurse's decision in the face of a report of "severe chest pain, a symptom consistent with a heart attack" was tantamount to a complete denial of medical treatment. *Id.* at 754 & 756-57. That denial preceded the inmate's heart attack and may have contributed to the permanent damage that might have been prevented by an earlier surgery. *Id.* at 758. Of critical importance to the Court's ruling was the information actually possessed by the first nurse at the moment of her decision, *id.* at 756, coupled with the clinical standards in place at the time, which required the immediate performance of an EKG. *Id.* at 756-57.

Here, *Mata*'s fact-specific determination as to liability for one, but not all four, nurses who interacted with the inmate before and after her heart attack, does not apply with clear force to either Detention Specialist

DeHerrera or Deputy Rabie. Detention Specialist DeHerrera is not alleged to have any knowledge for the basis of the emergency button calls, three of which were spread out over 45 minutes. Nor did *Mata* involve emergency call buttons. Deputy Rabie had more information, but not as specific as the nurse in *Mata*. Mr. Hardy only claimed that he had fallen and had experienced a medical emergency. Mr. Hardy was no longer on the floor, nor was he audibly expressing severe pain – he only asserts Deputy Rabie should have inferred it from his "contorted" position in his chair. And in any event, by the time Deputy Rabie arrived, both the initial and secondary injuries had already occurred. Again, there is no allegation that any delay in treatment from the moment of Deputy Rabie's interaction resulted in any increased injuries to Mr. Hardy. Thus, *Mata* does not clearly establish a standard of conduct applicable to the situations separately confronted by Detention Specialist DeHerrera or Deputy Rabie.

None of the caselaw cited by Mr. Hardy involve "materially similar conduct" or applies "with obvious clarity" to the conduct at issue here. *Estate of Reat*, 824 F.3d at 964-65. None of the cases involve back pain

from a fall that had already been otherwise resolved. None of them involve the mere use of call buttons. Most of them, unlike here, feature a delay that is causally linked to an objectively serious harm. And none of them set clearly defined or well-contoured limits for when an inmate's experience of pain *must* be referred for *emergency* medical treatment in cases involving back pain. As such, Mr. Hardy did not meet his burden of persuasion as to the second prong. This should have been fatal to his position under *Cummings*, 913 F.3d 1242-43.

>   2. *The Caselaw Located by the Magistrate Judge also Was Not Sufficiently On Point or Supports the Grant of Qualified Immunity to Deputy Rabie and Detention Specialist DeHerrera.*

Even assuming it was proper for the district court to adduce these cases, *see* Section II. B below, the four additional cases invoked sua sponte by the magistrate judge and adopted by the district court do not "squarely gover[n]," "the *particular* circumstances" the Appellants faced, nor did they demonstrate that the "violative nature of the *particular conduct* is clearly established." *Cummings*, 913 F.3d at 1241.

In *Prince v. Sheriff of Carter Cty.*, 28 F.4th 1033, 1047-48 (10th Cir. 2022), the Court confronted a more extreme version of the facts in

*Quintana*. In *Prince*, an inmate was booked in possession of cocaine. At booking, he informed jail staff of a litany of serious medical issues including asthma, congestive heart failure, high blood pressure, shortness of breath, bipolar disorder, seizures, and thyroid problems. *Id.* at 1038. The inmate eventually filed a medical request indicating his difficulty breathing and swelling, likely due to the absence of his medications and CPAP machine. *Id.* at 1039. The request was not reviewed for two days and when it was, the nurse who reviewed it was poorly trained. After the jail denied the inmate access to the medications and CPAP machines provided by his family, then ensued a series of medical issues spanning nearly a month. *Id.* at 1040. The culmination of these visits was a hospital visit, after which the jail nurse was advised to continue his medication and have follow-up neurology care. *Id.* at 1040-41. This was not done and the inmate's medical condition rapidly deteriorated and he displayed psychosis, fecal incontinence, and catatonia. *Id.* at 1041. The nurse observed these various behaviors but did not have the inmate transferred out for additional medical treatment at any point in time, nor did she provide him any onsite medical care.

Eventually the inmate was found collapsed on the floor of his cell nonresponsive. He was taken to an emergency room where he was pronounced dead. For the same reasons as *Quintana*, *Prince* does not clearly establish a standard of conduct applicable to the situations separately confronted by Detention Specialist DeHerrera or Deputy Rabie here.

In *Lance*, 985 F.3d 787, 792 (10th Cir. 2021), an inmate obtained a pill from another inmate in violation of jail policy. The use of the pill resulted in a priapism. Similarly to *Al-Turki*, the inmate repeatedly used his cell intercom. He informed the first responding deputy that he had impermissibly taken a pill and developed a persistent erection. *Id.* at 792 & 794. But he did not report pain or explicitly request medical treatment until a follow-up call with a different deputy. *Id.* at 794. The initial deputy threatened to place him in lockdown as punishment for violating jail policy, although he did not do so. *Id.* at 792. Despite repeated calls, no one provided the inmate with medical treatment for three days, throughout which time the condition persisted. Eventually he was taken to a hospital at which point the seriousness of his medical condition and

risk of permanent injury was confirmed by medical staff who referred him to another hospital. But the transport deputies returned him to jail instead. The deputies got a judicial order to release the inmate who was picked up by his father and taken to a urologist who performed an operation, but the former inmate was likely rendered impotent for the rest of his life. The court denied qualified immunity to all of the deputies except the first. As to the first deputy, in an analysis directly applicable to Detention Specialist DeHerrera as already pointed out above, this Court reasoned:

> [The inmate] had only one conversation with [the tower deputy]. In that conversation, [the inmate] did not provide enough information to suggest a serious medical need; and he cannot avoid summary judgment with speculation that he or other detainees might have had other conversations with [the tower deputy]. Apart from speculation, [the inmate] lacked evidence about what [the tower deputy] might have seen.

*Id.* at 795. *Lance*, therefore, supports the opposite conclusion than the one it was adduced for by the magistrate judge. As for Deputy Rabie, he too lacked sufficient information to rise to the level of the remaining deputies in *Lance*. And again, there is no allegation that any delay in

treatment from the moment of Deputy Rabie's interaction resulted in any increased injuries to Mr. Hardy.

In *Burke v. Regalado*, 935 F.3d 960 (10th Cir. 2019), the Court confronted an extreme municipal liability claim. An inmate was forcibly taken to his cell after refusing to change his clothes. *Id.* at 982. In the cell, he hit his head on the door of the holding cell and became partially paralyzed. A nurse and two deputies observed him lying on the floor on his back complaining that he had broken his neck and that he could not move. The nurse visually checked and determined nothing was wrong with the inmate's neck and did not render further medical aid. Over ten hours later a second nurse found the inmate still lying on his back and unable to get up. They declared a medical emergency and noted the inmate's claim that he couldn't not feel his legs and that he had soiled himself. According to the nurses, he passed a reflex test, but he had soiled himself. No further medical aid was provided, but he was taken to the shower on a gurney where he was placed for an hour and turned over at one point in time. *Id.* at 983. The deputies noted his skin had turned purple and remarked that something was wrong with the inmate. The

inmate was returned to his cell where apart from later being transferred to a camera monitored cell, he lay for five days with limited access to minimal food and drink and minimal medical attention. *Id.* at 984-85. One of the physicians did suggest a CT scan to rule out a head injury. The following day – six days after the initial injury – the inmate died from complications of vertebral spinal injuries. *Id.* at 985.

The case went to trial only as to the supervisory liability of the former and current sheriff. *Id.* at 993-94. The actions of the nurses and deputies were presented at trial in order to establish the predicate of a constitutional violation. On appeal, the court in a non-exhaustive discussion, pointed out three actors – one nurse and two deputies – whose conduct beginning on the fourth day of the inmate's paralysis was sufficient to warrant a finding of deliberate indifference. *Id.* at 994-995 & n. 11. Notably absent from this discussion, however, was any indication that the initial assessment of the inmate shortly after his injury rose to the level of deliberate indifference. Thus, at the only point even arguably factually analogous to this case, the opinion is silent as whether the conduct was constitutionally violative. Arguments from precedential

silence are more attenuated than arguments from dicta, which the Supreme Court has expressly rejected.

Finally, the Court's decision in *Sealock*, 218 F.3d 1201 (10th Cir. 2000), lies somewhere between *Quintana*, *Al-Turki*, and *Mata*, each of which relied upon it. *Sealock* involved an inmate who experienced chest pains, was pale, vomiting, and having trouble breathing. *Id.* at 1207. He was also sweating so heavily his bed and clothing were soaked. His cellmate summoned a deputy who witnessed these things, but told the inmate there was nothing she could do until at least four hours later when the medical staff arrived. *Id.* at 1208. She told the inmate to recall her if things worsened. Things worsened and an hour later the deputy returned with her shift commander. The shift commander witnessed the paleness, sweating, and knew the inmate had been vomiting. *Id.* at 1210. Both the inmate and his cellmate expressed concern that the inmate might be having a heart attack. The shift commander refused to immediately transport the inmate to a hospital because it was snowing outside and it would take at least an hour to warm up the van. *Id.* at 1208 & 1210. The shift commander told the inmate not to die on his shift

because it would be too much paperwork. Later that morning, the inmate was seen by serval medical staff members. *Id.* at 1208. The following day he was eventually given an EKG, after which he was provided with medication and transported to a hospital where it was determined he had had a heart attack. At summary judgment, all of the defendants were given qualified immunity. On appeal, only qualified immunity against the shift commander was reversed. As with *Quintana*, *Al-Turki*, and *Mata*, *Sealock* does not clearly establish a standard of conduct applicable to the situations separately confronted by Detention Specialist DeHerrera or Deputy Rabie for the same reasons as the other cases.

In sum, none of the eight cases cited by the magistrate judge place the constitutional question presented here "beyond debate." *al-Kidd*, 563 U.S. at 741. None of the cases satisfy the "exacting standard," *Sheehan*, 575 U.S. at 611, required to demonstrate clearly established law to "a high degree of specificity." *Wesby*, 583 U.S. at 63. As such, the district court erred in denying Detention Specialist DeHerrera or Deputy Rabie qualified immunity under the second prong.

*B. The District Court Erred by Relying on Precedent Not Cited to It by Mr. Hardy to Determine Whether the Law Was Clearly Established on the Date of Mr. Hardy's Fall.*

To the extent the Court decides to rely on any of the four cases raised sua sponte by the magistrate judge, *Prince*, *Lance*, *Burke*, or *Sealock*, which in turn underpinned the district court's decision, this Court must then confront the second tension: what if any consequence flows from a plaintiff's failure to cite sufficient precedent in opposition to a defendant's assertion of qualified immunity.

In *Davis v. Scherer*, 468 U.S. 183, 197 (1984), the Supreme Court held "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." Since at least 1986, the Tenth Circuit has applied *Davis* to place the burden on plaintiff to rebut the assertion of qualified immunity. *Lutz v. Weld County School Dist.*, 784 F.2d 340, 342-43 (10th Cir. 1986). As explained in *Pueblo Neighborhood Health Centers, Inc. v. Losavio*,

> [O]nce the defense [of qualified immunity] has been raised, the court must allow the plaintiff the limited opportunity

allowed in Fed. R. Civ. P. 12(b)(6) and 56 to come forward with facts or allegations sufficient to show . . . that that law was clearly established when the alleged violation occurred. Unless such a showing is made, the defendant prevails.

847 F.2d 642, 646 (10th Cir. 1988). Thus, "[u]nlike most affirmative defenses," *the plaintiff* "bear[s] the ultimate burden of persuasion" to overcome qualified immunity." *Estate of Booker*, 745 F.3d at 411.

Although there is a circuit split on this issue,[1] in 2007 this Court *en banc* in *Cortez v. McCauley* reiterated it is the plaintiff's burden to "show that the constitutional right was clearly established." 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc). If a plaintiff fails to meet that burden, the district court "*must grant* the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001) (emphasis added). The Court has actually applied the burden at least as recently as 2019 in *Cummings*, 913 F.3d 1242-43 (plaintiffs' failure to adduce substantial similar caselaw "proves fatal to their position"); *see also Bledsoe v. Carreno*, 53 F.4th 589, 617 & n.25 (10th Cir. 2022).

---

[1] *See Joseph v. Bartlett*, 981 F.3d 319, 329 n.19 (5th Cir. 2020) (noting circuit split between, among others, the D.C Circuit on one side and the Tenth Circuit on the other), *citing* Kenneth Duvall, *Burdens of Proof and Qualified Immunity*, 37 S. ILL. U. L.J. 135, 145 (2012).

In 2016, the Court in *Gutierrez v. Cobos*, 841 F.3d 895, 902-03 (10th Cir. 2016), went so far as to apply the forfeiture doctrine to new caselaw invoked by the plaintiff for the first time on appeal. The Court has done so similarly in other cases. *See Washington v. Unified Gov't of Wyandotte Cty*, 847 F.3d 1192, 1201 n.3 (10th Cir. 2017) (stating that the plaintiff must identify the clearly established law); *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) (declining to consider out-of-circuit authority because the plaintiff had not brought this authority to the Court's attention); *see also Smith v. McCord*, 707 F.3d 1161 (10th Cir. 2013) *and Rojas v. Anderson*, 727 F.3d 1000 (10th Cir. 2013), *applied in Gutierrez*.

On the other side of the line lies *Elder v. Holloway*, 510 U.S. at 516 (1994), in which the Supreme Court held that when an appellate court reviews a qualified immunity decision, it should "use its 'full knowledge of its own and other relevant] precedents." This Court has not explicitly addressed how *Elder*'s mandate fits with *Davis*'s allocation of the burden to plaintiff on to prong two of the qualified immunity test. But *Cortez* and *Gutierrez* were decided well after *Elder*'s issuance.

Despite this, in *Jordan v. Adams Cnty. Sheriff's Office*, 73 F.4th 1162, 1167-68 (10th Cir. 2023), a case also involving Adams County Sheriff's deputies, a panel of the Tenth Circuit indicated an unwillingness to apply the forfeiture doctrine. *Jordan*, 73 F.4th at 1169, n.3. The panel did this despite the prior panel decision in *Gutierrez*. In doing so, the panel relied, in part, on a case, *Flyers Rights Educ. Fund, Inc. v. FAA*, 864 F.3d 738, 748 n.6 (D.C. Cir. 2017), from a circuit that lies on the opposite side of the burden circuit split. In *Jordan*, the panel made no attempt to harmonize its decision with the burden standard in *Davis*, *Cortez*, or *Cummings*. The value of *Jordan*'s handling of *Elder* and implicit departure from *Gutierrez*, moreover, is questionable in light of this Court's decision-priority rule. *See Haynes v. Williams*, 88 F.3d 898, 900 & n.4 (10th Cir. 1996); *see also United States v. Bowling*, 2009 WL 6854970, *1 at n.* (10th Cir. Dec. 23, 2009) (en banc) ("[A] panel is not authorized to overrule a prior decision of a court of appeals[.]").

Here, the magistrate judge and the district court invoke four cases not presented by Mr. Hardy to the district court. In doing so, the district court's decision fundamentally alters how qualified immunity is to be

addressed at the motion to dismiss stage by obviating the plaintiff's burden of persuasion. In consequence, the district court's decision conflicts with multiple lines of cases from this Court and the Supreme Court's placement of the burden on the plaintiff.

It also implicates the party presentation principle. "[I]n both civil and criminal cases, in the first instance and on appeal […,] [federal courts] rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). Exceptions to the rule exist, but they are "modest." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). The party presentation rule not only preserves the neutrality of the courts and ensures the parties receive due process by avoiding sandbagging, but it protects the courts from ruling on issues without thorough briefing–a situation that is prone to result in legal errors. *See United States v. Robinson*, 583 F.3d 1265, 1269 n.1 (10th Cir. 2009); *McBride v. Merrell Dow & Pharm., Inc.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986). Either way, the magistrate judge and the district court erred

in adducing caselaw, albeit only for general statements of the law, on behalf of Mr. Hardy where he bore the burden of persuasion.

## CONCLUSION

Based on the allegations in Mr. Hardy's complaint, neither Deputy Rabie nor Detention Specialist DeHerrera were deliberately indifferent to Mr. Hardy's asserted medical needs. Mr. Hardy has not satisfied either the objective or subjective elements of the Fourteenth Amendment standard. Mr. Hardy, moreover, failed to meet his burden of persuasion to establish that the law on the date of his fall was clearly established. No precedent from this Court or the Supreme Court establishes that an inmate in a substantially similar circumstance as that alleged by Mr. Hardy is entitled to emergency medical treatment. The district court, therefore, erred in denying Deputy Rabie's and Detention Specialist DeHerrera's motions to dismiss. This Court should reverse.

## STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

Mr. Hardy is a pro se inmate. Deputy Rabie and Detention Specialist DeHerrera do not request oral argument.

Dated: June 4, 2024.

Respectfully submitted,


<u>*s/Michael A. Sink*</u>
Michael A. Sink
Kerri A. Booth
Adams County Attorney's Office
4430 S. Adams County Pkwy
Suite C5000B
Brighton, CO  80601
Phone: (720) 523-6116
msink@adcogov.org
kbooth@adcogov.org
*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.  This brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(B) because this brief does not exceed 13,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). It contains 12,214 words.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point, Century Schoolbook.

Dated: June 4, 2024.

_s/Michael A. Sink_____
Michael A. Sink

# CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir.R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, TrendMicro Apex One Security Agent version 14.0.10064, and according to those programs are free of viruses.

Dated: June 4, 2024.

*s/Michael A. Sink*
Michael A. Sink

# CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2024, I caused the forgoing to be electronically filed with the Clerk of the Court using the PACER system; and delivered via FedEx seven (7) hard copies to the court within five (5) business days.

I further certify that I sent a copy of the foregoing to *pro se* Plaintiff Ralph Hardy via U.S. mail, postage prepaid, to his last known address:

Ralph Marcus Hardy
DOC #110262
Bent County Correctional Facility
11560 County Road FF-75, Unite SE-107-B
Las Animas, CO 81054

*s/Michael A. Sink*
Michael A. Sink
Kerri A. Booth
Assistant County Attorneys
Adams County Attorney's Office
4430 S. Adams County Pkwy
Suite C5000B
Brighton, CO 80601
Phone: (720) 523-6116
Fax: (720) 523-6114
msink@adcogov.org
kbooth@adcogov.org
*Counsel for Defendants-Appellants*

**ATTACHMENTS**

Attachment 1 – District Court Doc. No. 92 – Order Adopting in Part, Adopting as Modified in Part, and Rejecting in Part the July 19, 2023 Recommendation of the United States Magistrate Judge filed March 18, 2024.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 22-cv-2843-WJM-MDB

RALPH MARCUS HARDY,

      Plaintiff,

v.

ADAMS COUNTY, *et al*.,

      Defendants.

---

**ORDER ADOPTING IN PART, ADOPTING AS MODIFIED IN PART, AND
REJECTING IN PART THE JULY 19, 2023 RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

---

      This matter is before the Court on the July 19, 2023 Recommendation by U.S.

Magistrate Judge Maritza Dominguez Braswell (the "Recommendation") (ECF No. 86)

that the Court:

- deny Adams County's motion as to *pro se*[1] Plaintiff Ralph Marcus

  Hardy's[2] second and third claims against it;

- deny Sheriff Claps's motion as to Plaintiff's official capacity claims against

  him;

- deny Detention Specialist DeHerrera's and Deputy Rabie's motions as to

---

[1] Plaintiff is proceeding *pro se*, and therefore, the court thus "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

[2] So the Court may more easily read his filings, and in compliance with Local Civil Rule 10.1(e), the Court directs Plaintiff to **double-space** any future filings (whether handwritten or typed) he submits to the Court.

Plaintiff's deliberate indifference claims against them;

- grant Deputy Overmyer's motion as to Plaintiff's official capacity claims against her;

- grant Deputy Overmyer's motion as to Plaintiff's Title II claim against her in her individual capacity;

- deny Deputy Overmyer's motion as to Plaintiff's deliberate indifference claim against her in her individual capacity;

- deny former Sheriff Reigenborn's motion as to Plaintiff's deliberate indifference and retaliation claims against him in his individual capacity;

- grant former Sheriff Reigenborn's motion as to Plaintiff's Title II claim against him in his individual capacity; and

- grant former Sheriff Reigenborn's motion as to Plaintiff's excessive force claim against him in his individual capacity, but order a dismissal without prejudice.

(*Id.* at 21–22.)  The Recommendation is incorporated herein by reference.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

Deputy Rabie and Sheriff Claps filed Objections to the Recommendation ("Rabie/Claps Objections").  (ECF No. 88.)  Adams County filed Objections to the Recommendation ("Adams County Objections").  (ECF No. 89.)  Sheriff Reigenborn, Detention Specialist DeHerrera, and Deputy Overmyer filed Objections to the Recommendation ("Reigenborn/DeHerrera/Overmyer Objections").  (ECF No. 90.) Plaintiff did not file any objections to the Recommendation, nor did he respond to any of Defendants' Objections.

## I. BACKGROUND

This lawsuit arises out of three incidents that occurred while Plaintiff was a pretrial detainee at the Adams County Detention Facility ("ACDF").  (ECF No. 86 at 2.) The Court assumes the parties' familiarity with the facts and incorporates by reference the Background section contained in the Recommendation, which relies on the facts alleged in Plaintiff's Second Amended Complaint ("SAC") (ECF No. 55).[3]  (*See* ECF No. 86 at 2–4.)

## II. RECOMMENDATION

Plaintiff filed this lawsuit in October 2022.  (*See* ECF No. 1.)  He brings claims against Adams County, Colorado ("Adams County"), former Sheriff Reigenborn in his personal capacity, Sheriff Claps in his official capacity, the two masked deputies who allegedly attacked him, Deputy Rabie, Deputy DeHerrera, and Deputy Overmyer in her personal and official capacities.[4]  (*See generally* ECF No. 55.)

Specifically, Plaintiff brings the following causes of action: failure to protect and excessive force under 42 U.S.C. § 1983 against Adams County,[5] Sheriff Claps, former

---

[3] The Court assumes the allegations contained in the SAC are true for the purpose of resolving the Motions to Dismiss.  *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4] Plaintiff initially sued Sheriff Reigenborn in in his individual and official capacities. (*See generally* ECF No. 1.)  Since then, Sheriff Claps has replaced Sheriff Reigenborn as the Adams County Sheriff. (*See* ECF No. 59.)  Therefore, the Court substituted Sheriff Claps for former Sheriff Reigenborn as the official capacity defendant. (*See* ECF No. 62.)

[5] Plaintiff has named "Adams County, a municipality" as a defendant.  (ECF No. 55.) However, in another case, the undersigned observed that "[u]nder Colorado law, any suit against a county must be brought in the name of the 'board of county commissioners of the county'"[.]  *Estate of Blodgett v. Correct Care Sols., LLC*, 2018 WL 6528109, at *8 (D. Colo. Dec. 12, 2018) (quoting Colo. Rev. Stat. § 30-11-105).  "An action attempted to be brought under any other designation is a nullity, and no valid judgment can enter in such a case."  *Id.* (quoting *Calahan v. Jefferson Cnty.*, 429 P.2d 301, 302 (Colo. 1967)).  "The Tenth Circuit views this statutory provision as jurisdictional."  *Id.* (citing *Gonzales v. Martinez*, 403 F.3d 1179, 1182

Sheriff Reigenborn, and the two masked deputies (Claim 1) (*see id.* at ¶¶ 1–18);

deliberate indifference to medical needs under 42 U.S.C. § 1983 against Adams

County, Sheriff Claps, former Sheriff Reigenborn, Deputy Rabie, Detention Specialist

DeHerrera, and Deputy Overmyer (Claim 2) (*see id.* at ¶¶ 19–51); discrimination in

violation of Title II of the ADA and/or under 42 U.S.C. § 1983 against Adams County,

Sheriff Claps, former Sheriff Reigenborn, and Deputy Overmyer (Claim 3) (*see id.* at ¶¶

52–66); and retaliation in violation of the First Amendment under 42 U.S.C. § 1983

against Adams County, Sheriff Claps, and former Sheriff Reigenborn (Claim 4) (*see id.*

at ¶¶ 67–86).

Defendants have filed three separate motions to dismiss, which the Magistrate

Judge analyzed in the Recommendation.

**A.     Adams County & Sheriff Claps in His Official Capacity**

1.     Adams County's Motion to Dismiss

In the Recommendation, the Magistrate Judge addressed Adams County's

arguments that (1) it is not the proper party in interest because "[b]y Colorado statute,

Adams County['s] sole statutory obligation is to build and provide a jail to the sheriff,"

and it "fulfilled that obligation in 1986 by building the current detention facility"; and (2) it

is not the proper party in interest because the Sheriff has exclusive power to set policy

within the detention facility, and Adams County lacks control over those policies.  (ECF

---

n.7 (10th Cir. 2005)).  "Therefore, Plaintiff's failure to properly name the board of county
commissioners of Montrose County alone is grounds for dismissal."  *Id.* (citing *Hand v.
Cummings*, 2012 WL 4442752, at *2 (D. Colo. Aug. 8, 2012)).

     As in *Estate of Blodgett*, Plaintiff has named the incorrect municipal defendant.  In the
Third Amended Complaint, he must name the proper municipal defendant, the Adams County
Board of County Commissioners.  **Should he fail to do so, his claims against the municipal
defendant will be subject to dismissal without prejudice WITHOUT FURTHER NOTICE**.

No. 86 at 6–7.)

With respect to Adams County's first argument, the Magistrate Judge found it unpersuasive because Adams County's sole obligation is not only to build and provide a jail, but according to the Colorado statutes, it *also* must "keep it in repair."  (*Id.* (citing Colo. Rev. Stat. Ann. § 30-11-104(1)(a) ("Each county, at its own expense, shall provide a . . . sufficient jail . . . and keep [it] in repair.")).)

Concerning Adams County's second argument, the Magistrate Judge found dismissal inappropriate at this stage of the litigation.  She observed that Plaintiff alleges that at all relevant times, the Sheriff was acting as a final policymaker for Adams County and that Plaintiff's allegations concern the adequacy of the facility itself.  (*Id.* at 7.) Accordingly, to the extent the Sheriff was constrained in his ability to provide appropriate accommodations, it may be Adams County, not the Sheriff, that bears ultimate responsibility.  (*Id.* (citing Colo. Rev. Stat. §§ 17-26-102, 17-26-126, 30-11-104(1)(a)).)  Ultimately, the Magistrate Judge recommended denying Adams County's motion to dismiss Claims 2 and 3.  (*Id.* at 9.)

### 2.    Sheriff Claps's Motion to Dismiss

Sheriff Claps argues that all four official capacity claims against him should be dismissed because he—the Adams County Sheriff—is an agent of the State, not of Adams County, and is thus entitled to Eleventh Amendment immunity.  (*Id.* at 6, 9.) "Eleventh Amendment immunity applies not only to a state but also to an entity that is the arm of the state."  *Couser v. Gay*, 959 F.3d 1018, 1022 (10th Cir. 2020).

To determine whether an entity constitutes an arm of the state, the Tenth Circuit examines four primary factors: "(1) state law characterization of the entity, (2) the entity's autonomy from the state, (3) the entity's finances and financial independence

from the state, and (4) whether the entity addresses matters of local or state-wide concern." *Hennessey v. Univ. of Kan. Hosp. Auth*., 53 F.4th 516, 526 (10th Cir. 2022). The burden of making this showing falls on the entity asserting it is an arm of the state. *Id*. at 529–32.  And as Sheriff Claps acknowledges, the arm-of-the-state inquiry "is not a categorical, all or nothing one, but must be determined in a particular area, or on a particular issue."  (ECF. No. 35 at 14 (quoting *McMillian v. Monroe Cnty., Ala*., 520 U.S. 781, 795 (1997) (quotation marks omitted) and *Chilcoat v. San Juan Cnty*., 41 F.4th 1196, 1220 n.26 (10th Cir. 2022)).)

In the Recommendation, the Magistrate Judge pointed out that Sheriff Claps fails to mention these four factors.  (ECF No. 86 at 9.)  Rejecting the arguments he does raise, the Magistrate Judge observed that Sheriff Claps points to no comparable Colorado statute or case holding a Colorado sheriff immune under the Eleventh Amendment and concluded that his Eleventh Amendment argument fails.  (*Id.* at 10.)

**B.      Detention Specialist DeHerrera and Deputy Rabie's Motions to Dismiss Plaintiff's Deliberate Indifference Claims**

The Magistrate Judge had "no trouble" concluding that Plaintiff sufficiently alleged both the objective and subjective elements of his deliberate indifference claims against Detention Specialist DeHerrera and Deputy Rabie.  (ECF No. 86 at 11.) Specifically, he alleged that he fell in his cell and permanently injured his lower back, was immobilized by the fall, and soiled himself because of the pain and his inability to move.  (*Id.*)  Detention Specialist DeHerrera, who was the ACDF official tasked with alerting floor deputies when detainees press the emergency distress button, allegedly ignored Plaintiff's emergency distress calls because chasing buttons was not worth his or his unit's time.  (*Id.*)  As a result, Plaintiff was further injured when his cellmate tried

6

to help move him and his suffering was prolonged.  (*Id.*)

The Magistrate Judge found that Plaintiff plausibly alleged that Detention Specialist DeHerrera's ignoring his emergency distress calls caused him substantial harm, thus satisfying the objective prong.  (*Id.* at 12.)  Further, she found that Plaintiff satisfied the subjective prong by alleging that Detention Specialist DeHerrera received the distress calls from Plaintiff's cell but made no attempt to determine the severity of his medical need.  (*Id.*)  Despite Detention Specialist DeHerrera's argument that he cannot be liable because he did not have the requisite personal participation under § 1983, the Magistrate Judge concluded that the act or *omission* of failing to relay Plaintiff's distress calls was sufficient to demonstrate personal participation.  (*Id.* at 12–13.)

With respect to Deputy Rabie, the Magistrate Judge found that Plaintiff's allegations that Deputy Rabie's actions of finding Plaintiff in a contorted position and in extreme pain and telling Plaintiff to "file a grievance" and walking away satisfied the requirements for deliberate indifference.  (*Id.* at 13.)  She found that these alleged inactions prolonged Plaintiff's suffering and delayed Plaintiff visiting with medical personnel; moreover, the allegation that Deputy Rabie saw Plaintiff and spoke to him were sufficient to reflect a culpable state of mind.  (*Id.*)

Regarding the second element of qualified immunity—whether the law was clearly established—the Magistrate Judge determined that in this case, general statements of the law apply to Defendants' conduct.  (*Id.* at 14–16.)  In sum, the Magistrate Judge recommended that at this stage of the litigation, the Court should find that Detention Specialist DeHerrera and Deputy Rabie are not entitled to qualified

immunity.  (*Id.* at 16.)

**C.     Deputy Overmyer's Motion to Dismiss**

First, the Magistrate Judge recommended dismissing Plaintiff's two official capacity claims against Deputy Overmyer because the claims against Sheriff Claps will proceed.  (*Id.*)

Next, she recommended dismissing Plaintiff's Title II claim against Deputy Overmyer because Title II of the ADA does not provide for individual liability.  (*Id.* (citing 42 U.S.C. § 12132 (providing disabled individuals redress for discrimination by a "public entity")).)

With respect to Plaintiff's deliberate indifference claim, the Magistrate Judge found Plaintiff's allegations to be sufficient.  (*Id.* at 17.)  Specifically, she noted that Plaintiff alleged that Deputy Overmyer caused the fall that permanently injured his back because she was responsible for the facility's accommodations, and she knew of and disregarded a high and obvious risk of harm in the non-wheelchair-accessible cell.  (*Id.*) Additionally, the Magistrate Judge emphasized Plaintiff's repeated allegations that Deputy Overmyer knew Plaintiff faced a serious and obvious risk of harm and chose to disregard that risk.  (*Id.*)  Finally, the Magistrate Judge rejected Deputy Overmyer's argument that an intervening cause—the other deputies' failure to timely respond to Plaintiff's emergency distress call—as undermining the sufficiency of Plaintiff's claim. (*Id.* at 18.)  The Magistrate Judge concluded that Deputy Overmyer mischaracterized Plaintiff's claim, which is not that Deputy Overmyer is responsible for the delay in care of the injuries resulting from the delay, but that she is responsible for the fall itself.

Finally, the Magistrate Judge rejected Deputy Overmyer's argument that she is entitled to qualified immunity because her argument was inadequately presented.  (*Id.*

at 18–19.)

**D.      Sheriff Reigenborn's Motion to Dismiss Personal Capacity Claims**

Sheriff Reigenborn moves to dismiss all four of Plaintiff's claims against him in

his personal capacity.  (*Id.* at 19.)  First, he argues that he is entitled to qualified

immunity on Plaintiff's deliberate indifference and retaliation claims.  (*Id.*)  Second, he

argues that Plaintiff fails to state an ADA or excessive force claim against him.

### 1.       Qualified Immunity

The Magistrate Judge rejected Sheriff Reigenborn's qualified immunity argument

at this stage of the litigation, noting that it appears as though he is arguing under the

clearly established prong.  (*Id.*)  In recommending denying the motion on this point, the

Magistrate Judge underscored that Sheriff Reigenborn missed the mark by focusing on

modification of security classifications to accommodate an inmate, but that is "only one

aspect of Plaintiff's many claims against Sheriff Reigenborn."  (*Id.*)  In addition, Plaintiff

alleges misconduct concerning (1) his failure to properly train ACDF's ADA coordinator,

(2) his role in allegedly approving ACDF staff's policy of not responding to emergency

distress buttons, (3) his role in failing to discipline or investigate ACDF staff for violating

detainees' rights, and (4) his role in approving a broad range of harsh adjustments to

Plaintiff's living conditions in retaliation for Plaintiff's filing a well-known lawsuit against

ACDF.  (*Id.* (citing ECF No. 55 at ¶¶ 37, 40–46, 48–51, 78–79, 85).)  Accordingly, the

Magistrate Judge rejected Sheriff Reigenborn's qualified immunity argument, stating

that he "has not adequately raised a qualified immunity defense at this stage."  (*Id.* at

20.)

### 2.       Rule 12(b)(6) Arguments

First, the Magistrate Judge recommended dismissing Plaintiff's Title II claim

against Sheriff Reigenborn in his personal capacity because Title II of the ADA does not provide for individual liability.  (*Id.*)

With respect to Plaintiff's excessive force claim, Sheriff Reigenborn argued that it should be dismissed because Plaintiff failed to allege he had prior knowledge that the deputies would beat Plaintiff in the manner that they did.  (*Id.*)  Although the Magistrate Judge emphasized that this argument fails because there is no requirement that Plaintiff demonstrate such precise knowledge, she concluded that all Plaintiff alleges is a conclusory failure to train or supervise on Sheriff Reigenborn's part.  (*Id.*)  In particular, Plaintiff alleges that his injuries stem from former Sheriff Reigenborn's policy and practice of directing his deputies to use excessive force against non-combative inmates and having his staff deny medical care to injured detainees to prevent medical documentation of his deputies' unlawful conduct, all in order to escape liability for their misconduct.  (*Id.*)

However, the Magistrate Judge noted that "Plaintiff does not allege any specific instances where Sherriff Reigenborn 'encouraged his deputies' to violate civil rights; nor does Plaintiff point to any comments or statements—by Sheriff Reigenborn or anyone else—reflecting Sheriff Reigenborn's personal participation in the creation or implementation of a policy, practice, or training."  (*Id.*)  Ultimately, she found that Plaintiff failed to sufficiently allege facts showing that Sheriff Reigenborn fostered a problematic culture, encouraged deputies to violate civil rights, and failed to discipline deputies when appropriate, and recommended dismissing without prejudice the personal capacity excessive force claim against Sheriff Reigenborn.  (*Id.* at 21.)

While the Magistrate Judge disagreed with Sheriff Reigenborn's articulation of

the standard, which he apparently argues requires direct personal participation, she agreed that Plaintiff nevertheless must allege an "'affirmative link' . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.'"  (*Id.* at 22 (citation omitted).)  Because the allegations supporting that link were too conclusory, she recommended dismissal without prejudice with respect to the personal capacity excessive force claim. (*Id.*)

The Magistrate Judge noted that the "lack of specific facts alleging a link between Sheriff Reigenborn and the incident at issue may be fatal to Plaintiff's deliberate indifference and retaliation claims as well."  (*Id.* at 22 n.11.)  However, because she determined that Sheriff Reigenborn did "not challenge the deliberate indifference and retaliation claims on these grounds, and relied instead on an underdeveloped 'clearly established law' argument," she did not analyze those claims in that context.  (*Id.*)

### III. LEGAL STANDARDS

**A.      Rule 72(b) Review of a Magistrate Judge's Recommendation**

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to."  Fed. R. Civ. P. 73(b)(3).  An objection to a recommendation is properly made if it is both timely and specific.  *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."  *Id.*  In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to

the magistrate judge with instructions."  *Id.*

In the absence of a timely and specific objection, "the district court may review a magistrate [judge's] report under any standard it deems appropriate."  *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record.").

## B.   Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## C.   Qualified Immunity

"Qualified immunity shields federal and state officials from money damages

unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Once the qualified immunity defense is raised, the burden shifts to the plaintiff to demonstrate that the law was clearly established at the relevant time.  *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).  "A right is clearly established in this circuit when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains."  *Id.* (internal quotation marks omitted).  Nonetheless, the clearly established prong

> involves more than a scavenger hunt for prior cases with precisely the same facts.  The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.  The Supreme Court has cautioned [lower] courts not to define clearly established law at a high level of generality, but to focus on whether the violative nature of particular conduct is clearly established.

*Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) (internal quotation marks and citations omitted).

# IV. ANALYSIS

## A.  Rabie/Claps Objections

### 1.  Deputy Rabie's Objections

Deputy Rabie objects to all of the Magistrate Judge's recommendations with respect to the claim against him.  (ECF No. 88 at 3.)

#### a.  *Deliberate Indifference*

With respect to the objective component of deliberate indifference, Deputy Rabie argues that Plaintiff's allegations do not support that he was suffering from a condition at the time that Deputy Rabie encountered him that mandated immediate medical treatment.  (*Id.*)  He argues that Plaintiff failed to allege facts demonstrating that Deputy Rabie would have been able to recognize that Plaintiff's "contorted" position was anything other than normal; Deputy Rabie was familiar with Plaintiff such that he had a basis to believe that Plaintiff's position in the wheelchair was abnormal; or Plaintiff was in extreme pain or was injured in some way.  (*Id.* at 4–5.)  With respect to the subjective component, Deputy Rabie argues that Plaintiff's allegations fail to establish a substantial risk of harm or how Deputy Rabie would have known Plaintiff was subject to a substantial risk of harm.  (*Id.* at 6.)  He takes issue with the conclusions in the Recommendation that the subjective prong was met merely because he saw and spoke to Plaintiff.  (*Id.*)

Despite Deputy Rabie's arguments, the Court agrees with the Magistrate Judge that at this time, Plaintiff has sufficiently alleged a deliberate indifference claim against Deputy Rabie.  Plaintiff has alleged that Deputy Rabie saw him in a contorted position and in extreme pain, that Plaintiff told Deputy Rabie he had fallen from his wheelchair, and there was a medical emergency.  (ECF No. 55 ¶ 31.)  Allegedly, Deputy Rabie told

Plaintiff to file a grievance and walked away.  (*Id.*)  The objective prong of Plaintiff's deliberate indifference claim is satisfied by the alleged delay in medical care which would not have occurred had Deputy Rabie ordered medical aid for Plaintiff immediately.  The subjective prong is satisfied by the allegation that Plaintiff was in a contorted position and verbally told Deputy Rabie that a "medical emergency" had occurred.

Accordingly, the Court overrules Deputy Rabie's objections on this point and adopts the findings of the Magistrate Judge in the Recommendation.  The Court proceeds to examine whether Deputy Rabie is nonetheless entitled to qualified immunity.

> b.    *Qualified Immunity*

Deputy Rabie argues that Plaintiff failed to meet the clearly established requirement of the qualified immunity analysis.  (ECF No. 88 at 7.)  He points out that it is Plaintiff's burden to identify a case where an official acting under sufficiently similar circumstances was held to have violated a claimant's rights.  (*Id.* at 7–8.)  He argues that Plaintiff fails to cite applicable case law setting forth clearly established precedent that his conduct was constitutionally violative and that the Magistrate Judge's reliance on and citation to general statements of law related to deliberate indifference to a serious medical need are insufficient.  (*Id.* at 8.)

The Court disagrees.  Plaintiff cited numerous published Tenth Circuit cases in his response brief, which the Magistrate Judge also cited, to support his argument that the law is clearly established.  (ECF No. 82 at 18.)  Although the Court will not reiterate the cases here, the Court agrees with the Magistrate Judge's conclusion that with respect to this claim against this defendant, general statements of law demonstrate that

the law is clearly established.  (*See* ECF No. 82 at 20–23; ECF No. 86 at 15.)  Simply because Plaintiff ostensibly does not cite a case in which a detainee fell out of a wheelchair in a non-wheelchair accessible cell and injured himself and requested medical aid does not mean that the law was not clearly established.  Where a detainee has a serious and obvious medical need, ignoring those needs as Deputy Rabie allegedly did by physically observing Plaintiff, telling him to file a grievance, and walking away meets the clearly established standards set in this Circuit.

Thus, the Court overrules Deputy Rabie's objections on this matter and adopts this portion of the Recommendation concluding that Deputy Rabie is not entitled to qualified immunity.  Deputy Rabie's motion to dismiss the deliberate indifference claim against him in his individual capacity is denied.  Plaintiff's claim for deliberate indifference against Deputy Rabie in his individual capacity will proceed.

### 2.   Sheriff Claps's Objections

Sheriff Claps objects to the Recommendation's analysis of his Eleventh Amendment immunity argument.  (ECF No. 88 at 8–10.)  He notes that Plaintiff merely argued in his response that Eleventh Amendment immunity had been waived—an argument rejected by the Tenth Circuit.  (*Id.* at 9.)  Further, he contends that it is of no moment that he did not explicitly mention the four factors used to analyze Eleventh Amendment immunity and takes issue with the Magistrate Judge's analysis of assertions not raised by Plaintiff.  (*Id.*)  The Court reviews the arguments concerning claims against Sheriff Claps in his official capacity *de novo*.

### a.   *Official Capacity Claims*

Among other defendants, Plaintiff has sued Sheriff Claps in his official capacity

and Adams County.[6]  (*See* ECF No. 55.)  As such, in Sheriff Claps's motion to dismiss, he argues that "he is only properly named in his personal capacity" because "[o]fficial capacity claims are pass through claims."  (ECF No. 35 at 9.)

The Court agrees.  "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Couser v. Gay*, 959 F.3d 1018, 1023 (10th Cir. 2020) (recognizing that official capacity suits "impose[ ] liability on the entity that [the sued public servant] represents" (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).  Because Plaintiff has sued Adams County, a suit against Sheriff Claps in his official capacity is duplicative.

Because of the duplicative nature of the claims against Sheriff Claps, the Court rejects the Recommendation's findings with respect to Sheriff Claps, grants Sheriff Claps's motion to dismiss the official capacity claims, and dismisses all of Plaintiff's claims against Sheriff Claps in his official capacity with prejudice.  *See Rustgi v. Reams*, 536 F. Supp. 3d 802, 822 (D. Colo. 2021) (dismissing official capacity claims against sheriff in light of claims against the Weld County Board of County Commissioners).

b.    *Eleventh Amendment Immunity*

Despite the Court's foregoing ruling, the Court is cognizant of the fact that Sheriff Claps's primary argument is that Plaintiff's claims against him are barred by the Eleventh Amendment.  Therefore, "[b]ecause the proper application of Eleventh Amendment immunity deprives a federal court of jurisdiction, *see, e.g.*, *Peterson v.*

---

[6] In his response to Sheriff Claps's motion to dismiss, Plaintiff states that he "would be amenable to amending his claims in a manner in which only one, rather than two, of the institutional iterations remained a party (*i.e.*, naming Sheriff Reigenborn [now Sheriff Claps] in his official capacity)."  (ECF No. 52 at 16.)  He further states that "to the extent this Court may be inclined to dismiss any claims solely because they duplicate other claims, Adams County should remain as the Defendant subject to *Monell* liability."  (*Id.*)

*Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) ("The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state."), the Court considers this argument in the alternative.  *See Reynolds v. Flynn*, 2022 WL 252327, at *4 (D. Colo. Jan. 27, 2022) (rejecting sheriff's assertion of Eleventh Amendment immunity), *report and recommendation adopted*, 2022 WL 20538911 (D. Colo. Mar. 31, 2022).

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI. "The Eleventh Amendment precludes anyone from suing an arm of the state or asserting a damage claim against state officers in their official capacities."  *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017).  This immunity extends to suits by citizens against their own state or its agencies in federal court.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  The Eleventh Amendment thus bars suits against state officials sued in their official capacities for monetary damages pursuant to § 1983. *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) (stating that § 1983 "does not abrogate a state's sovereign immunity").

Here, Plaintiff sues Sheriff Claps in his official capacity.  "An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works."  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998).  Thus, a suit against Sheriff Claps in his official capacity is the equivalent of a suit against Adams County.  *See Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015)

(finding that a suit against a sheriff was in fact a suit against the county for which the sheriff worked).

"The Supreme Court 'has repeatedly refused to extend Eleventh Amendment sovereign immunity to counties.'" *Couser v. Gay*, 959 F.3d 1018, 1023 (10th Cir. 2020) (quoting *Northern Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006)). "It follows that county officers sued for damages in their official capacity are generally not entitled to Eleventh Amendment immunity." *Id*.

The Tenth Circuit looks to "four primary factors" to determine whether an entity constitutes an "arm of the state." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007). The Court considers (1) the "character ascribed to the entity under state law;" (2) the "autonomy accorded the entity under state law," or the degree of control the state exercises over the entity; (3) the entity's finances, *i.e.*, "the amount of state funding the entity receives and . . . whether the entity has the ability to issue bonds or levy taxes on its own behalf;" and (4) "whether the entity in question is concerned primarily with local or state affairs," examining the agency's function, composition, and purpose. *Id*. The weight of authority finds that the defendant bears the burden of demonstrating that he is entitled to Eleventh Amendment immunity. *Reynolds*, 2022 WL 252327, at *6 (collecting persuasive authority).

Sheriff Claps broadly discusses Eleventh Amendment immunity in his motion to dismiss and unhelpfully does not explicitly tie his assertions to any particular *Steadfast* factor; it appears as though some assertions apply to multiple factors. Nevertheless, the Court evaluates his arguments.

Sheriff Claps states:

- "[C]ounty sheriffs in Colorado are independently-elected state constitutional officers with jurisdictional limits tied to a geographic boundary.  As such, they serve in a variety of roles."  *See Struble v. Barger*, 261 P.2d 497, 498 (Colo. 1953) (referring to the office of the county sheriff serving as both an "executive officer" and an "officer of the court")).

- Under the Colorado Constitution, law enforcement is executive in nature.  *See* Colo. Const., art. IV, § 2 (granting to Governor "supreme executive power of the state" and imposing duty to "take care that the laws be faithfully executed").

- The State has the power of incarceration as part of its police powers.  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

- The State delegates that power to county sheriffs in each jurisdiction by statute.

- The County, for its part, exercises no control over the Sheriff in the operation of detention facility.

- By statute, the Sheriff's finances are derived from a variety of federal and state grants, county tax revenue, and fees for services provided.  *See, e.g.*, Colo. Rev. Stat. §§ 30-10-102(1); 30-10-521.

(ECF No. 35 at 13–14.)  Given the foregoing statements, Sheriff Claps argues he is entitled to Eleventh Amendment immunity.

The Court disagrees.  Perhaps most importantly, Sheriff Claps does not clearly acknowledge the fundamental fact that the Colorado Constitution classifies sheriffs as "[c]ounty officers."[7]  *See* Colo. Const. art. XIV, § 8; *see also* Colo. Const. art. IV, § 1(1) (recognizing that the executive department constitutes the governor, lieutenant governor, secretary of state, state treasurer, and attorney general); *see also Couser*, 959 F.3d at 1026 (in finding that county sheriffs were county, rather than state, actors,

---

[7] Notably, Adams County cites this portion of the Colorado Constitution in another section of the same brief.  (ECF No. 35 at 6.)

noting that the Kansas Constitution did not recognize sheriffs as state officers and a Kansas statute recognized sheriffs as county officers).  Therefore, the first factor weighs heavily against finding Eleventh Amendment immunity applies.

In the Court's view, Sheriff Claps's arguments collapse the second and fourth factors.  However, he merely recites broad propositions—often statutory provisions—that do not help the Court evaluate the true amount of autonomy Sheriff Claps enjoys or whether he is concerned primarily with state or local affairs.  Therefore, based on these arguments, the Court cannot find that these factors weigh in favor of finding Eleventh Amendment immunity applies here.

Finally, with respect to the finances factor, Sheriff Claps broadly states that his finances are derived from a "variety of federal and state grants, county tax revenue, and fees for services provided."  (ECF No. 35 at 14.)  This statement does almost nothing to help the Court understand the entity's finances, *i.e.*, the amount of state funding the entity receives and whether the entity has the ability to issue bonds or levy taxes on its own behalf.  Accordingly, the Court cannot find that the third factor weighs in favor of finding Eleventh Amendment immunity here.

While the Court has reviewed the Eleventh Amendment immunity argument *de novo*, it agrees with the point in the Recommendation that Sheriff Claps "points to no comparable Colorado statute or case holding a Colorado sheriff immune under the Eleventh Amendment."  (ECF No. 86 at 10.)  Of course, as Sheriff Claps emphasizes in his objections, the "existence of a prior precedent already reaching that outcome . . . is not the test under . . . *Couser*."  (ECF No. 88 at 10.)  Nevertheless, the dearth of case law supporting Sheriff Claps's argument, while not dispositive, is nevertheless

significant.

Therefore, in the alternative, the Court overrules Sheriff Claps's objections to the Recommendation's analysis of Eleventh Amendment immunity, adopts as modified the Recommendation's findings with respect to Sheriff Claps not being entitled to Eleventh Amendment immunity, and denies Sheriff Claps's motion to dismiss the official capacity claims on the basis that he is entitled to Eleventh Amendment immunity.  Of course, given the Court's foregoing dismissal of all official capacity claims against Sheriff Claps, this ruling is of no practical effect and is made purely in the alternative to address a jurisdictional question.

**B.     Adams County Objections**

　　　　　1.     <u>Adams County Moved to Dismiss All Four Claims Alleged Against It</u>

In the Recommendation, the Magistrate Judge states that "Adams County nowhere appears to argue Plaintiff's first and fourth claims against it should be dismissed."  (ECF No. 86 at 8 n.4.)  But Adams County objects that it did not "limit the force of its argument to Mr. Hardy's second and third claims[.]"  (ECF No. 89 at 3.) Adams County explains that due to space constraints imposed by Local Rule of Practice–Civil VII.B, it "focused on the obligations of the ADA as the only potentially relevant statutory scheme in which it might (but didn't) have additional obligations due to the age of the detention facility."[8]  (*Id.*)

The Court observes that in the Conclusion of the motion to dismiss, the parties argue that "Mr. Hardy's claims against Adams County . . . should be dismissed with prejudice" and do not limit their argument to only two of the four claims.  (ECF No. 35 at

---

[8] *See infra*, n.12 for discussion of "space constraints."

17.)  Thus, the Court sustains Adams County's objection that the Magistrate Judge should have considered the motion to dismiss as applying to all four of the claims against Adams County, and to the extent required, rejects the conclusion in the Recommendation that Adams County only moved for dismissal with respect to Plaintiff's second and third claims.

### 2.   Title II ADA Claim

Adams County objects that the Magistrate Judge "did not address the applicability of the ADA in light of the age of the detention facility."  (ECF No. 89 at 4.)  Moreover, Adams County argues that it cannot be held liable under the ADA because the detention facility predates the 1993 applicability date of the ADA, which "does not, therefore, require the form of absolute wheelchair accessibility accommodation demanded by Mr. Hardy in Counts 2 and 3."  (*Id.*)  In its motion to dismiss, Adams County explains:

> In enacting the ADA, Congress adopted two distinct systems for regulating building accessibility: one to apply to existing facilities (those designed and constructed for occupancy before January 26, 1993) and another to apply to later-constructed facilities.  42 U.S.C. §§ 12183(a)(1) and 12182(b)(2)(A)(iv).  Pre-1993 facilities must remove barriers to accessibility only to the extent that such removal is "readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).  "Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).

(ECF No. 35 at 6.)  Thus, Adams County contends that the ADA does not require it to modify detention facilities that predate 1993.  (*Id.*)  In the Adams County Objections, Adams County argues that to the extent the Recommendation with respect to Claims 2 and 3 are predicated on § 1983 instead, that section "cannot provide an alternative source of accessibility rights unless those rights are constitutional."  (ECF No. 89 at 4.)

The Court agrees that Plaintiff's Claim 3, whatever it alleges, must be dismissed. Plaintiff confusingly explains that "Claim three is a [§] 1983 Fourteenth  Amendment claim of discrimination against the Plaintiff as a member of the class based group of "Americans with Disabilities[.]"  (ECF No. 52 at 11–12.)  But "[s]ection 1983 cannot be used to vindicate a violation of federal law where Congress has otherwise created an incompatible and comprehensive enforcement scheme."  *Brown v. Berthoud Fire Prot. Dist.*, 2013 WL 6152407, at *4 (D. Colo. Nov. 22, 2013) (citing *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)).  "To the extent that the Plaintiff seeks to invoke the ADA in this § 1983 claim, that claim fails, because ADA claims are 'not actionable under Section 1983.'"  *Laface v. E. Suffolk BOCES*, 2020 WL 2489774, at *9 (E.D.N.Y. May 14, 2020) (citation omitted).  Such is the case here.  To the extent Plaintiff alleged a hybrid ADA/§ 1983 claim, the law does not permit such a claim.  This is the first basis upon which Claim 3 must be dismissed.

But there is another, perhaps more significant, reason to dismiss Claim 3. Adams County states that the detention facility predates the applicability of the ADA. (ECF No. 64 at 8.)  Plaintiff does not argue otherwise in his response.  (*See* ECF No. 52.)  Further, Adams County states that architectural or structural changes are not readily achievable under the ADA's applicable standard where they are not easily accomplishable and able to be carried out without much difficulty or expense.  (*See* ECF No. 35 at 8.)  It highlights that Plaintiff does not allege otherwise; rather, Plaintiff acknowledges in a previous complaint that the bulk of the detention facility predates the ADA with the exception of F-block, which Plaintiff alleges is ADA compliant.[9]  (*See id.*)

---

[9] The allegations cited appear in Plaintiff's Amended Prisoner Complaint, which is not the operative complaint.  (ECF No. 22.)

For this reason the Court finds that Plaintiff has failed to state a Title II ADA claim.  Accordingly, the Court rejects that portion of the Recommendation which recommends that the Title II ADA claim against Adams County proceed and sustains Adams County's objection on this point.  The Court grants Adams County's motion to dismiss Claim 3 and dismisses Claim 3 without prejudice.

### 3.    Section 1983 Claims

Adams County also objects to the Recommendation on the grounds that it is inconsistent with other case law involving inmate claims under § 1983 asserted against a county; its invocation of Adams County's duty to inspect the detention facility is misplaced; its reliance on the undersigned's decision in *Chavez v. Bd. of Cnty. Comm'rs*, 426 F. Supp. 3d 802, 812 (D. Colo. 2019), is unwarranted; and it improperly relies on a pre-*Twombly/Iqbal* pleading decision.  (*See* ECF No. 89.)

The Court has considered all of these objections and concludes that they are without merit.  At bottom, Adams County objects to the Magistrate Judge's rejection of its argument that it is "not the proper party in interest because the Sheriff has exclusive power to set policy within the detention facility[,] and Adams county lacks control over those policies."  (ECF No. 86 at 7; ECF No. 89.)  Instead, it argues that Sheriff Claps "is the real proper party in interest when it comes to the operation of the detention facility." (ECF No. 35 at 7.)  However, while Adams County argues that Plaintiff's claims properly lie against Sheriff Claps, Sheriff Claps simultaneously argues that Adams County is the proper party because official capacity claims against him are merely "pass through claims" *and* that regardless, he is entitled to Eleventh Amendment immunity.  (ECF No. 35 at 9–10, 13–15.)

Another judge in this District faced a very similar argument (albeit in the context

of claims related to employment decisions), brought by the same attorneys litigating this action for Defendants, and succinctly stated that "[t]hus, according to Defendants, *no* governmental entity would be liable under Section 1983 when a Colorado Sheriff violates an employee's constitutional rights through an unlawful employment action." *Coates v. Adams Cnty. Sheriff's Off.*, 631 F. Supp. 3d 976, 997 (D. Colo. 2022), *appeal dismissed sub nom. Coates v. Reigenborn*, 2023 WL 6810961 (10th Cir. Oct. 16, 2023) (emphasis added).  Were the Court to adopt Adams County and Sheriff Claps's substantially similar reasoning here, the same unacceptable legal loophole would befall Plaintiff.

"As a general rule, 'municipalities and municipal entities . . . are not liable under 42 U.S.C. § 1983 solely because their employees inflict injury on a plaintiff.'"  *Id.* (citing *Fofana v. Jefferson Cnty. Sheriff's [Office]*, 2011 WL 780965, at *2 (D. Colo. Feb. 28, 2011); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694, (1978); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).  "Instead, 'they are responsible only for their own actions.'"  *Id.* (quoting *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007)).  "Nonetheless, an action may be attributed to a municipality or municipal entity when: 1) the action was taken in compliance with a longstanding policy or custom; or 2) the action was taken by the municipality's final policymakers."  *Id*. (citation omitted).

"In determining whether an official has final policymaking authority, [the Court] look[s] to state and local law."  *Jackson v. City & Cnty. of Denver*, 2022 WL 120986, at *4 (10th Cir. Jan. 13, 2022) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).  Adams County points out that the "Sheriff has exclusive statutory powers as

keeper of the jail."  (ECF No. 35 at 7 (citing Colo. Rev. Stat. §§ 17-26-101 to 103; *id*. at

§ 30-10-511 ("[T]he sheriff shall have charge and custody of the jails of the county, and

of the prisoners in the jails, and shall supervise them himself or herself through a deputy

or jailer.")).)  Further, Adams County states that the "Board is not responsible for, nor

can it control, the Sheriff's policies and practices within the detention facility."  (*Id.*)  It

further points out that

> [a]s such, the County (or the Board) is not the real-party-in-
> interest as to the Sheriff's policies within the detention facility
> or his hiring, training, or supervision of deputies.  *See Lewis
> v. Clarke*, 581 U.S. 155, 162 (2017) (proper affiliation of
> state employees or entities is determined by looking to "the
> real party in interest").  Because the Sheriff is not an agent of
> the County for purposes of the operation of the detention
> facility, a *Monell* claim does not lie against the County for the
> Sheriff's conduct—whether directly or through an "official
> capacity" claim against the Sheriff.  The Sheriff is the real
> party in interest when it comes to the operation of the
> detention facility.  The Sheriff (and his successors) would be
> bound by any holding and their statutory powers thereby
> limited.  The fact the County may have an indirect or
> secondary indemnification duty under a state statute does
> not alter the analysis.

(*Id.* at 7–8.)  Thus, the parties—Adams County and Sheriff Claps, to be precise—do not

dispute that Sheriff Claps was the final policymaker with respect to policies at the

detention facility.

The Court again finds the *Coates* court's summary of a nearly identical situation

instructive here.  In *Coates*, the court observed that

> the defendants appear to argue both that the County cannot
> be liable for Sheriff Reigenborn's actions because Sheriff
> Reigenborn is not under the County's control and therefore
> his actions cannot be imputed to the County, and that ACSO
> cannot be sued separately because it is simply an office or
> department within the County with no separate legal entity.

*Coates*, 631 F. Supp. 3d at 997.  Such is precisely the case here.  And, like the *Coates* court, the undersigned finds this position wholly "untenable."  *Id.*  The Court need not parse the difference between a county, a sheriff, and a sheriff's office like the *Coates* court did because here, Plaintiff only sues the county and the sheriff.  *See id.* at 997–98.  Nevertheless, the Court agrees with the *Coates* court that despite some confusion concerning proper municipal liability defendants in this District, "none have allowed the type of municipal-liability loophole that Defendants seek to create here.  Such a result would unfairly punish Plaintiff[] for the legal uncertainty, despite [his] viable municipal liability claims."  *Id.* at 998.

Despite the foregoing procedural conundrum, the Court holds that Adams County is the proper municipal defendant, and Plaintiff properly brought his claims against it by naming it and Sheriff Claps in his official capacity.[10]  Although Adams County argues that it cannot be held liable for Sheriff Claps's decisions and policies with respect to the detention facility because it does not control those decisions, as in *Coates*, this simply means that Sheriff Claps is the final policymaker on such matters for Adams County and his decisions are thus chargeable as an official act of Adams County.  *See id.*

Therefore, the Court overrules in part Adams County's Objections and adopts as modified the relevant portion of the Recommendation.  Adams County's motion to dismiss Plaintiff's § 1983 claims for excessive force, deliberate indifference, and retaliation is denied.

---

[10] Earlier in this Order, the Court addressed the duplicative nature of the claims against Sheriff Claps and dismissed the claims against him.  *See supra*, Part IV.A.2.

C.     **Reigenborn/DeHerrera/Overmyer Objections**

1.     <u>Sheriff Reigenborn</u>

a.     *Excessive Force*

With respect to Plaintiff's excessive force claim against Sheriff Reigenborn, the Magistrate Judge recommended dismissal without prejudice.  (ECF No. 86 at 22.)  No party has objected to that portion of the Recommendation.[11]  (ECF No. 90 at 6.)

Finding no clear error, the Court adopts this portion of the Recommendation. Sheriff Reigenborn's motion to dismiss Plaintiff's excessive force claim is granted, and Plaintiff's excessive force claim against Sheriff Reigenborn in his individual capacity is dismissed without prejudice.

b.     *Qualified Immunity Regarding Deliberate Indifference and Retaliation Claims*

Sheriff Reigenborn objects to the Magistrate Judge's qualified immunity analysis, arguing that it was "erroneous" for multiple reasons, including that the Magistrate Judge improperly shifted the burden to show that the constitutional right was clearly established from the plaintiff to the defendant; relied on case law, *Tillmon v. Cty. of Douglas*, 2019 WL 1375678, at *12 (D. Colo. Mar. 27, 2019), that is not binding or relevant; and constrained defendants' argument by requiring compliance with certain page limits in the practice standards.[12]  (ECF No. 90 at 4–6.)

---

[11] Sheriff Reigenborn objected that he was "entitled to qualified immunity on the claims not otherwise recommended for dismissal" and points out he asserted qualified immunity as to claims two and four, which are Plaintiff's deliberate indifference and retaliation claims.  (ECF No. 90 at 3.)

[12] The Reigenborn/DeHerrera/Overmyer Objections assert that they were "constrained by their compliance with an atypical local practice standard" that "requires all parties represented by the same counsel to file a consolidated motion subject to a single page limit." (ECF No. 90 at 5.)  To the extent *any* defendant bases an objection on the Magistrate Judge's Civil Practice Standard that states: "Absent a sufficient legal reason and leave of Court, all

While the Court disagrees with the second and third arguments that Sheriff Reigenborn raises, it agrees that the Recommendation improperly shifted the burden on the qualified immunity issue from Plaintiff to Sheriff Reigenborn.  (ECF No. 86 at 19.) Although the Recommendation addresses Sheriff Reigenborn's arguments concerning whether the constitutional right was clearly established, it is silent with respect to whether *Plaintiff* met his burden to show that Sheriff Reigenborn is not entitled to qualified immunity and improperly states that "Defendant has not adequately raised a qualified immunity defense at this stage." (*Id*. at 20.)  The Recommendation merely cites portions of Plaintiff's SAC but does not address whether he adequately refuted Sheriff Reigenborn's argument that the constitutional rights at issue were not clearly established.  Therefore, the Court sustains the former Sheriff's objection regarding the qualified immunity analysis, rejects that portion of the Recommendation analyzing the clearly established prong of the qualified immunity analysis, and addresses it *de novo* below.

In Plaintiff's response brief, he cites three published Tenth Circuit cases to support his argument that Sheriff Reigenborn is not entitled to qualified immunity on his second and fourth claims.  (ECF No. 52 at 23–24.)  First, he cites *Dodds v. Richardson*,

---

parties represented by the same counsel are limited to a consolidated motion that adheres to the applicable page limits," *see* Prac. Std. VII.B, the Court finds such an argument is without merit.  Notwithstanding a particular judge's practice standards, a party is free to file a motion to extend the page limits or even to file a separate (non-consolidated) motion, as the case may require.

The Reigenborn/DeHerrera/Overmyer Objections do not indicate that counsel filed such a motion to extend the page limits or file separate motions.  In a case like this one, with multiple claims, a *pro se* plaintiff, multiple defendants sued in their official and individual capacities, and complex legal doctrines, it is very likely that the Court would grant such a request, at least to some extent.  Unless a party so moves and finds his request rejected, the Court finds such an argument baseless.

614 F.3d 1185, 1206 (10th Cir. 2010), which found that "Plaintiff's right to be free from unjustified detention after his bail was set was clearly established such that a reasonable official in Defendant's position in April 2007 would have understood that his deliberately indifferent maintenance of the policies that prevented arrestees from posting preset bail for no legitimate reason violated the Constitution."  Second, he cites *Wilson v. Montano*, 715 F.3d 847, 856 (10th Cir. 2013), which concerned whether the plaintiff received a prompt probable cause hearing, to support the proposition that there has been no repudiation of *Dodds* in the Tenth Circuit.  Third, Plaintiff cites *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988), which involved allegations of excessive force and inadequate medical care.

Upon *de novo* review, the Court concludes that Plaintiff has failed to meet his burden to demonstrate that Sheriff Reigenborn is not entitled to qualified immunity on the deliberate indifference and retaliation claims.  None of the three aforementioned cases are even remotely factually similar to the allegations here.  As Sheriff Reigenborn emphasizes, none of these cases "involve security classifications or cell accommodation requests based on alleged disability status under Title II of the ADA."[13] (ECF No. 64 at 6–7.)  None address First Amendment retaliation.  Further, only *Meade* involves medical care, but it does not involve similar facts related to the timeliness of a response to an emergency call button, nor does it establish an employer or

---

[13] The Recommendation underlines that these are only some of the aspects of Plaintiff's claims, which also involve "(1) his failure to properly train ACDF's ADA coordinator, (2) his role in allegedly approving ACDF staff's policy of not responding to emergency distress buttons, (3) his role in failing to discipline or investigate ACDF staff for violating detainees' rights, and (4) his role in approving a broad range of harsh adjustments to Plaintiff's living conditions in retaliation for Plaintiff's filing a well-known lawsuit against ACDF." (ECF No. 86 at 19–20 (citing ECF No. 55 at ¶¶ 37, 40–46, 48–51, 78–79, 85).)  While the Court agrees that these are also aspects of Sheriff Reigenborn's alleged misconduct, the cases Plaintiff cites nevertheless do not involve facts that would support his argument.

policymaker's standard of care for supervision and training as to distress call responsiveness.  (*Id.* at 7.)

Therefore, the Court finds that Plaintiff has not met his burden to demonstrate that Sheriff Reigenborn is not entitled to qualified immunity on his second and fourth claims.  The Court rejects this portion of the Recommendation with respect to qualified immunity and sustains Sheriff Reigenborn's objection.  The Court grants Sheriff Reigenborn's motion to dismiss Plaintiff's deliberate indifference and retaliation claims against him in his individual capacity and dismisses these claims with prejudice.

c.      *Title II ADA*

The Magistrate Judge recommended dismissing Plaintiff's Title II claim against Sheriff Reigenborn in his individual capacity because Title II of the ADA does not provide for individual liability.  (ECF No. 86 at 20 (citing 42 U.S.C. § 12132 (providing disabled individuals redress for discrimination by a "public entity"); *see also* 42 U.S.C. § 12131 (defining public entity); *cf. Butler v. City of Prairie Vill., Kan*., 172 F.3d 736, 744 (10th Cir. 1999) (holding "the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition")).)  Neither Sheriff Reigenborn (ECF No. 90) nor Plaintiff objected to this portion of the Recommendation.

Finding no clear error, the Court adopts this portion of the Recommendation. Plaintiff's Title II claim against Sheriff Reigenborn in his individual capacity is dismissed with prejudice.

2.      <u>Detention Specialist DeHerrera</u>

First, the Court addresses the arguments in the Reigenborn/DeHerrera/Overmyer Objections concerning the manner in which the Magistrate Judge addressed qualified

immunity with respect to Detention Specialist DeHerrera.  In a section entitled "Former Sheriff Reigenborn, Deputy Overmyer and Detention Specialist DeHerrera Are Each Entitled to Qualified Immunity on the Claims Not Otherwise Recommended for Dismissal," Detention Specialist DeHerrera argues that the Magistrate Judge "simply refus[ed] to address qualified immunity."  (ECF No. 90 at 4.)  While this statement may be true with respect to other Defendants in this action (namely, Sheriff Reigenborn and Deputy Overmyer), it is not true with respect to Detention Specialist DeHerrera.  The Magistrate Judge addressed his qualified immunity defense in the Recommendation. (ECF No. 86 at 12–16 (addressing Plaintiff's deliberate indifference allegations and clearly established prongs of qualified immunity).)  Further, the Magistrate Judge did not shift the burden of demonstrating qualified immunity to Detention Specialist DeHerrera, and the Court's analysis with respect to clearly established law and Deputy Rabie also applies here.  *See supra*, Part IV.A.1.b.

Plaintiff alleges one claim of  deliberate indifference against Detention Specialist DeHerrera in his individual capacity.  Detention Specialist DeHerrera argues that the Magistrate Judge erred in concluding that Plaintiff sufficiently alleged deliberate indifference against him.  (ECF No. 90 at 7–10.)  Detention Specialist DeHerrera challenges the allegation that he "did not respond to [Plaintiff's] cellmate's distress button" because he contends that Plaintiff has no way of knowing whether Detention Specialist DeHerrera chose not to pass notice of Plaintiff's distress call to floor deputies. (*Id.* at 8.)  Rather, Plaintiff relies on statements from Deputy Chavez after the incident that "all the living unit deputies" made an informal policy "not to chase buttons."  (*Id.* at 8 (citing ECF No. 55 ¶ 45).)  Additionally, Detention Specialist DeHerrera argues that

Plaintiff never alleges that he "ever directly perceived him," nor does Plaintiff "provide any plausible allegation as to how [he] (remote as he was outside of [Plaintiff's] closed cell door) knew that [Plaintiff] had fallen (as opposed to pressing the call button for some other reason), or that the fall was serious." (*Id.* at 9.)

The Court finds these objections are without merit, particularly at the motion to dismiss stage of this litigation. In the SAC, Plaintiff plausibly alleges that Detention Specialist DeHerrera ignored his cellmate's emergency distress calls and caused him substantial harm, including that Plaintiff "remained in the floor of his cell, in pain for nearly an hour, and soiled himself because of the pain and inability to move." (¶ 27.) As the Magistrate Judge points out, to allege a deliberate indifference claim, "Plaintiff must allege acts *or omissions* sufficiently harmful to evidence deliberate indifference to serious medical needs." (ECF No. 86 at 13 (emphasis in original).) Detention Specialist DeHerrera allegedly "failed to notify the floor deputies of a call for emergency medical attention." (¶ 26.)

In the Court's view, while Detention Specialist DeHerrera may not have directly observed Plaintiff in his cell, he allegedly was aware that emergency distress calls were coming from Plaintiff's cell and failed to notify floor deputies of the risk of harm to the occupants of the cell, which included Plaintiff. The Court concludes that these allegations satisfy the requirements of deliberate indifference at this stage of the litigation.

Therefore, the Court overrules Detention Specialist DeHerrera's objections and adopts this portion of the Recommendation. Detention Specialist DeHerrera's motion to dismiss is denied, and Plaintiff's claim for deliberate indifference against Detention

Specialist DeHerrera in his individual capacity will proceed.

    3.  <u>Deputy Overmyer</u>

      a.  *Official Capacity Claims*

  The Magistrate Judge recommended dismissing Plaintiff's two claims against Deputy Overmyer for deliberate indifference and discrimination under Title II of the ADA in her official capacity because Plaintiff's claims against Sheriff Claps will proceed. (ECF No. 86 at 16 (citing *Stump v. Gates*, 777 F. Supp. 808, 816 n.3 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993) (explaining a § 1983 action need only be brought against municipality or a municipal official in her official capacity); *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) (same as to Title II claims)).)  Deputy Overmyer did not object to this recommendation (ECF No. 90), and Plaintiff filed no objections to the Recommendation.

  The Court has rejected the Magistrate Judge's recommendation that the claims against Sheriff Claps proceed, dismissed Plaintiff's Title II ADA claim without prejudice, and has concluded that the remaining claims against Adams County will proceed.  *See supra*, Part IV.B.  Accordingly, while the parties and procedural posture are different, the conclusion remains the same.

  Finding no clear error in the Magistrate Judge's analysis, the Court adopts this portion of the Recommendation.  The Court grants Deputy Overmyer's motion to dismiss the official capacity claims against her and dismisses Plaintiff's claims for deliberate indifference and discrimination under Title II of the ADA against Deputy Overmyer in her official capacity with prejudice.

b.    *Individual Capacity Claims*

(i)    Deliberate Indifference

Deputy Overmyer objects to two aspects of the Recommendation as they relate to Plaintiff's individual capacity claims against her.  First, she objects to the manner in which the Magistrate Judge addressed the qualified immunity analysis.  (ECF No. 90 at 3–6.)  Although Tenth Circuit precedent requires the *plaintiff* to bear the ultimate burden of persuasion to overcome qualified immunity, the Magistrate Judge stated

> In addition to arguing Plaintiff fails to state a claim against her for deliberate indifference, Deputy Overmyer invokes qualified immunity in the following sentence: "To the extent counts two and four are not dismissed on other grounds, Deputy Overmyer has qualified immunity for both counts for the same reasons set forth in Section II.B., *supra*."  (Doc. No. 35 at 17.)  Below, the Court discusses and rejects Defendant's Section II.B. argument as inadequately presented. *See infra* Section IV(B).  The Court also rejects it here.  Deputy Overmyer has not adequately presented a qualified immunity defense to Plaintiff's second claim, and the Court therefore declines to address it further at this stage.  *See Tillmon v. Cty. of Douglas*, No. 18-cv-00492, 2019 WL 1375678, at *12 (D. Colo. Mar. 27, 2019) (declining to rule on qualified immunity defense where defendants "offer[ed] no arguments and no law" to support a qualified-immunity defense), *aff'd*, 817 F. App'x 586, 589 (10th Cir. 2020) (unpublished) (declining to address qualified immunity on appeal because the argument was not properly preserved, as the "analysis of qualified immunity in [the motion to dismiss] was cursory at best" and "consisted of a single paragraph briefly discussing the law of qualified immunity").  The Court recommends denying Deputy Overmyer's Motion to Dismiss Plaintiff's deliberate indifference claim against her in her personal capacity.

(ECF No. 86 at 17–18.)  Deputy Overmyer argues in her Objections that "[b]y simply refusing to address qualified immunity, the Magistrate's Recommendation impermissibly flips the burden of persuasion on to the defendants in contravention of binding Tenth Circuit precedent."  (ECF No. 90 at 4.)  Additionally, she asserts that "[n]o published

decision of the Tenth Circuit authorizes a lower court to circumvent the qualified immunity burden by simply deeming a multi-page argument from the defendants as inadequate to 'raise' the defense." (*Id.*)

Although the Court does not entirely agree that the Magistrate Judge *completely* shifted the burden of persuasion to Deputy Overmyer, the Court does agree that it was error not to address Deputy Overmyer's arguments with respect to the clearly established element of qualified immunity—regardless of their length and placement in the motion to dismiss briefing. Therefore, the Court rejects that portion of the Recommendation analyzing the clearly established element of the qualified immunity analysis and addresses it *de novo* below.

The Court has reviewed Plaintiff's response brief, which responded to Adams County, Sheriff Reigenborn, and Deputy Overmyer's combined motion to dismiss. (ECF No. 52.) In his brief, Plaintiff cited the same three cases to respond to the clearly established element of both Sheriff Reigenborn and Deputy Overmyer's qualified immunity defense. (*Id.* at 23–24.) Therefore, for the same reasons as the Court stated above with respect to the deliberate indifference and retaliation claims brought against Sheriff Reigenborn in his individual capacity, the Court also finds that Plaintiff has not met his burden to demonstrate that Deputy Overmyer is not entitled to qualified immunity on his deliberate indifference claim. *See supra*, Part IV.C.1.b.

The Court sustains Deputy Overmyer's objections with respect to qualified immunity on the deliberate indifference claim brought against her in her individual capacity, rejects the Recommendation's findings on this point, grants Deputy Overmyer's motion to dismiss the deliberate indifference claim brought against her in

her individual capacity, and dismisses Plaintiff's claim for deliberate indifference against Deputy Overmyer in her individual capacity with prejudice.

(ii)     Title II ADA

The Magistrate Judge recommended dismissing Plaintiff's Title II claim against Deputy Overmyer in her individual capacity because Title II of the ADA does not provide for individual liability.  (ECF No. 86 at 16 (citing 42 U.S.C. § 12132 (providing disabled individuals redress for discrimination by a "public entity"); *see also* 42 U.S.C. § 12131 (defining public entity); *cf. Butler v. City of Prairie Vill., Kan*., 172 F.3d 736, 744 (10th Cir. 1999) (holding "the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition")).)  Neither Deputy Overmyer (ECF No. 90) nor Plaintiff objected to this portion of the Recommendation.

Finding no clear error, the Court adopts this portion of the Recommendation. Plaintiff's Title II claim against Deputy Overmyer in her individual capacity is dismissed with prejudice.

**V. CONCLUSION**

For the reasons set forth above, the Court ORDERS as follows:

1.  The Recommendation (ECF No. 86) is ADOPTED, ADOPTED AS MODIFIED, AND REJECTED, as set forth above;

2.  The Rabie/Claps Objections (ECF No. 88) are OVERRULED as set forth above;

3.  Adams County's Objections (ECF No. 89) are OVERRULED IN PART AND SUSTAINED IN PART, as set forth above;

4.  The Reigenborn/DeHerrera/Overmyer Objections (ECF No. 90) are OVERRULED IN PART AND SUSTAINED IN PART, as set forth above;

5.  Defendants Adams County's, Sheriff Reigenborn's, and Deputy Overmyer's Motion to Dismiss (ECF No. 35) is GRANTED IN PART and DENIED IN PART, as set forth above;

6.  Defendant Dennis Rabie's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 78) is DENIED;

7.  Defendant Daniel DeHerrera's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 80) is DENIED;

8.  The Court rules on Plaintiff's claims in his Second Amended Complaint (ECF No. 55) as follows:

    a.  Plaintiff's deliberate indifference claim against Deputy Rabie in his individual capacity will proceed;

    b.  All of Plaintiff's claims against Sheriff Claps in his official capacity are DISMISSED WITH PREJUDICE;

    c.  Plaintiff's Title II claim against Adams County is DISMISSED WITHOUT PREJUDICE;

    d.  Plaintiff's § 1983 claims against Adams County for excessive force, deliberate indifference, and retaliation will proceed;

    e.  Plaintiff's excessive force claim against Sheriff Reigenborn in his individual capacity is DISMISSED WITHOUT PREJUDICE;

    f.  Plaintiff's deliberate indifference, retaliation, and Title II claims against Sheriff Reigenborn in his individual capacity are DISMISSED WITH PREJUDICE;

    g.  Plaintiff's deliberate indifference claim against Detention Specialist

DeHerrera in his individual capacity will proceed;

    h.  All of Plaintiff's claims against Deputy Overmyer in her official and individual capacities are DISMISSED WITH PREJUDICE;

9.  Plaintiff is GRANTED leave to file a **final** Third Amended Complaint by no later than **April 22, 2024** that cures the pleading deficiencies referenced above.  The Third Amended Complaint will be limited SOLELY to the claims referenced in Part V.8. (a), (c), (d), (e), and (g) immediately above; and

10.  The Clerk is DIRECTED to terminate Sheriff Claps and Deputy Overmyer as Defendants on the docket, and the parties are DIRECTED to remove all reference to them in the caption of all future filings.

Dated this 18th day of March, 2024.

BY THE COURT:

William J. Martínez
Senior United States District Judge